Debra Groberg (ISB#9797)
Nathan Pittman (ISB#9430)
NEVIN, BENJAMIN & McKAY LLP
303 West Bannock
P.O. Box 2772
Boise, Idaho 83701
Telephone: (208) 343-1000
Facsimile: (208) 345-8274
dgroberg@nbmlaw.com
npittman@nbmlaw.com

*Attorneys for Defendant Ryan Bendawald*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:23-CR-281-DCN |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION TO QUASH THIRD-PARTY SUBPOENA [DKT. 37]** |
| RYAN A. BENDAWALD, | ) | |
| Defendant. | ) | |
| _____ | ) | |

Defendant Ryan Bendawald, through his attorneys, hereby responds to the government's Motion to Quash Third-Party Subpoena (Dkt. 37) filed July 11, 2024. The subpoena should not be quashed because it complies with the requirements of Rule 17(c) and calls for the production of specific, relevant, and admissible evidence. We address herein the government's substantive objection that law enforcement records created and maintained by state and local law enforcement are "personal or confidential information" about an alleged victim. With respect to the government's other substantive objection, that the subpoena at issue amounts to a "fishing expedition," we have submitted together with this Response an *ex parte*, sealed submission setting forth the basis for the subpoena.

## FACTUAL BACKGROUND

The government's investigation into the Caldwell Police Department ("CPD") began in December 2020 after two disgruntled officers complained to the FBI about then-Lieutenant Joey Hoadley and then-Sergeant Ryan Bendawald. Mr. Hoadley and Mr. Bendawald were at the time, or had been, associated with the Street Crimes Unit at CPD, a proactive policing task force implemented to tackle violent, drug trafficking gangs that had plagued the City of Caldwell. Neither of the complaining officers alleged unlawful sexual conduct by Mr. Bendawald.

As the investigation continued, however, the FBI interviewed several women who had been arrested or otherwise contacted by Mr. Bendawald in the course of his policing duties. That Mr. Bendawald had these contacts was not surprising: many of the women interviewed by the FBI were criminal gang members involved in trafficking drugs in Caldwell or otherwise associated with dangerous criminals and drug traffickers. Many of them are still serving lengthy state or federal prison sentences for drug trafficking and other crimes and view Mr. Bendawald as being responsible for putting them behind bars.

These women complained to the FBI that Mr. Bendawald had committed sexual misconduct during the course of their encounters. The allegations of seven of these women formed the basis of the eight-count indictment. Shortly after Mr. Bendawald was charged, the government provided defense counsel with a list of additional women it had identified as "alleged victims."[1] Mr. Bendawald does not face any charges related to any alleged conduct with respect to these other

---

[1] Based on review of the discovery provided to date, the government's selection criteria for which individuals it counted as uncharged alleged victims is not entirely clear. The government's list includes a consensual girlfriend of Mr. Bendawald, women who denied any sexual contact with Mr. Bendawald, and women whose allegations do not appear to amount to a federal crime. Nevertheless, the government has identified all of these women as potential witnesses at trial and categorized them as "alleged victims."

individuals.

Mr. Bendawald strongly maintains his innocence and has endeavored to collect the evidence that will demonstrate he is innocent at trial. On June 28, 2024, Mr. Bendawald issued a subpoena to the Canyon County Sheriff's Office ("CCSO") for police reports and other law enforcement records, including jail records, with respect to the seven charged complaining witnesses, the other complaining witnesses identified by the government, and another individual who has not been identified by the government as a complaining witness but who is relevant to one of the charged counts. *See* Ex. A, Mot. to Quash. In the interest of transparency, Mr. Bendawald has issued similar subpoenas to other law enforcement entities in the Treasure Valley for the same records. In the further interest of efficiency, counsel for Mr. Bendawald will not contact subpoena recipients to pursue collection of records and, if records are received or otherwise provided, counsel will sequester them pending the outcome of the government's Motion to Quash.

**ARGUMENT**

**I.     The Government's Rule 17(c)(3) Objection is Misplaced.**

Counsel for Mr. Bendawald admit that the subpoena was submitted without seeking leave of Court or providing notice to the complaining witnesses. This was because those measures were not required: Rule 17(c)(3) does not apply to the instant subpoena. The government's efforts to protect the complaining witnesses it claims are federal crime victims is understandable, but misplaced here. The Motion to Quash with respect to Rule 17(c)(3) should be denied for two independent reasons. First, Rule 17(c)(3) only applies to the *charged* alleged victims, and thus only to the seven complaining witnesses identified in the indictment. Second, the records sought, law enforcement records created by state and local law enforcement, maintained by state and local law enforcement, pertaining to public conduct by the alleged victim, used in public criminal

proceedings or in a custodial setting where an individual's right to privacy is at its lowest ebb, cannot be "personal or confidential information." Accordingly, the Court should set aside the government's objections to the subpoena based on Rule 17(c)(3).

### A. Rule 17(c)(3) Protects Only Federal Crime Victims, It Does Not Apply to Individuals Allegedly Affected by Unrelated, Uncharged, Unproven Conduct.

The government's Rule 17(c)(3) objection sweeps broadly, apparently asserting that notice to the individual and leave of Court was required for records pertaining to all individuals listed on the subpoena. *See* Mot. to Quash at 7 (claiming defendant sought "personal information for more than a dozen victims," even though only seven Alleged Victims are identified in the indictment). But Rule 17(c)(3), and the Crime Victims' Rights Act ("CVRA") that it implements, apply only to the seven complaining witnesses whose allegations form the bases for the charges in the indictment. No other individuals are federal crime victims within the meaning of the Rule or the Act.

Rule 17(c)(3), by its plain terms, applies to "personal or confidential information about a *victim*." (emphasis added). The commentary to the Rule makes clear that it was enacted to implement 18 U.S.C. § 3771(a)(8), the portion of the CVRA that provides for the "dignity and privacy" of a federal crime victim. It stands to reason, therefore, that Rule 17(c)(3) should be interpreted in concert with the CVRA, which defines a "crime victim" as "a person directly and proximately harmed as a result of the commission of a Federal offense or an offense in the District of Columbia." 18 U.S.C. § 3771(e)(2)(A). An individual's status as a "crime victim" is thus tied to a *Federal offense*, not merely any alleged violation of any law or non-criminal conduct by a federal defendant. As no federal offense has been alleged with respect to anyone other than the seven complaining witnesses identified as Victims 1-7 in the indictment, none of the other individuals identified in the subpoena are within the scope of the CVRA or Rule 17(c)(3).

DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION TO QUASH THIRD-PARTY SUBPOENA - 4

Courts have recognized the limited scope of the CVRA, which traces its origins to the federal restitution statutes. *See United States v. Atl. State Cast Iron Pipe Co.*, 612 F. Supp. 2d 453, 462 (D. N.J. 2009) ("This Court is of the view that based on the text, origin and limited legislative history of the CVRA . . . the definition of 'victim' under CVRA will be interpreted consistent with existing and evolving case law under the VWPA and MVRA."). The Supreme Court has long interpreted the restitution statutes as "authoriz[ing] restitution 'only for the loss caused by the specific conduct that is the basis of the offense of conviction.'" *Id*. at 463 (quoting *Hughey v. United States*, 495 U.S. 411, 413 (1990)); *United States v. Turner*, 367 F. Supp. 2d 319, 326 (E.D.N.Y. 2005) (noting that Congress passed the CVRA "knowing that similar language in an earlier victims' rights bill had been interpreted *not* to refer to uncharged conduct."). Thus, courts have rejected appeals to the rights protected under the CVRA by an alleged "victim of an unrelated, uncharged, unproven Federal offense allegedly committed by the defendant." *United States v. McMahan*, No. 07-249, 2011 WL 13208839, at *1-*2 (C.D. Cal. Nov. 16, 2011).

The government's Motion to Quash demonstrates the reason for this rule. The government seeks to stand between the defendant and obtaining evidence for use at trial, which is his Sixth Amendment right at least partially implemented through Rule 17, *see United States v. Tomison*, 969 F. Supp. 587, 593 (E.D. Cal. 1997), based on its own opinion about who is a federal crime victim. At least with respect to the seven complaining witnesses identified in the indictment the grand jury has found probable cause of specific violations of federal law, whereas there has been no such finding with respect to any other person in this case. *Cf. Turner*, 367 F. Supp. 2d at 327 ("Moreover, unlike conduct placed at issue in an indictment or complaint, allegations of uncharged conduct will not have been tested even against the relatively low standard of probable cause, thereby exacerbating the due process problem inherent in designating a person as the defendant's

'victim.'"). Indeed, although Mr. Bendawald has the benefit of discovery, he has not been advised as to what specific conduct the government believes violated a specific federal law, if any, with respect to the uncharged individuals. Those individuals are, therefore, not federal crime victims for purposes of the CVRA or Rule 17(c)(3) and the government's objection to the subpoena is not well-founded as to requests for documents and records pertaining to them.

> B. **With Respect to the Seven Charged Complaining Witnesses, the Subpoena Does Not Call for "Personal or Confidential Information."**

By its plain terms, Rule 17(c)(3) requires leave of Court and notice to a federal crime victim only with respect to a subpoena calling for "personal or confidential information" about the victim. That is, the rule does not apply to just any information about the victim, but only information that is either personal or confidential. The law enforcement records sought here, which the defense anticipates will show the complaining witnesses committing or being involved in the commission of various crimes and their incarceration thereafter, are not personal or confidential. The government's motion appears to simply assume without argument that the requested records contain "personal or confidential information" and does not cite to any authority for the proposition that law enforcement records such as police reports and records pertaining to a federal crime victim's incarceration are "personal" or "confidential." Because these records are neither personal nor confidential, the subpoena on its face does not trigger Rule 17(c)(3)'s protections and should not be quashed on that basis.

The commentary to the rule identifies only two categories of personal or confidential information: "medical or school records," with all other potential applications "left to case development." Rule 17, cmt. to 2008 Amendment. The only other guidance from the commentary as to the reach of Rule 17(c)(3) is that it was adopted to implement 18 U.S.C. § 3771(a)(8), a subsection of the CVRA, which provides protections for the "dignity and privacy" of federal crime

victims. *Id*. The framers of Rule 17(c)(3) could have easily drafted a rule that required approval of the Court and notification to the alleged victim for any subpoena calling for records containing any information about them, but they did not, choosing instead to limit the reach of Rule 17(c)(3)'s protections to "personal" or "confidential" information.

The subpoena challenged by the government was issued on a law enforcement agency, the Canyon County Sheriff's Office. The subpoena called for three categories of materials: "police reports," records related to "police contacts," and "jail incidents" pertaining to the individuals identified on the subpoena. *See* Ex. A, Mot. to Quash. None of these categories of records calls for personal or confidential information, nor would their production to the defense invade the "dignity and privacy" of any alleged victim. These materials are essentially government law enforcement records pertaining to the complaining witnesses, records that are quintessentially not "personal" or "confidential."

Police reports pertaining to an individual and records related to their incarceration upon arrest for or conviction of a crime are not "personal" records. The term "personal" in Rule 17(c)(3) cannot simply mean pertaining to a person; if so, the rule would be transformed from one that protects only a subset of records with information about an alleged victim into one that protects all information about an alleged victim. Instead, "personal" should be understood to mean "private or relating to someone's private life." Personal, Cambridge Dictionary. This definition accords with the concerns in the CVRA as to an alleged victim's dignity and privacy.

Under this definition, the requested records cannot be "personal," because they document the complaining witness's public interactions with the government, both law enforcement and correctional officers. None of these records were created by the complaining witnesses nor were they created at their direction. They were created by law enforcement officers or other government

personnel as part of the law enforcement function and the information in them comes from what the law enforcement officer observed or otherwise learned in the course of their public duties. As another court has observed in the Fourth Amendment context, "[t]he Government's records are not a private citizen's . . . They are the Government's records. Moreover, the Government's records are not a 'private sphere' because a person cannot reasonably expect records that are known to and owned by the Government to be free from official intrusion." *United States v. Fanyo-Patchou*, No. 19-146, 2020 WL 5067911, at *1 (W.D. Wash. Aug. 27, 2020). That conclusion is even stronger in a custodial setting, where an individual's interest in personal privacy is at its nadir given that every aspect of an incarcerated person's life is monitored, documented, and controlled by the government. *See Hudson v. Palmer*, 468 U.S. 517, 527-28 (1984) ("A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order."); *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) ("Prisoners retain, at best, a very minimal Fourth Amendment interest in privacy after incarceration.").

Just as police reports, records of contact with law enforcement, and custodial records are not personal, they are also not confidential. "Confidential" cannot mean "otherwise unavailable to the defense," because the entire purpose of a Rule 17 subpoena is to employ the Court's authority to compel the disclosure of records the defense does not otherwise have access to. "Confidential" must mean more, such as a recognized right of the subject of the confidential information to prevent its disclosure to the public, or, again, Rule 17(c)(3) would apply to all information about an alleged victim, not just a subset. This interpretation would accord with the Committee Notes' references to medical and school information, which are generally protected from disclosure by federal law under HIPAA and FERPA and are moreover generally understood to be personal and

private.

Law enforcement information, and specifically the records sought here, are not like medical and school information. Most of these records, if not all, are explicitly made available to the public by Idaho law. Idaho law presumes that state and local records are available for public examination.[2] *See* I.C. §§ 74-102(1), 74-124. Indeed, legal practitioners, journalists, and academics in Idaho routinely submit public records requests for police reports and other law enforcement information. Perhaps more importantly, the requested law enforcement records, such as police reports, are intended to be disclosed to others as part of the criminal justice process. They are prepared by police officers, transmitted to prosecutors, disclosed to defense attorneys, and used in open court as part of public legal proceedings that result in public verdicts handed down by judges. The complaining witnesses' (extensive) criminal histories are a matter of public record and can be accessed by anyone on the internet through Idaho's iCourt system. Had the complaining witnesses intervened themselves to challenge the subpoena, it is not clear what right or privilege, evidentiary, statutory, or constitutional, they could invoke to prevent Idaho local and state government entities from disclosing their own records about them. In no way can these government records be considered confidential as that term is used in Rule 17(c)(3).

Being neither personal nor confidential, the records requested on the face of the subpoena are not within the scope of Rule 17(c)(3), and therefore leave of court and notice to the complaining witnesses were not required. To the extent the recipient of the subpoena is concerned that it may actually have non-law enforcement information that is either personal or confidential and within

---

[2] Although many of the records sought are available via public records request, they often are not the best evidence, being subject to redaction, and the public records request process imposes significant compliance costs on indigent criminal defendants that can make the records practically inaccessible except by a Rule 17 subpoena.

DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION TO QUASH THIRD-PARTY SUBPOENA - 9

the scope of the subpoena, defense counsel is prepared to omit those materials from the subpoena request or seek leave from the Court under Rule 17(c)(3), as may be appropriate. The first that undersigned counsel learned that the subpoena recipient or the government believed that the subpoena called for personal or confidential information was when the government filed the Motion to Quash. Indeed, the parties had been conferring for weeks over a motion for early return of trial subpoenas, and instead of raising the issue, the government rushed to the Court supposedly the day after it learned of the subpoena. Had the government raised its concerns with the defense, the necessity for a Motion to Quash may have been avoided, or at least the issues narrowed for the Court's decision.

## II. Mr. Bendawald Addresses the Specificity, Relevancy, and Admissibility of the Subpoenaed Materials in an Ex Parte Submission.

In addition to its misplaced objections under Rule 17(c)(3), the government moves to quash on general Rule 17 grounds. Answering this objection puts Mr. Bendawald between a rock and a hard place. A criminal defendant "has both a right to the pre-trial production of evidence and a right to protect his trial strategy," the latter of which would be compromised through an open briefing process because "a defendant seeking pre-trial production must make a demonstration of relevancy, admissibility and specificity, [and] requiring that defendant share the showing with the government would effectively force the defendant to reveal his or her theory of the case." *Tomison*, 969 F. Supp. at 593-94 (citation omitted). Further, "it is the responsibility of the court, not the opposing party, to ensure that a subpoena secured under Rule 17(c) is for a proper purpose." *Id*. at 594. Mr. Bendawald therefore addresses the basis for the subpoena in an *ex parte*, sealed submission.

## III. The Court Should Address the Government's Substantive Objections to the Rule 17 Subpoena.

The issues raised by the government's Motion to Quash, concerning the scope of Rule

DEFENDANT'S RESPONSE TO GOVERNMENT'S MOTION TO QUASH THIRD-PARTY SUBPOENA - 10

17(c)(3) and the propriety of the subpoena under Rule 17 generally, are likely to recur in this case in the months remaining before trial. Any technical deficiency claimed by the government can be readily cured by re-issuing the subpoena, at which point this litigation would start over. Therefore, we request that the Court offer guidance to the parties on the substantive questions raised by the government's Motion to Quash before addressing any technical deficiencies.

At the outset, it is not clear that the government has standing to assert the interests of a third party it (presumably) does not represent with respect to whether that party received a witness fee or whether it is burdened by a particular return date. No subpoena recipient has complained to this Court about the form or content of a subpoena. *Cf. United States v. Ray*, 337 F.R.D. 561, 571 (S.D.N.Y. 2020) (stating that government can move to quash subpoena only when it advances legitimate interests of its own, not another). The government is therefore not entitled to have a subpoena to a third party quashed, that is a matter within the Court's discretion alone.

As the government notes, Mr. Bendawald is an indigent defendant who is represented by appointed counsel. If the Court determines that his subpoena is within the scope of Rule 17, the Court could simply order the subpoena reissued with the appropriate witness fee, which may not even be needed if responsive records are received pretrial. As for the return date of the subpoena, the defense modeled its practice on the subpoena issued by the government to AT&T, where the government asked for records to be produced on December 11, 2023, in lieu of the then-trial date of January 8, 2024.[3] The government's complaint about a return date set for a status conference rings hollow given that it has relied on a "virtual" return date to obtain (voluminous) records itself.[4]

---

[3] *See* BENDAWALD_037537.

[4] The defense proposed a motion to the government for early return of trial subpoenas, permitted under Rule 17, to avoid this kind of practice while preserving the parties' ability to collect voluminous evidentiary records before trial and thus avoid any delays from a production on the eve of trial. Despite weeks of discussion and clarification, and the provision of a draft motion, the

In any event, any technical deficiencies are readily cured and should not be the basis for quashing the subpoena, as the other issues will simply come before the Court again.

## CONCLUSION

Given the aforementioned, Mr. Bendawald respectfully requests that the Court deny the government's Motion to Quash.

DATED this 24th day of July, 2024.

NEVIN, BENJAMIN & McKAY LLP

/s/ Debra Groberg
Debra Groberg

---

government still has not given its position on an early return motion. In its latest communication, the government notified defense counsel that it had filed the instant motion and stated that it objected to any deviation from Rule 17's requirements. Early return of Rule 17 subpoenas is permitted under Rule 17 with leave of the Court, thus the government's statement was a non sequitur.

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of July 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Katherine L. Horwitz
United States Attorney's Office
khorwitz@usdoj.gov

/s/ Debra Groberg
Debra Groberg