Debra Groberg (ISB#9797)
Nathan Pittman (ISB#9430)
NEVIN, BENJAMIN & McKAY LLP
303 West Bannock
P.O. Box 2772
Boise, Idaho 83701
Telephone: (208) 343-1000
Facsimile: (208) 345-8274
dgroberg@nbmlaw.com
npittman@nbmlaw.com

*Attorneys for Defendant Ryan Bendawald*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO. 1:23-CR-281-DCN |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **DEFENDANT RYAN BENDAWALD'S** |
| | ) | **RESPONSE TO GOVERNMENT'S** |
| RYAN A. BENDAWALD, | ) | **MOTION FOR ACCESS [DKT. 42]** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

      Instead of addressing Defendant Ryan Bendawald's arguments made in response to its Motion to Quash (Dkt. 37), which included argument as to why Mr. Bendawald should be permitted to make an *ex parte* submission in support of the subpoenas at issue, the government now demands access to confidential defense trial strategy. If the government obtained the relief it seeks, Mr. Bendawald would be forced to choose between divulging trial strategy or obtaining evidence for use in his defense at trial, an impossible position that implicates his right to a fair trial. The Court should reject the government's unwarranted efforts to obtain defense strategy and deny the motion.

      The government's decision to file the instant motion instead of filing a reply has

consequences. Pursuant to ¶ II.2 of General Order 423, a reply memorandum in support of a pretrial motion must be filed on or before the seventh day following the filing of the response. The government chose to forego a reply in favor of filing the instant motion, and although the government asks the Court to allow it to file a reply out-of-time after the resolution of the instant motion, it makes no argument in support of this summary request and identifies no basis in the rules for it. The government never explains why it could not file a reply. The government should not be given an indefinite time to reply to Mr. Bendawald's Response, further delaying his access to evidentiary material and withholding guidance from the Court on important pretrial issues in the case, just because it has filed this unnecessary motion and triggered a new briefing schedule.[1] The Motion to Quash is therefore ripe for adjudication and should be denied.

## ARGUMENT

The instant Motion for Access should also be denied. The weight of persuasive authority counsels in favor of permitting *ex parte* submissions in support of Rule 17(c) subpoenas. In addition, even setting aside the fact that the government ignored (and thus forfeited its opportunity to respond to) Mr. Bendawald's arguments that Rule 17(c)(3) does not apply to the instant subpoenas, there is no provision in Rule 17 that permits alleged federal crime victims to inspect an *ex parte* application for a Rule 17(c) subpoena, or, more to the point, why an alleged federal crime victim's right to challenge a subpoena on their own should enable the government to view

---

[1] The Court has advised the parties that it may not be able to rule on any motions until the end of this month due to its trial schedule. By filing this motion, the government seeks to delay a ruling on its Motion to Quash until well after this motion is decided, which would further delay Mr. Bendawald's access to evidentiary materials. The Court should therefore consider the Motion to Quash ripe for adjudication to avoid these unwarranted delays. The government also appears to have retroactively expanded the scope of its motion, now claiming that it moved "to quash all outstanding subpoenas that did not satisfy" Rule 17. Mot. for Access at 1. Counsel has reviewed the government's filing at Dkt. No. 37 and has found no such request.

DEFENDANT RYAN BENDAWALD'S RESPONSE TO GOVERNMENT'S MOTION FOR ACCESS - 2

defense trial strategy. Disclosure of the *ex parte* submission here to the government would expose defense counsel's mental impressions and trial strategy, compromising Mr. Bendawald's right to obtain relevant evidence and ultimately to a fair trial.

**I.      Rule 17 Permits *Ex Parte* Submission of an Application for a Subpoena in Order to Prevent Disclosure of Defense Trial Strategy to the Government.**

The weight of authority supports the defense's right to submit an *ex parte* application for a Rule 17 subpoena so that a defendant does not have to choose between obtaining evidence for trial and prematurely disclosing its trial strategy to the government. The reason for allowing defendants to proceed *ex parte* is persuasively set forth in *United States v. Tomison*, (a case the government cited favorably in its Motion to Quash), which begins with the proposition that "[a] criminal defendant has both a constitutional right to obtain evidence which bears upon the determination of either guilt or punishment, and a Sixth Amendment right to process." 969 F. Supp. 587, 593 (E.D. Cal. 1997) (citations omitted). "Rule 17(c) implements both the right to obtain the evidence and to require its production." *Id*. Thus, "the fact that a criminal defendant has both a right to the pre–trial production of evidence and a right to protect his trial strategy, contraindicates a noticed motion practice requiring disclosure to the government of the defendant's theory of the case as a precondition to obtaining subpoenas duces tecum under Rule 17(c)." *Id*. "Since a defendant seeking pre-trial production must make a demonstration of relevancy, admissibility and specificity, requiring that defendant share the showing with the government would effectively force the defendant to reveal his or her theory of the case." *Id*. "Indeed, requiring noticed motions would tend to encourage the defendant to wait until trial to seek production of documents and evidence [and t]hus, requiring a defendant to apply for the subpoena duces tecum by noticed motion could defeat the Rule's goal of facilitating the speed and efficiency of trial." *Id*. at 592-93. The government's participation in the litigation of these questions is not necessary because "it is the

responsibility of the court, not the opposing party, to ensure that a subpoena secured under Rule 17(c) is for a proper purpose." *Id*. at 594.

Multiple courts have followed *Tomison*'s lead and held that a defendant has the right to submit an application for a Rule 17 subpoena *ex parte*, which the government acknowledges.  Mot. for Access at 3.  The court in *United States v. Sellers*, 275 F.R.D. 620, 625 (D. Nev. 2011) collected cases and agreed with those courts that "found that an indigent defendant should be permitted to make an *ex parte* application for pretrial production of documents" under circumstances where the defendant's trial strategy would be disclosed.  More recently, the Southern District of New York evaluated a motion to quash a subpoena on Rule 17(c)(3) grounds and squarely held that "the question whether the defendant should be permitted to subpoena records relating to a victim pretrial is entrusted to the court.  The Government neither is entitled to know of the subpoena nor hear the defense's justification for why the documents are relevant and should be produced." *United States v. Ray*, 337 F.R.D. 561, 570 (S.D.N.Y. 2020).  Another Southern District of New York case set out the "strong policy reasons in favor of an *ex parte* procedure":

> If a source of evidence were to be identified before the issuance of a subpoena, the source or the integrity of the evidence might be imperiled.  In addition, a party may have to detail its trial strategy or witness list in order to convince a court that the subpoena satisfies the *Nixon* standards of specificity, relevance, and admissibility. If a full adversary hearing was required to obtain a subpoena duces tecum, a party would be forced to reveal this information to the opposing side, a result which would occur even if a court declined to issue the subpoena.

*United States v. Reyes*, 162 F.R.D. 468, 470 (S.D.N.Y. 1995).  The posture of the *Reyes* case was unusual, given that it was the *government* seeking to proceed *ex parte*, yet the *Reyes* court emphasized how these concerns were often more salient when a defendant sought to proceed *ex parte*. *See id*.

Admittedly, there is a split in authority on this question.  However, the line of cases following *Tomison* are more persuasive.  The government cites to only one unpublished decision,

DEFENDANT RYAN BENDAWALD'S RESPONSE TO GOVERNMENT'S MOTION FOR ACCESS - 4

*United States v. Garg*, No. 21-45, 2024 WL 37047 (W.D. Wash. Jan 3, 2024), to support its position. Mot. for Access at 4. The district court in *Garg* based its decision on the same interpretation of Rule 17 advanced by the government, that the Rule generally contemplates that materials produced pursuant to the subpoena will be available for review by both parties. *Garg*, 2024 WL at *2. But the *Reyes* court considered this argument and rejected it as "not convincing" for the reasons stated above. 162 F.R.D. at 470. The *Garg* court's reasoning does not make sense on its own terms, as it characterizes the purpose of Rule 17(c) as "serv[ing] the ends of shared pre-trial discovery, not secrecy." *Garg*, 2024 WL at *2. But as the government has repeatedly pointed out, as every court to consider a Rule 17 subpoena request has repeated ad nauseum, and as the *Garg* court itself stated, "Rule 17 is not intended as a general discovery device; its purpose is to obtain specific and relevant information for trial." *Id*. at *1.

It is precisely because Rule 17(c) is aimed at obtaining evidence for use at trial that the Court should not make a defendant choose between obtaining that evidence and disclosing their trial strategy to the government. The more persuasive authority weighs in favor of allowing Mr. Bendawald to continue to proceed *ex parte* when seeking Rule 17(c) subpoenas.

**II.   Rule 17(c)(3) Does Not Require Alleged Federal Crime Victims to Have Access to *Ex Parte* Submissions.**

Nor does the fact that Mr. Bendawald is seeking law enforcement records related to the complaining witnesses mean that he must proceed on the public docket. Even assuming that Rule 17(c)(3) applies to the subpoena, the only right the Rule affords to an alleged federal crime victim is to be notified before the Court enters the order for the subpoena "so that the victim can move to quash or modify the subpoena or otherwise object." Fed. R. Crim. P. 17(c)(3). The Rule therefore contemplates that the Court has already reviewed the defense request for a subpoena and determined that the general requirements of Rule 17 are satisfied, otherwise there would be no

reason to notify the alleged victim of a subpoena that is not going to be issued.  The commentary to the Rule states that its purpose is to allow an alleged victim to object "on the grounds that [the subpoena] is unreasonable or oppressive," because a third party cannot be counted on to make that objection on their behalf.  Fed. R. Crim. P. 17, cmt. to 2008 Amendment.  The phrase "unreasonable and oppressive" is taken from Rule 17(b), which permits a motion to quash or modify an already issued subpoena, further suggesting that the Rule contemplates a judicial determination that the subpoena is appropriate under Rule 17(c) generally before the alleged victim is given the opportunity to object on other grounds.

Moreover, the commentary to the Rule discusses the use of an *ex parte* procedure.  The commentary states it is up to the Court whether briefing over the existence of "exceptional circumstances" precluding notice to the alleged victim, which risks "premature disclosure of a sensitive defense strategy," should be *ex parte*.  *Id*.  Although the issue being litigated here is different from whether there are "exceptional circumstances," the fact that the commentary to the rule recognizes that a defendant has a legitimate interest in preventing the disclosure of trial strategy to an alleged victim even when seeking to subpoena their personal or confidential information suggests that the Rule does not give alleged federal crime victims the sweeping right "to confront the violation of their right to privacy head on" by being given access to the *ex parte* application.  *See* Mot. for Access at 6.  None of the government's citations stand for that proposition,[2] and Rule 17(c)(3) squarely places the onus for protecting alleged victims' rights on

---

[2] The government's citation to *United States v. Reed*, 726 F.2d 570 (9th Cir. 1984), without a pin cite, is particularly inapt.  The case was decided decades before the Crime Victims' Rights Act or Rule 17(c)(3) were enacted, so it understandably has nothing to say about them.  The word "victim" does not even appear in the case.  There is a reference in the case to the subpoena recipient moving to quash in part out of concern for protecting the privacy rights of non-victim individuals and its own confidential communications, but the court quashed the subpoena because the materials sought were not relevant.  *Id*. at 577.

DEFENDANT RYAN BENDAWALD'S RESPONSE TO GOVERNMENT'S MOTION FOR ACCESS - 6

the Court. *Tomison*, 969 F. Supp. at 594. There is nothing in its language that suggests alleged victims should have access to otherwise proper *ex parte* submissions, and thus there is no basis in Rule 17(c)(3) or the Crime Victims' Rights Act for deviating from the procedure persuasively set out in *Tomison*.

But even if the Rule did afford alleged victims that privilege, it is not clear why it should be extended to the government. The government does not represent the complaining witnesses in this case, and the United States under the law must be equally as interested in upholding Mr. Bendawald's constitutional right to a fair trial, including the presumption of his innocence, as it is in upholding the statutory rights of alleged federal crime victims. Mr. Bendawald did not raise this issue in his Response to the Motion to Quash because, as noted, the case law is clear that the Court has an independent obligation to ensure that Rule 17 subpoenas are issued in compliance with the law. But as the government emphasizes victims' rights in its argument, the Court should be advised that Rule 17(c)(3) "does not accord the Government the right to move to quash or modify on behalf of the victim, particularly when the victim has not also sought to quash or modify the subpoena. Only the victim is entitled to notice of the issuance of a subpoena for personal and confidential information and to make a motion to quash." *Ray*, 337 F.R.D. at 570 (rejecting government's argument that 18 U.S.C. § 3771(d)(1) of the Crime Victims' Rights Act grants it standing to move to quash a Rule 17 subpoena). The government has no "standing to object to a subpoena for records of victims who do not object," *id*., and therefore whatever rights an alleged victim has provides no basis for the prosecuting attorneys to inspect a defense *ex parte* filing.

The government asserts, without citation, that it is a "necessary participant" in this process, but as the text of the Rule, the commentary, and the relevant law states, it is not. Victims' rights

are just that, the rights of an alleged victim. They do not extend to the government.[3]

**III.    Disclosure of the *Ex Parte* Submission Would Reveal Mental Impressions and Trial Strategy of Defense Counsel.**

This is a case that turns primarily, if not exclusively, on whether the jury believes Mr. Bendawald's accusers. Therefore, it is no surprise to anyone that the defense's goal at trial is to convince the jury that the accusers should not be believed. The government points to various statements in defense pleadings, discovery requests, and even the proposed jury questionnaire, but connecting these dots reveals only one thing: the defense intends to try to raise reasonable doubt with the jury regarding the complaining witnesses' claims. But having divined from the defense filings nothing more than that the defense intends to defend Mr. Bendawald, the government demonstrates only that it knows the defense's *goal*, not the defense's *strategy*.

A goal is a destination, strategy is how you plan to get there. The government's assertion that it already knows the defense intends to try to discredit the complaining witnesses cannot entitle it to view defense trial strategy as to *how* the defense intends to generate a reasonable doubt with the jury with respect to the complaining witnesses' accusations. That is the defense strategy that is protected by an *ex parte* filing: the explanation to the Court of how the defense believes the requested evidence will advance its case.[4] As the district court noted in *United States v. Sellers*,

---

[3] The government appeals to the "uniquely sensitive position" of some of the complaining witnesses (meaning that they are serving sentences of incarceration for their felony crimes) and their fear of retaliation, Mot. for Access at 6 n.1, but it is not clear why this assertion is relevant with respect to efforts to obtain law enforcement records to use as evidence at trial, or really with respect to any Rule 17 subpoena. The complaining witnesses are just that, witnesses, and Mr. Bendawald is entitled to defend himself against their accusations. Moreover, neither Mr. Bendawald nor the Caldwell Police Department Lieutenant mentioned are still police officers. Mr. Bendawald has not been a police officer for almost three years and no longer resides in the State of Idaho, and the government has used that fact in interviews to assure witnesses that Mr. Bendawald cannot retaliate against them. The government continues to make vague claims of potential retaliation, but its representations are short on detail.

[4] The government makes many assumptions about the defense strategy in its pleading, which Mr. Bendawald will not address, lest defense strategy be revealed by commenting on the government's

DEFENDANT RYAN BENDAWALD'S RESPONSE TO GOVERNMENT'S MOTION FOR ACCESS - 8

*ex parte* submissions are appropriate "to protect the *mental impressions* and trial strategy of defense counsel." 275 F.R.D. at 625 (emphasis added).

The cases cited by the government do not support the propositions for which they are cited. In *United States v. Thompson*, the court relied primarily on the fact that "defense counsel already sought from the prosecution the same medical records sought to be subpoenaed." No. 20-r-105, 2022 WL 2181645, at *1 (E.D. Cal. June 16, 2022). Likewise, in *United States v. Smith*, the defendant had also requested the materials from the government before asking to submit an application for a Rule 17 subpoena *ex parte*. No. 2:19-CR-213, 2020 WL 5763841, at *1 (E.D. Cal. Sept. 28, 2020). That is not the case here, which the government helpfully demonstrates by attaching the only discovery request sent to the government to date, which does not include the requested records at issue.[5] *See* Ex. 1 to Mot. for Access. The government only learned of the instant subpoena from the recipient (where one of the former FBI agents who worked this case is now the Chief Deputy), which is of course always a possibility when Rule 17 subpoenas are issued and cannot form the basis for the government to obtain defense trial strategy.

The Court has before it the defense's *ex parte* submission. It is plain that the *ex parte* submission contains the mental impressions of defense counsel and discussions of trial strategy in relation to the requested materials, which have not been otherwise disclosed to the government. The authority cited by the government therefore does not support disclosure in this case.

To conclude, it is worth briefly noting how remarkable the government's position is. The

---

conjecture. The Court has Mr. Bendawald's *ex parte* submission before it and can judge for itself. But more importantly, it cannot be the case that the government is entitled to view the mental impressions and trial strategy of defense counsel just because it gets lucky and correctly guesses what that strategy might be. It is one thing to venture a guess, it is another to confirm the guess and to see the strategy explained in defense counsel's own words.

[5] The defense submitted the discovery request on May 31, 2024. To date, the government has only produced responsive documents to Request 4.

DEFENDANT RYAN BENDAWALD'S RESPONSE TO GOVERNMENT'S MOTION FOR ACCESS - 9

government demands, well in advance of trial, to view defense counsels' candid explanation of their impressions of the case and how the requested records will advance defense strategy in light of that impression, which is a quintessential invasion of the defense function. The government would rightfully be indignant at defense counsel trying some gambit to view the prosecution memos that lay out the government's evaluation of the case, and the government's demand to view the defense's strategy is no different. Further, the government's decision to file this motion and to seek an indefinite extension to the resolution of its Motion to Quash further delays Mr. Bendawald's efforts to obtain evidence for trial and delays the Court's decision on important matters in the Motion to Quash.

## CONCLUSION

For the foregoing reasons, Mr. Bendawald respectfully requests that the Court deny the government's Motion for Access and decide the Motion to Quash without further briefing. If the Court determines that the Motion for Access should be granted, Mr. Bendawald requests the opportunity to withdraw his *ex parte* submission and refile a public version, a procedure proposed by the government in its conclusion. Mr. Bendawald has proceeded as openly as possible, addressing those aspects of the government's argument that did not implicate trial strategy on the public docket (to which the government failed to respond), and identifying a basis for the *ex parte* submission in the same brief. Further, as shown by the published authority directly on point cited above, Mr. Bendawald proceeded under a reasonable and good faith belief that his *ex parte* submission would remain *ex parte* with the Court and therefore should have the opportunity to reframe the pleading to avoid the unnecessary disclosure of trial strategy if the Court determines to grant the motion.

DATED this 7th day of August, 2024.

                NEVIN, BENJAMIN & McKAY LLP

                /s/ Debra Groberg
                Debra Groberg

## CERTIFICATE OF SERVICE

  I hereby certify that on the 7th day of August 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Katherine L. Horwitz
United States Attorney's Office
khorwitz@usdoj.gov

         /s/ Debra Groberg
         Debra Groberg