Debra Groberg (ISB#9797)
Nathan Pittman (ISB#9430)
NEVIN, BENJAMIN & McKAY LLP
303 West Bannock
P.O. Box 2772
Boise, Idaho 83701
Telephone: (208) 343-1000
Facsimile: (208) 345-8274
dgroberg@nbmlaw.com
npittman@nbmlaw.com

*Attorneys for Defendant Ryan Bendawald*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO. 1:23-CR-281-DCN |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM IN SUPPORT OF** |
| | ) | **MOTION TO DISMISS COUNTS** |
| RYAN A. BENDAWALD, | ) | **TWO, FOUR, FIVE, SIX, AND SEVEN** |
| | ) | **OF THE INDICTMENT** |
| Defendant. | ) | |
| _____ | ) | |

Ryan Bendawald, through his attorneys, moves this Court for an order dismissing Counts

Two, Four, Five, Six, and Seven of the indictment pursuant to Federal Rule of Criminal Procedure

12(b)(3)(B)(v) and the Due Process Clause of the Fifth Amendment.  These counts, which charge

Mr. Bendawald with federal program bribery, 18 U.S.C. § 666(a)(1)(B), fail to state an offense

because the indictment fails to allege, and cannot allege, an essential element of the offense.  The

indictment alleges that Mr. Bendawald solicited an intangible benefit, sexual favors, from each

complainant in exchange for an intangible benefit, consideration on their arrest and/or a

recommendation with respect to a potential criminal charge.  Section 666 requires the government

to prove that the decision to arrest or charge each complainant was a "business" or "transaction"

of the City of Caldwell with a value of $5,000 or more.

The indictment attempts to allege this essential element by relying on the maximum possible fine the complainant could have received if they were arrested on or charged with a potential felony crime. This allegation fails to state an offense, because the statute requires a definite, not speculative, valuation method. If accepted, the valuation method alleged in the indictment would transform that statute from one that aims to protect the administration of federal funds into a general anti-corruption statute. The federal government would, in effect, assume supervisory responsibility over every police officer in the country, so long as the government could show that the city, county, or state they worked for received $10,000 or more in federal funding. The government's theory also raises serious due process vagueness concerns regarding how such intangible transactions can be valued when no money, property, or contract is at issue, and the bribery counts should be dismissed on that basis as well.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 11, 2023, the grand jury returned an eight-count indictment against Mr. Bendawald. Five of those counts (Two, Four, Five, Six, and Seven, together the "Bribery Counts") allege that, while serving as a police officer of the City of Caldwell, Mr. Bendawald violated 18 U.S.C. § 666(a)(1)(B), a statute that prohibits bribery in connection with programs receiving federal funds. The statutory language defines the offense as:

> Whoever, if the circumstances described in subsection (b) of this section exists, being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof—corruptly solicits or demands for the benefit of any person, or accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency involving any thing of value of $5,000 or more.

18 U.S.C. § 666(a)(1)(B). The "circumstances described in section (b)" is that the agency received benefits in excess of $10,000 from the federal government in any one-year period. 18 U.S.C.

§ 666(b).

The Bribery Counts contain common factual allegations, all generally alleging that Mr. Bendawald knowingly solicited, demanded, accepted, or agreed to accept "sex and sexual favors" (the thing of value required by the statute) from five women he encountered in the course of his police work, with the intent to be influenced and rewarded "in connection with" the "business, transaction, and series of transactions of the City of Caldwell." Indictment at ¶¶ 10, 14, 16, 18, 20. The specific "business" or "transaction" charged in each Bribery Count varies from count to count, but all involve intangible benefits related to an arrest and/or a potential criminal charge:

- <u>Count Two</u>: The arrest of and recommendation to criminally charge Alleged Victim 2 for possession of heroin and methamphetamine, *id*. at ¶ 10;

- <u>Count Four</u>: The arrest of and recommendation to criminally charge Alleged Victim 4 for unlawful possession of ammunition, *id*. at ¶ 14;

- <u>Count Five</u>: The recommendation to criminally charge Alleged Victim 5 for possession of heroin, *id*. at ¶ 16;

- <u>Count Six</u>: The recommendation to criminally charge Alleged Victim 6 for possession of methamphetamine and unlawful possession of a firearm, *id*. at ¶ 18; and

- <u>Count Seven</u>: The arrest of and recommendation to criminally charge Alleged Victim 7 for possession of methamphetamine, *id*. at ¶ 20.

In every instance, the indictment alleges that each of these "businesses" or "transactions" had a value of $5,000 or more. *Id*. at ¶¶ 10, 14, 16, 18, 20.

Each count incorporates the allegations in Paragraphs 1 through 6 of the indictment. Paragraph 3 alleges that the City of Caldwell received more than $10,000 annually from the federal government during the calendar years 2018-2021, which encompasses all of the charges in the Bribery Counts. *Id*. at ¶ 3. Paragraphs 4 and 5 set out the allegations intending to satisfy the element of the offense that the "business" or "transaction" involved a thing of value of $5,000 or more. Paragraph 4 alleges that the maximum fine penalty under Idaho law for possession of heroin

or methamphetamine is $15,000.  *Id*. at ¶ 4.  Paragraph 5 alleges that the maximum fine penalty upon conviction of unlawful possession of a firearm under Idaho law is $5,000, while under federal law possession of a firearm or ammunition carries a maximum fine penalty of $250,000.  *Id*. at ¶ 5.

The indictment thus alleges that, with respect to the Bribery Counts, the "business" or "transaction" of Mr. Bendawald's arrest of and/or recommendation to criminally charge an Alleged Victim involved a thing of value equal to or greater than $5,000 because the maximum fine an Alleged Victim might possibly receive under a potential future state or federal charge was $5,000 or more.

## ARGUMENT

The Bribery Counts must be dismissed because the facts alleged in the indictment, even if taken as true, fail to sufficiently allege the essential element that the "business" or "transaction" at issue involved a thing of value of $5,000 or more.  The valuation method used in the indictment, the maximum possible fine, is too speculative to support a criminal charge.  The Bribery Counts thus fail to state an offense and should be dismissed under Fed. R. Crim. P. 12(b)(3)(B)(v).  "In ruling on a pre-trial motion to dismiss an indictment for failure to state an offense, the district court is bound by the four corners of the indictment."  *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002).  "On a motion to dismiss an indictment for failure to state an offense, the court must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged."  *Id*.

Unlike the vast majority of bribery cases, the indictment against Mr. Bendawald alleges the exchange of an intangible benefit (sexual favors) for an intangible benefit (consideration with respect to the arrest and/or recommendation to criminally charge), neither of which is readily

susceptible to valuation by a dollar amount, as required by the statute.  Indeed, the government plainly views this case as a sexual assault case rather than a bribery case,[1] but the federal government does not have jurisdiction over the day-to-day misconduct of local law enforcement that does not involve a significant federal interest.  *See Bond v. United States*, 572 U.S. 844, 854 (2014) ("For nearly two centuries it has been clear that, lacking a police power, Congress cannot punish felonies generally.") (quotation marks omitted).  Nevertheless, the government appears to have landed on the federal program bribery statute to generate the federal jurisdictional hook for this case.[2]  The indictment thus rests on a fiction, that the maximum *possible* fine an arrestee *might* receive *if* they are charged with a *potential* crime represents the "value" of the "business" or "transaction" of the arrest and/or recommendation to criminally charge them.  The alleged valuation method is too speculative to be within the scope of § 666, and no alternative valuation method is possible where an intangible benefit is exchanged for another intangible benefit.

The government's reliance on such a fiction demonstrates the inherent impossibility of valuing the alleged "transaction" under the circumstances charged in the indictment.  If such speculative valuation methods are permitted, § 666 will sweep so broadly (because nearly every city, county, and state receives at least $10,000 in federal benefits) that the government will be able to pick and choose which law enforcement "transactions" it singles out for federal oversight based on what charge, or combination of charges, it can assert was at issue and that had a maximum

---

[1] The press release issued by the United States Attorney's Office declares "Former Police Sergeant Indicted for Sexually Abusing Women."  Press Release (Oct. 17, 2023), *available at* https://www.justice.gov/usao-id/pr/former-police-sergeant-indicted-sexually-abusing-women.

[2] This is not speculation: investigative case notes reveal that after some months of investigation the government appeared to be ready to hand the case off to the Ada County Prosecutors, only to take it back in November 2021 after the U.S. Attorney's Office "re-examin[ed]" the case "to evaluate whether or not it might fall under a federal bribery statute."  BENDAWALD_003144-3145.  At this time, Alleged Victims 1, 3, and 7 had not yet made the allegations that form the basis of the other counts charging deprivation of rights.

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COUNTS TWO, FOUR, FIVE, SIX, AND SEVEN OF THE INDICTMENT - 5

fine of $5,000 or more, either alone or in combination with other potential charges. Reliance on such speculative valuation methods creates a due process vagueness issue, because a regulated officer or other state official will not be able to tell when their conduct reaches the threshold of federal regulation. The Bribery Counts must therefore also be dismissed on independent vagueness grounds.

I.      **The Indictment Fails to State an Offense Because the Maximum Possible Fine a Person Might Receive for a Hypothetical Offense Is Too Speculative to Value the Business or Transaction that is the Subject of the Alleged Bribe.**

In the typical case, it is not difficult for an indictment to set out an offense under § 666(a)(1)(B). A public official solicits or accepts a bribe of a certain amount of dollars, or accepts a tangible object that is susceptible of an appraised market value, intending to be influenced in connection with some business worth at least $5,000 before a public agency that receives $10,000 or more in federal funding. But this is not the typical federal program bribery case; it involves no money, property, or economic activity whatsoever. To demonstrate why this federal program bribery case is so unusual, and why it does not fit within the language of the statute or the federal interest it protects, it is necessary to discuss the scope of the statute and what Congress intended for it to accomplish.

Federal court cases have made clear that the purpose of the statute is to "protect federal funds by preserving the integrity of the entities that receive federal funds rather than requiring the tracing of federal funds to a particular illegal transaction." *United States v. Simas*, 937 F.2d 459, 463 (9th Cir. 1991). Thus, because the statute aims at ensuring the integrity of the entity administering the funds rather than protecting specific federal monies, the government is not required to trace the federal funds an agency received to the "business" or "transaction" the bribe was intended to influence. *Id.* As the Supreme Court has held, "proof of connection with federal money," or a "nexus," is not required under the statute, because "[m]oney is fungible, bribed

officials are untrustworthy stewards of federal funds, and corrupt contractors do not deliver dollar-for-dollar value." *Sabri v. United States*, 541 U.S. 600, 605-06 (2004).

There was a reason litigants argued for the federal nexus and some courts even held it was a required element of the statute before the Supreme Court weighed in.  The Third and Second Circuits both required a nexus between the bribe and a federal interest prior to *Sabri*, *id*. at 604, and the Third Circuit articulated its concern that a statute lacking a federal connection requirement "broadens the range of activity criminalized by the statute and alters the existing balance of federal and state powers by encompassing acts already addressed under state law in which the federal government may have little interest," *United States v. Zwick*, 199 F.3d 672, 683 (3rd Cir. 1999) *abrogated by Sabri v. United States*, 541 U.S. 600 (2004).  The Third Circuit was concerned that an unbounded interpretation would "transform § 666 into a general federal anti-corruption statute when Congress has not clearly expressed its intention to do so."  *Id*. at 686.  In expressing that concern, the Third Circuit followed longstanding instructions from the Supreme Court to "avoid reading statutes" in such a way that "would 'dramatically intrude[] upon traditional state criminal jurisdiction,' . . . in the absence of a clear indication that they do."  *Bond*, 572 U.S. at 857 (quoting *United States v. Bass*, 404 U.S. 336, 350 (1971)).

The Supreme Court answered the federalism concerns raised in *Zwick* by holding that the statute was broadly framed to protect the federal interest and thus it was not necessary to show a specific nexus between the "business" or "transaction" the bribe was aimed at influencing and a federal interest.  *See Sabri*, 541 U.S. at 605-07.  The Court did not reject the idea that § 666 must be supported by a federal interest, rather it held that "[i]t is certainly enough that the statutes condition the offense on a threshold amount of federal dollars defining the federal interest."  *Id*. at 606.  Thus, the elements of § 666 that the state agency receive $10,000 or more in federal

assistance per year, and that the "business" or "transaction" sought to be influenced involved anything of value of $5,000 or more, are not mere exercises in technical box-checking or an invitation to the creativity of federal prosecutors: they define the scope of the federal interest that Congress sought to vindicate through § 666.

By meeting the $10,000-or-more in federal support requirement the government demonstrates there is a federal interest at issue, while the fact that the bribe sought to effect a transaction worth $5,000-or-more shows the conduct targeted for criminal sanction met the Congressional threshold for meaningfully affecting that federal interest. Put another way, "the $5,000 triggering provision ensures that the statute reaches acts of bribery involving transactions of substantial value," in order to further the Congressional purpose that § 666 reach "*significant* acts of theft, fraud, and bribery involving Federal monies." *United States v. Marmolejo*, 89 F.3d 1185, 1192-93 (5th Cir. 1996) (quoting S. Rep. No. 225 at 3510 (emphasis added)). By including the monetary restrictions in the statute Congress stated that, "despite its abhorrence for acts of bribery, not every such misdeed should be subjected to federal oversight and punishment." *United States v. Mills*, 140 F.3d 630, 632 (6th Cir. 1998). Thus, it included "the various monetary prerequisites" so that "only the most serious instances of governmental corruption should be policed by the federal judiciary." *Id*.

In most cases, it is not difficult to determine whether the "business" or "transaction" at issue crosses the $5,000 threshold and thus is deemed by Congress to be capable of affecting the federal interest. A bidder seeking to influence the award of a contract worth $1 million dollars by bribing the contracting official is plainly within the scope of the statute. The valuation becomes more difficult, however, when the business or transaction to be influenced by the bribe is an intangible benefit not subject to firm valuation. It does not appear the Ninth Circuit has provided

guidance on how courts should value the "business" or "transaction" at issue, and we therefore examine the approaches taken by other courts.

In an illustrative case, the Fifth Circuit confronted exactly this problem in *United States v. Marmolejo*, the facts of which have some similarities to the case at hand.  The defendants in *Marmolejo* were the Sheriff and Chief Deputy Sheriff of a Texas county where the jail had a contract with the federal government to house federal prisoners.  89 F.3d at 1188.  The defendants accepted bribes from a federal prisoner of $6,000 per month to allow conjugal visits between the prisoner and his wife and girlfriend, with a bonus of $1,000 to be paid for each visit.  *Id*. at 1191. The defendants also received cars from the federal prisoner and were involved in other transactions with him.  *Id*.  The "business" or "transaction" to be influenced was allowing the federal prisoner to have conjugal visits, and thus the court had to determine whether those visits were valued at $5,000 or more.  *Id*. at 1193.  The court held that it would "look to traditional valuation methods," which in the case before it led to an easy answer.  *Id*. at 1194.  The court could comfortably conclude that the conjugal visits were worth $5,000 or more because the federal prisoner was willing to pay more than $5,000 ($6,000 per month plus $1,000 per visit) to have them.  *Id*. Multiple courts have either adopted or acknowledged this valuation method when dealing with intangible benefits, *see, e.g.*, *United States v. Zimmerman*, 509 F.3d 920, 926 (8th Cir. 2007) *abrogated on other grounds by Snyder v. United States*, 144 S. Ct. 1947 (2024), *United States v. Fernandes*, 272 F.3d 938, 944 (7th Cir. 2001); *Mills*, 140 F.3d at 633, though when the Supreme Court affirmed the Fifth Circuit's decision it explicitly declined to address that portion of the court's holding because it had not been challenged, *see Salinas v. United States*, 522 U.S. 52, 61 (1997).

Yet this valuation method cannot be used here, where the indictment alleges that an

intangible bribe (sexual favors) was demanded for an intangible benefit (the arrest and/or recommendation to criminally charge). Other valuation methods have been proposed under the umbrella of employing "traditional valuation methods," which attempt to establish "the *actual value* of the intangible benefit." *Zimmerman*, 509 F.3d at 927 (quoting *Marmolejo*, 89 F.3d at 1194) (emphasis added).[3] The indictment takes a different approach, outside of those traditional methods, alleging not what the intangible benefit was actually worth, but what the intangible benefit could, potentially, under speculative circumstances, be worth at some point in time after the bribe was solicited or received. Section 666 should not be interpreted to embrace such a speculative form of valuation.

Basing the value of the intangible benefit on the highest potential fine a person *might* receive if they are charged contravenes Congressional intent to limit the reach of § 666 and risks an unconstitutional interpretation of the statute by all but eliminating the federal interest identified by the Supreme Court in *Sabri*. Indeed, to paraphrase a Supreme Court case that rejected another expansive interpretation of a federal criminal law, "[t]he government's reading of [§ 666] would alter sensitive federal-state relationships, convert an astonishing amount of traditionally local criminal conduct into a matter for federal enforcement," and "would transform the statute from one whose core concerns are [the integrity of the administration of programs receiving federal funding] into a massive [federal anti-corruption statute]." *Bond*, 572 U.S. at 863 (quotation marks

---

[3] The Fifth and Eighth Circuits cited to a district court case, *United States v. Mongelli*, 794 F. Supp. 529 (S.D.N.Y. 1992), for this "traditional valuation methods" approach. The *Mongelli* court, which dealt with the problem of how to value the intangible property of a license, identified three methods: (1) the amount of the bribe offered to show the market value (the same method later adopted in *Marmolejo*); (2) the dollar amount of gross business profit obtainable by having a similar license; and (3) evidence establishing the actual value of the license. *Id*. at 531. The fact that two of these methods are inapplicable to this case, and the third is a catchall that merely restates the problem, demonstrates the difficulty of shoe-horning the allegations in the indictment into the framework of 18 U.S.C. § 666.

omitted) (quoting *Bass*, 404 U.S. at 349-50) *see also Zwick*, 199 F.3d at 686.  It is also contrary to the text of the statute.  Section 666 requires the government to prove the "value" of the transaction to a specific amount, not the transaction's "potential" or "possible" value, an important limitation on the kind of expansive, speculative interpretations that might upset the federal-state relationship.

A court has already rejected relying on speculative valuation methods.  In *United States v. McCormack*, the defendant was indicted for making four separate cash payments of $1,000 to a city police officer over a period of five months.  31 F. Supp. 2d 176, 178 (D. Mass. 1998).  The government asserted that these payments were made so that the officer would not investigate the defendant for a host of crimes, would influence other officers not to investigate or arrest the defendant, and would provide the defendant with law enforcement information.  *Id*. at 182.  Because the cumulative amount of the bribes ($4,000) was less than $5,000, the government could not rely on the amount of the bribes to reach the $5,000 benefit threshold.  *Id*. at 182-183.  The government alleged a number of theories to attempt to value the intangible benefit of non-enforcement of the law against the defendant, all of which were found to be too speculative.  *Id*. at 183.

The *McCormack* court was concerned that relying on a speculative valuation method would erode, if not eliminate, the federal interest underlying § 666.  Echoing the courts that have emphasized that the $5,000 threshold is intended to limit § 666 to significant threats to the administration of federal funds, the *McCormack* court noted that the government's speculative valuation methods would reach even "a $20 bribe for a $50 ticket," which Congress could not have intended.  *Id*. at 183.  The court made that observation even though the crimes the defendant was actually trying to get consideration for were far more serious, to include assault with intent to kill and cocaine trafficking.  *Id*. at 182.  Thus, where the value of the transaction cannot be determined

without relying on speculation, the transaction is outside of the scope of § 666.

Similar to the valuation methods in *McCormack*, there are two reasons the valuation method alleged in the indictment is too speculative to provide the necessary certainty that would bring this case within the ambit of § 666.  First, the indictment relies on the *maximum possible* fine, when the fine that each Alleged Victim might receive in the event they are convicted is entirely speculative.  Indeed, as indigent defendants, they might not receive any fine at all, or if they did would never expect to pay it.[4]  Second, the indictment's reliance on fines for specific offenses is speculative, because at the time the alleged bribe was offered, no charges had been filed against the defendant.  This conclusion does not require the Court to look beyond the four corners of the indictment: the "transaction" or "business" allegedly sought to be influenced is either the "arrest of" or "*recommendation* to criminally charge" the Alleged Victims for a crime, both of which contemplate charges yet to be filed and a solicitation occurring at the point of contact.[5]

---

[4] The Court may take judicial notice of a survey of Idaho judges included in a 2019 report by the Idaho Office of Performance Evaluations, where judges reported "ordering very low or no fines" in their cases, with one judge reporting: "I do not order fines in many cases because I am at the felony level.  People are indigent or unable to maintain steady employment, and potential punishment is so much greater."  Court-Ordered Fines and Fees, Office of Performance Evaluations, Idaho Legislature at 26 (March 2019) *available at* https://legislature.idaho.gov/wp-content/uploads/OPE/Reports/r1903.pdf.  Another judge noted that few felons ever paid their fines.  *Id*. at 27.

[5] It is this fact that distinguishes Mr. Bendawald's case from another, non-binding district court case that has looked to the possible fine amount to satisfy the $5,000 threshold.  In *United States v. Collare*, a case where a woman gave sexual favors to a police officer in exchange for assistance for her boyfriend, the boyfriend's case was already pending and the charges against him and the penalties he was facing were known with certainty.  No. 1:20-CR-17, 2022 WL 138127, at *2 (M.D. Pa. Jan. 14, 2022) *aff'd on other grounds by United States v. Collare*, No. 22-1551, 2023 WL 2524451 (3d Cir. Mar. 15, 2023).  Indeed, in its briefing of the issue the government relied on the defendant being charged with "a specific criminal case" to distinguish *McCormack*.  Gov't's Brief in Opp. to Def.'s Mot. for Judgment of Acquittal Under Fed. R. of Crim. P. 29, ECF No. 117 at 12 (Aug. 12, 2021).  In any event, the Court is not bound by the decision in *Collare*, which was decided after the jury returned a verdict and summarily concluded that the potential amount of the fine was a sufficient valuation method without meaningful analysis.  We submit that *Collare* was wrongly decided.

Indictment at ¶¶ 10, 14, 16, 18, 20 (emphasis added). The indictment thus piles speculation on top of speculation: speculation first as to what specific crime would be charged, and then speculation as to what fine an Alleged Victim might receive if they are charged.[6] Congress could not have intended such a tenuous chain of inferences to support a § 666 charge.

It is not an exaggeration to say that, if the government's theory is adopted, the federal government would have oversight of essentially all law enforcement in the State of Idaho, transforming § 666 into a general anti-corruption statute. The requirement that the police department receive $10,000 in federal grants is no meaningful limit; even Salmon, Idaho, population barely over 3,000, received a $123,930 grant from the federal government in 2020.[7] Thus, if a Salmon Police Officer stopped a motorist and identified any potential felony charge the motorist might be facing (Idaho law authorizes fines of $50,000 for a generic felony, I.C. § 18-112), the motorist would commit a federal crime if he offered to buy the Salmon Police Officer a cup of coffee to look the other way and the Salmon Police Officer would commit a federal crime if he accepted. A felony is not even necessary: said officer would also violate federal law if he identified five misdemeanors (Idaho law authorizes fines of $1,000 for a generic misdemeanor, I.C. § 18-113). Nor is a *state* crime necessary, according to the indictment, which alleges the maximum possible fine for a potential *federal* offense. Indictment at ¶ 5. Under the government's

---

[6] Such fines may not even be a "business, transaction, [or] series of transactions of the City of Caldwell," Indictment at ¶¶ 10, 14, 16, 18, 20, given that prosecutions for felonies committed in the City of Caldwell are undertaken by Canyon County prosecutors and any fines for state drug offenses ordered against the defendant would be paid to the clerk of the court and distributed to the Idaho General Fund or to the district court's fund, not the City of Caldwell. *See* I.C. § 19-4705(d).

[7] *See* United States Attorney's Office for the District of Idaho, Department of Justice Awards Nearly $400 Million for Law Enforcement Hiring to Advance Community Policing (June 2, 2020) *available at* https://www.justice.gov/usao-id/pr/department-justice-awards-nearly-400-million-law-enforcement-hiring-advance-community.

theory, the Salmon Police Officer could be liable under § 666 based on a potential offense it is not even within his jurisdiction to enforce and that has no relation to the state entity he works for and that receives federal funds.

Yet the government's interpretation of § 666 would allow it to go even further. As the Fifth Circuit held, § 666 "does not specifically require that the payor or the payee of the bribe value the transaction at $5,000," the purpose of the provision is to "ensure[] that the statute reaches acts of bribery involving transactions of substantial value." *Marmolejo*, 89 F.3d at 1193-94. In addition, at least one circuit court has held that a defendant need not have knowledge of the value of the transaction and that the mens rea of the statute is satisfied by the corrupt solicitation of the bribe. *See United States v. Abbey*, 560 F.3d 513, 521-22 (6th Cir. 2009), *abrogated on other grounds by Snyder v. United States*, 144 S. Ct. 1947 (2024). The Ninth Circuit's position is not clear, but if neither the motorist (the payor) nor the Salmon Police Officer (payee) is required to value the transaction at $5,000, and the determination of the value of the transaction is an "objective" one, then the government could potentially bring a federal program bribery charge if it determined after the fact that the motorist could have faced a charge or series of charges carrying a maximum possible fine of $5,000 or more, even though *neither* motorist *nor* Salmon Police Officer understood the "value" of letting the motorist go to be $5,000 or more. For instance, there does not appear to be anything in the government's interpretation of the statute that would prohibit a federal program bribery prosecution for a motorist (who it turns out is a felon) offering a Salmon Police Officer a cup of coffee to let him go if the government later determined that the motorist owned a firearm he had mistakenly left in the trunk of the car, such that by being allowed to drive off the firearm was never discovered and he never faced charges for being a felon in possession of a firearm, which as the indictment alleges carries a maximum possible fine above $5,000.

Of course, police officers should not accept cups of coffee (or anything else) in exchange for not enforcing the law.  Idaho has a broad, unlimited bribery statute that prohibits bribing police officers regardless of any monetary threshold.  *See* I.C. § 18-1309.  The question, therefore, is not whether such conduct should go unpunished, but whether the conduct alleged in the indictment is within the scope of the specific federal law at issue.  After all, the purpose of § 666 is not to punish all police corruption or to punish sexual misconduct, its purpose is to protect the integrity of the administration of federal program dollars transferred to state and local entities.  The Supreme Court has broadly interpreted that interest, but Congress has clearly set a limit that must have some meaning, a limit the government has exceeded here by trying to shoehorn what it plainly views as a sexual misconduct case into the framework of federal program bribery.

Accordingly, the Bribery Counts must be dismissed because the alleged valuation method, the maximum possible fine an Alleged Victim could receive in the event they were charged with a crime, is too speculative to be a valid valuation method under § 666.  The indictment thus fails to state an essential element of the offense.

## II.     Any Valuation Method Would Be Speculative and Unworkable, Rendering the Indictment Impermissibly Vague.

The Fifth Amendment Due Process Clause provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law.'"  U.S. Const. amend. V.  "[T]he Government violates this guarantee by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement."  *Johnson v. United States*, 576 U.S. 591, 595 (2015).  A vague provision is not "constitutional merely because there is some conduct that clearly falls within the provision's grasp."  *Johnson*, 576 U.S. at 602.  Mr. Bendawald brings this vagueness challenge on an as-applied basis.  Where First Amendment rights are not at issue, the

"court need only examine the vagueness challenge under the facts of the particular case and decide whether, under a reasonable construction of the statute, the conduct in question is prohibited." *United States v. Fitzgerald*, 882 F.2d 397, 398 (9th Cir. 1989).  In the pretrial posture, the facts of the particular case include the facts presented in the indictment.  *See United States v. Saathoff*, 708 F. Supp. 2d 1020, 1035-1037 (S.D. Cal. 2010) (dismissing case on pretrial as-applied vagueness challenge).

If § 666 is interpreted to embrace a speculative valuation method such as the maximum possible fine for a potential uncharged offense, then it will be impossible for persons of ordinary intelligence to know what conduct triggers federal regulation.  Speculative valuation methods allow the federal government to pick and choose after the fact what conduct to sanction by assigning an "objective," post facto valuation that may have never been intended or contemplated by either party.  That is the essence of a vague law, in that it allows arbitrary enforcement with no clear bounds on federal law enforcement.[8]

The government may object that the maximum possible fine is not vague.  After all, the maximum possible fine is set down in the law in black and white, and a police officer would be expected to know the potential punishments for the crimes they enforce.  Yet as noted above, the vagueness in using maximum possible fine comes from the fact that the indictment alleges that the potential crime had not been charged at the time of the alleged bribe, and a maximum possible fine is just that: the possible fine.  The vagueness of the government's valuation method is demonstrated

---

[8] The fact that the statute requires a mens rea of corrupt intent does not cure the vagueness as to the scope of the statute.  *See Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982).  The question is which bribes fall under the umbrella of the federal statute, not whether a bribe occurred at all.  Further, because the question of how the transaction is valued is an objective one that does not depend on the subjective intent or valuation of the parties to the bribe, there is no mens rea limit on the $5,000 value requirement.

by how a jury would struggle to apply it. The government would introduce evidence of the maximum possible fine, but it would also have to allow that any fine a complainant received might be below the $5,000 threshold, or they could face no fine at all. Would the parties be compelled to submit evidence on the probability that each Alleged Victim would receive a fine over $5,000? How would the jury evaluate that evidence? Would it be instructed to put a percentage value on the possibility of a fine below the maximum possible amount, and discount the fine accordingly? Either the jury must be instructed that the maximum possible fine establishes the value of the transaction on its own, which excuses the government from proving that the actual value of the transaction was equal to or greater than $5,000 and permits the jury to convict Mr. Bendawald on a fiction, or the jury will have to find a way to assign a value to the transaction based on arbitrary, speculative criteria about how the Alleged Victim's case will be expected to end up. The first possibility is prohibited by the statute and due process, and the latter is hopelessly vague. The jury should not be saddled with the impossible task of finding a way to value a transaction where an intangible is exchanged for an intangible and neither is susceptible to definite valuation.

Indeed, because the indictment alleges an exchange of an intangible benefit for an intangible benefit, wholly divorced from any monetary transaction or property right, there is no valuation method that can cure the speculative (and thus vague) nature of the Bribery Counts. The conduct alleged in the indictment must either be outside the scope of § 666, or applying the statute to the conduct at issue violates due process because any valuation method is too vague to apprise a defendant in Mr. Bendawald's position as to where the boundaries of the statute lie. In both cases, the Bribery Counts must be dismissed.

**CONCLUSION**

For the foregoing reasons, Mr. Bendawald respectfully requests that the Court dismiss Counts Two, Four, Five, Six, and Seven of the indictment.

DATED this 1st day of October, 2024.

NEVIN, BENJAMIN & McKAY LLP

 /s/ Debra Groberg_____
Debra Groberg

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of October 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Katherine L. Horwitz
United States Attorney's Office
khorwitz@usdoj.gov

/s/ Debra Groberg
Debra Groberg