Debra Groberg (ISB#9797)
Nathan Pittman (ISB#9430)
NEVIN, BENJAMIN & McKAY LLP
303 West Bannock
P.O. Box 2772
Boise, Idaho 83701
Telephone: (208) 343-1000
Facsimile: (208) 345-8274
dgroberg@nbmlaw.com
npittman@nbmlaw.com

*Attorneys for Defendant Ryan Bendawald*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO. 1:23-CR-281-DCN |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **DEFENDANT RYAN BENDAWALD'S** |
| | ) | **REPLY TO GOVERNMENT'S** |
| RYAN A. BENDAWALD, | ) | **OPPOSITION TO MOTION TO** |
| | ) | **DISMISS COUNTS TWO, FOUR,** |
| Defendant. | ) | **FIVE, SIX, AND SEVEN OF THE** |
| | ) | **INDICTMENT [DKT. 72]** |
| _____ | ) | |

The government's Opposition advances a maximalist interpretation of 18 U.S.C. § 666(a)(1)(B) that sweeps well beyond the limits Congress placed into the statute and risks eliminating its constitutional underpinnings. The government all but reads the $5,000 transactional element out of the statute, transforming it into a general anti-corruption law. But the statute, properly understood, does not permit the vague, speculative valuation method alleged in the indictment, and therefore the Bribery Counts must be dismissed.

**I.        Rule 12 Permits a Pretrial Challenge to the Alleged Valuation Method.**

The government's Opposition confirms what is plain on the face of the indictment, that the government is committed to "the potential maximum fine penalty" as the valuation method for

REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO DISMISS COUNTS TWO, FOUR, FIVE, SIX, AND SEVEN OF THE INDICTMENT - 1

"each form of police business alleged." Opp. at 11. The government agrees that the $5,000 threshold for the value of the "business" or "transaction" at issue is an essential element and does not assert the indictment contains other, unalleged valuation methods.[1] Rule 12(b)(3)(B)(v) thus permits the Court to decide pretrial whether the government's chosen valuation method states an offense under § 666(a)(1)(B), because "[a]n indictment fails to state an offense if the specific facts alleged in it fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation." *United States v. Partridge-Staudinger*, 287 F.R.D. 651, 653 (E.D. Wash. 2013) (quoting *United States v. Vitillo*, 490 F.3d 314, 321 (3d Cir. 2007)) (quotation marks omitted). Because the Motion to Dismiss challenges whether the government's chosen valuation method is cognizable under the statute, it does not ask the Court to weigh the potential evidence that may be adduced at trial or "insert its own perspective" for that of any trial witness, Opp. at 11; it only asks whether the indictment has stated an essential element of the offense.

The government's attempt to distinguish *United States v. McCormack*, 31 F. Supp. 2d 176 (D. Mass. 1998) therefore misses the mark. The Court does not have to look beyond the four corners of the indictment, which plainly alleges the valuation method the government will use at trial, to determine whether that valuation method is legally permitted under § 666(a)(1)(B). Indeed, the government distinguishes *McCormack* in part on the basis that the "theories of valuation in *McCormack* had nothing to do with the maximum fine penalty," further indicating its commitment to this method. Opp. at 10. There is therefore no "dispute" as to the "potential means of valuation," the indictment states and the government confirms that the valuation method will be based on "the potential maximum fine penalty." *Id*. at 11. There may yet be a dispute at trial over

---

[1] Having committed itself to the valuation method in the indictment, if the government were to present evidence of another valuation method, it would violate due process and constitute an illegal variance. *See United States v. Adamson*, 291 F.3d 606, 615 (9th Cir. 2002).

REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO DISMISS COUNTS TWO, FOUR, FIVE, SIX, AND SEVEN OF THE INDICTMENT - 2

whether the evidence shows the "business" or "transaction" was actually worth $5,000 given the potential maximum fine penalty, but that is not the question posed by the Motion to Dismiss.

With the exception of *Collare*, distinguished in the Memorandum in Support and discussed further below, the other cases cited by the government do not support its argument. The government did not commit itself to a valuation method in the indictment in *United States v. Chambers*, No. 17CR396, 2018 WL 1726239 (S.D.N.Y. Apr. 9, 2018), *United States v. Marlinga*, No. 04-80372, 2006 WL 2086027 (E.D. Mich. July 25, 2006), *United States v. Apple*, 927 F. Supp. 1119 (N.D. Ind. 1996), or *United States v. Mongelli*, 794 F. Supp. 529 (S.D.N.Y. 1992). Moreover, except for *Apple* (also discussed below) the cases also involved more traditional bribery schemes involving money and property, Superseding Indictment, *United States v. Chambers*, 17-cr-396, Dkt. No. 60 (Mar. 15, 2018), monetary contributions and fundraising, *Marlinga*, 2006 WL at *7, or the offer of a bribe for a business license, *Mongelli*, 794 F. Supp. at 530-531.

Because the Motion to Dismiss challenges the indictment for failure to state an essential element of the offense, and because such a challenge is the quintessential function of a motion to dismiss under Rule 12(b)(3)(B)(v), the Court can decide the Motion on the merits.

**II.     The Indictment Alleges a Speculative Valuation Method that is Beyond the Scope of § 666(a)(1)(B).**

As to the merits, the government responds to Mr. Bendawald's narrow argument, that the particular valuation method alleged in the indictment is too speculative to be within the reach of § 666(a)(1)(B), by taking a sweeping, maximalist position that all but writes the $5,000 valuation requirement out of the statute. Much of the government's Opposition is devoted to going over ground Mr. Bendawald already covered in his Memorandum in Support, citing many of the same cases and drawing many of the same conclusions about the purpose and structure of the statute. For instance, the parties agree that § 666(a)(1)(B) was enacted pursuant to Congress's spending

power and the Necessary and Proper Clause, meaning that the purpose of the statute is to protect the integrity of programs administering federal funds. Opp. at 4, 14. Thus, the statute is not a general anti-corruption statute but has a narrower focus on conduct that threatens to imperil federal funds by compromising the agency administering them. *See Sabri v. United States*, 541 U.S. 600, 606 (2004). The parties also agree that the requirement that the "business" or "transaction" at issue have a value of $5,000 or more is a "substantive" element in the statute. Opp. at 4-5.

Despite this general agreement on the structure and purpose of the statute, the government spends a significant portion of its Opposition arguing for a broad interpretation of "any thing of value" in the statutory phrase "in connection with any business, transaction, or series of transactions of such organization, government, or agency involving any thing of value of $5,000 or more." 18 U.S.C. § 666(a)(1)(B). Yet the parties do not disagree about what those four words mean. Mr. Bendawald is constrained by case law to agree, and has never contested, that his "arrest of" or "recommendation to criminally charge" a complainant can be the "business" or "transaction" involving a "thing of value" required by the statute. But urging a broad interpretation of what kinds of "business" or "transaction" involve a "thing of value" under the statute does not answer the central argument of Mr. Bendawald's Motion to Dismiss: no matter how broadly interpreted, there must be a non-speculative way to value the "thing" at $5,000 or more.

It is telling that at the same time the government chides Mr. Bendawald for supposedly not focusing on the text of the statute, the thrust of the government's Opposition is that Congress did not mean what it said when it limited the reach of § 666(a)(1)(B) to only bribes solicited or offered to influence government "business" involving something worth $5,000 or more. But the $5,000 threshold is not a puzzle to be solved or a requirement to be minimized into non-existence: it is an essential element of the statute and, together with the $10,000 federal funding requirement, makes

REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO DISMISS COUNTS TWO, FOUR, FIVE, SIX, AND SEVEN OF THE INDICTMENT - 4

what would otherwise be a constitutionally suspect direct regulation of state and local government agents a valid exercise of Congress's spending power.  *See Sabri*, 541 U.S. at 606.  It is equally telling that the government completely ignored Mr. Bendawald's interpretive arguments about the constitutional reach of the statute, grounded in case law and the statutory text, dismissing them as "policy" arguments.  Opp. at 15.  The government ignores the Supreme Court's holdings in *Bond* that (1) the federal government does not have a general police power; and (2) absent a clear indication, a federal criminal statute should not be construed in a way that dramatically intrudes on state criminal jurisdiction.  *See Bond v. United States*, 572 U.S. 844, 854, 857 (2014).  The government fails to demonstrate such a "clear indication" and instead tries to rewrite the statute.

> A. **Section 666(a)(1)(B) Requires A Non-Speculative Means of Determining the Actual Value of the "Business" or "Transaction."**

The language in § 666(a)(1)(B) is clear: the statute only applies where the "business" or "transaction" sought to be influenced by the alleged bribe involves something that has a value of $5,000 or more.  The statute does not speak of potential or possible value; Congress used a definite amount of cold hard U.S. dollars to set the limit on the statute's reach.  Indeed, the government recognizes that this is the "only limiting principle" the statute imposes on the "business" or "transaction" at issue.  Opp. at 12.  But to be a limiting principle the $5,000 threshold must actually limit the statute: by putting this language in the statute, Congress must have intended that there would be some instances of bribery, even involving agents of state governments that receive $10,000 or more, that are outside the scope of § 666(a)(1)(B) and are instead left for criminal enforcement by the states.  *See United States v. Marmolejo*, 89 F.3d 1185, 1192-93 (5th Cir. 1996).  Yet the government works to dismantle this limit through a strained interpretation of the statute.

The government first erodes the $5,000 limit by asserting the valuation it requires is "subjective," in that the value of the "police business" alleged in the indictment can be determined

from "any number of perspectives." *Id.* at 11. The government repeats this argument throughout its Opposition, but it fundamentally misses the point and shows how the government's interpretation of the statute conflates the broad allowance for the kinds of things that can be a "thing of value" with the definite $5,000 valuation threshold. The case the government cites for this proposition, *United States v. Petrovic*, 701 F.3d 849 (8th Cir. 2012), is not a § 666 case; it instead involved threats in interstate commerce to extort a "thing of value" under 18 U.S.C. § 857(d). Unlike § 666(a)(1)(B), this section does not have a monetary threshold. In both statutes Congress did not limit the kinds of things, tangible or intangible, having objective or subjective value, that can be the thing the defendant is trying to obtain or influence, but in § 666(a)(1)(B) Congress set a benchmark of $5,000 for the value of that thing. Put another way, no matter whose perspective the transaction is viewed from, for criminal liability to attach the government must be able to show that the transaction involved something that was worth at least $5,000.

The government attempts to support its argument by contrasting the bribery subsection, § 666(a)(1)(B), with another subsection, § 666(a)(1)(A), which penalizes theft of government property. The government asserts these two subsections have different valuation methods, and that the valuation method for the bribery subsection should be interpreted more broadly. Opp. at 14. Subsection (A) is limited to stealing "property that is valued at $5,000 or more," § 666(a)(1)(A)(i), and Subsection (B) is limited to bribery aimed at influencing a "thing of value of $5,000 or more," § 666(a)(1)(B). The government claims to see something significant in this slightly different language, but there is simply no basis to conclude that Congress intended to hide different valuation methods between the subsections through the use of "is" and "of." The only defensible reading of the two subsections is that they both require the "property" or the "thing" have a value of $5,000 or more.

To reach its conclusion, the government again improperly conflates the class of things that are the subject of the statute with the means by which those things are valued. The $5,000 threshold has the same constitutional limiting function in both subsections: Congress was concerned with protecting the integrity of programs administering federal funds by punishing government agents who either steal from an agency receiving federal funds or who seek or obtain bribes, but to avoid the constitutional issues recognized in *Bond* both the value of the thing stolen and the subject of the bribe have to be significant enough to affect the federal interest. *See Marmolejo*, 89 F.3d 1192 (the purpose of the statute was to punish "significant acts of *theft*, fraud, and *bribery*") (quoting S. Rep. No. 225 at 3510 (emphasis added)). Just as Congress was not concerned with the police officer who accepts a $20 bribe to let a motorist out of a $50 ticket, it was equally unconcerned with the City Hall clerk who takes $20 out of the cash drawer. Because the subsections have the same function, there is no reason to disregard the rule of statutory construction that the same words ("value," "$5,000 or more") should be given the same meaning in the same statute. *See ALDF v. U.S. Dept. of Ag.*, 933 F.3d 1088, 1095 (9th Cir. 2019).

The government's conflation of the "any thing of value" element and the $5,000 valuation requirement crystallizes in its assertion that "the plain meaning of 'involving anything of value' broadly encompasses any form of valuation—tangible or intangible—connected in some fashion to the business or transaction that is the subject of the bribe." Opp. at 14. Again, while the "thing of value" may be tangible or intangible, Congress plainly stated in § 666(a)(1)(B) that the value of the thing must be reducible to a very tangible and objective $5,000 threshold. Nor does the statutory language the government cites, "involving anything of value," logically relate to the "form of valuation" for the thing of value.

These arguments lead the government to all but write the $5,000 threshold out of the

statute.  The government makes the sweeping assertion that the actual "limiting principle on valuation is that it must be connected to the business or transaction," *id*. at 17, apparently contradicting its earlier assertion that the $5,000 threshold is the "only limiting principle" on the business or transactions element, *id*. at 12.  The government's argument is either contradictory or it is circular: the only limit on the kind of business or transaction the statute is concerned with is that it involves a thing of value of $5,000 or more, and whether the thing is valued at $5,000 or more is determined by whether it is involved with the business or transaction at issue.  Which means there is no $5,000 threshold at all.  That conclusion is confirmed by the government's assertion that "as long as $5,000 or more is involved in the business or transaction in some way, whatever method by which that valuation came to be realized is viable under the statute." *Id*.  In the government's interpretation, the conclusion validates the method, the method does not lead to the conclusion.  Congress could not have intended a statute that works backwards.

For all its pieties about adhering to the statutory language, the government's interpretation rewrites the statute and nullifies one of the two requirements that underpin the statute's constitutionality.  The Court should adopt a straightforward reading of the statute requiring the government to prove that the "business" or "transaction" involved a "thing of value" that had an actual value of $5,000 or more, a benchmark that precludes speculative valuation methods.  If there is any doubt, the Court should follow the rule of lenity and adopt Mr. Bendawald's interpretation. *See United States v. Ryberg*, 43 F.3d 1332, 1334 (9th Cir. 1995).

B.   **The Government's Valuation Method is Impermissibly Speculative.**

Although the government gamely asserts the valuation method alleged in the indictment is not speculative, Opp. at 14-15, it does not dispute Mr. Bendawald's characterization of the chain of logic that leads to that conclusion.  The government acknowledges that the indictment alleges "the criminal charges the defendant *could have pursued*," and the fines "that *could* result" from

REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO DISMISS COUNTS TWO, FOUR, FIVE, SIX, AND SEVEN OF THE INDICTMENT - 8

that decision. Opp. at 8 (emphasis added). The valuation thus depends on whether the complainant was charged, what they might have been charged with, whether they were convicted or pleaded guilty, and ultimately what fine they received at sentencing, if any. That cannot be characterized as anything but a speculative chain of inference. The government asserts it is not speculative because there were "potential financial ramifications" attendant to Mr. Bendawald's policing decisions, *id*. at 15, but this is unconvincing. Setting aside the fact that the government used the word "potential," indicating lack of certainty and contingency, the decision to purchase a lottery ticket also has "potential financial ramifications" but there can be no argument that those ramifications are anything but speculative, potentially costing the purchaser a dollar or netting them $1 million. Just because the government identifies an outer bound of consequences does not mean determining the "value" of the decision is anything other than an exercise in speculation.

Perhaps because it is unable to convincingly argue that its chosen valuation method is non-speculative, the government ultimately retreats into the very fiction Mr. Bendawald identified in his Memorandum in Support: that the complainant's actual fine (or even actual expected fine) does not matter. The government concludes its argument by asserting that "the actual fine that the victims would have paid had they been arrested, convicted, and fined is *irrelevant* . . . What matters is that the victims would have been *susceptible* to a fine of $5,000 or more." *Id*. at 20 (emphasis added). The government thus abandons any pretense to actual valuation, which is in line with its interpretation of the statute all but eliminating the $5,000 threshold.

Abandoning actual value and embracing the fiction of speculative value moves the government's position beyond the statutory text and gives the federal government supervisory authority over essentially every police officer in the country. The government did not address this argument or the constitutional framework set out in *Bond*. That may be because, given the

interpretation advanced in its opposition, the government would have no choice but to agree. The inescapable logic of the government's position is that yes, a motorist who offers a cup of coffee to a Salmon, Idaho police officer to let him go from a traffic stop violates federal law if someone, anyone, who claims to have an interest in the transaction could figure out some way to argue something potentially worth $5,000 was at stake. Indeed, the government goes farther than even the hypotheticals in the Memorandum in Support. By arguing that liability can be determined from any person's perspective relying on a subjective valuation using any possible method that person could dream up, the government converts § 666 from a statute for the protection of federal funds into a general anti-corruption statute and intrudes on state criminal jurisdiction. Yet the government goes even further: one thing that is unstated but that must be true given the allegations in the indictment is that one of those persons with an interested "perspective" that can determine the value of a transaction must be the federal government itself. The indictment uses the potential maximum fine under *federal law* as one of the valuation methods. Indictment at ¶ 5. If the government is correct, then § 666(a)(1)(B) truly worked a revolution in federalism, because the federal government itself could determine that an interaction between a state officer and a motorist was worth $5,000 to the federal government and punish them on that basis.

   C. **The Cases the Government Relies on Do Not Support its Conclusions.**

  The government relies on a number of cases, most of which were also discussed by Mr. Bendawald. *See* Opp. at 15-17. Mr. Bendawald does not necessarily disagree that these cases discuss a number of permissible valuation methods, but would add that these methods are aimed at placing an actual value on a transaction, whereas the government interprets them to essentially require no valuation method. Regardless, this discussion is academic given that the government has committed itself to a particular valuation method in the indictment. The government highlights three more cases (none of which are binding on the Court) to support its position, but upon closer

examination they are either inapposite or distinguishable.

The government's reliance on *Robinson* is strained, as every part of the case the government discusses actually supports Mr. Bendawald's argument. As noted, Mr. Bendawald has never contested that a bribe paid to a police officer not to enforce the law is potentially within the scope of § 666. *See United States v. Robinson*, 663 F.3d 265, 267 (7th Cir. 2011). As to the rest of the case, the valuation measures the government highlighted[2] are hardly "vastly more indefinite" that the indictment's valuation method, Opp. at 18, in that they do nothing more than restate the Fifth Circuit's holding in *Marmolejo* that the value of an intangible can be determined by the amount of U.S. dollars the bribe giver is willing to pay to get it.

The defendant in *Robinson* was arrested after engaging in a $5,000 transaction with the officer. *Id*. at 268. Similarly, an agreement to pay $1,000 a week for a relationship that lasted over five weeks (Robinson encountered the police officer in late March, offered to pay him $1,800, and was arrested in the first week of May) would, together with an actual transaction involving $5,000, be strong evidence of the value of the police business at issue. *Id*. at 275-76. The government attaches great weight to the fact the Seventh Circuit used the word "profit" to describe the value of the transaction, whereas $5,000 was the price of the cocaine, but of course § 666 does not speak in terms of profit, it requires that the "business" or "transaction" involve something valued at $5,000 or more, and all parties agree that the price the briber is willing to pay the bribee is a valid measure of the value of the transaction. Of course, this does not help the government in

---

[2] The government does not highlight one of the valuation methods urged in *Robinson*, the officer's salary. The Ninth Circuit would likely hold that this valuation method is impermissible under 18 U.S.C. § 666(c), which states "[t]his section does not apply to bona fide salary, wages, fees, or other compensation paid, or expenses paid or reimbursed, in the usual course of business." *See United States v. Nichols*, 40 F.3d 999, 1000 (9th Cir. 1994); *see also United States v. Chafin*, 808 F.3d 1263, 1271 (11th Cir. 2015); *United States v. Mills*, 140 F.3d 630, 633 (6th Cir. 1998).

REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO DISMISS COUNTS TWO, FOUR, FIVE, SIX, AND SEVEN OF THE INDICTMENT - 11

this case, where the indictment alleges a valuation method where no money changed hands.

The government next relies on the district court decision in *United States v. Apple*, 927 F. Supp. 1119 (N.D. Ind. 1996), but it overstates the court's holding. It is not clear that the issue in Mr. Bendawald's case, whether a potential criminal fine of $5,000 or more is sufficient to satisfy the transactional value element, was ever raised in *Apple*. The government's recitation of the facts flattens out the primary issue in the case, which focused on the question of from whose perspective the transaction/business should be valued. The defendant in *Apple* had already been investigated and fined $10,000 by a state environmental regulatory agency, and the government alleged the defendant paid a bribe to an employee of the regulator to try to avoid criminal prosecution. *Id.* at 1120-21. The central issue in *Apple* was therefore whether the transaction could be valued from the perspective of the defendant, who intended to avoid a criminal fine, even though the alleged bribe had been paid to an employee of the regulatory agency and not to state criminal authorities. *Id.* at 1122 ("the issue becomes whether the Government can convict Apple for seeking to avoid fines he would have paid not to IDEM, but to someone else."). The parties and the court seem to have assumed, without challenge, that the potential criminal fine could have satisfied the transactional element. *See id.* at 1123. The *Apple* court itself cautioned against "overreading of dicta" in the decision and laid out its "precise" holdings, none of which pertain to the issue before the Court in Mr. Bendawald's case. *Id.* at 1126.

That said, the *Apple* court expressed a view of the $5,000 transactional element that is consistent with the concerns raised by Mr. Bendawald. The government appears to misread the decision when it states that the *Apple* court "dismiss[ed] a similar hypothetical" to the one raised by Mr. Bendwald about the Salmon police officer, Opp. at 19, when it stated "[t]he $5,000 value requirement is what keeps the statute from making a federal violator out of the motorist who bribes

a federally subsidized police officer with $20 to avoid a $50 traffic ticket," *Apple*, 927 F. Supp. at 1125. But the *Apple* court did not "dismiss" that hypothetical, it embraced it as an example of the kind of conduct that was beyond the reach of § 666. As the *Apple* court stated, "Congress wanted to limit the reach of section 666 to circumstances where, in some way, the bribe involves 'real money' and thereby a real threat to the ultimate integrity of appreciable federal funds," and concluded that "the $5,000 requirement is the finishing touch on the federal funds 'hook' that starts with the other requirements that the bribed agency received substantial federal funds and that the bribe be connected to agency business." *Id*. It is not at all clear the *Apple* court would have backed the government's theory that the transactional element can be satisfied so long as someone, somewhere, has the subjective belief that the business or transaction could be worth $5,000.

With respect to the final case the government relies on, Mr. Bendawald acknowledged in his Memorandum in Support that the district court in *United States v. Collare* rejected a challenge on similar facts. *See* Mem. in Supp. at 12 n.5. As noted, *Collare* is distinguishable because a specific crime had been charged at the time of the bribe, a fact relied on by the government in its briefing in *Collare* (which the government does not dispute in its Opposition), *see id*., whereas the bribery charges in Mr. Bendawald's case are based on maximum potential fines for crimes not yet charged. *Collare* of course is not binding on this Court, and it does not appear the district court in that case provided a reasoned analysis of the arguments raised by Mr. Bendawald. Perhaps recognizing this, the government charitably characterizes the *Collare* court's reasoning as "concise," Opp. at 21, whereas another characterization would be "summary."

Accordingly, the Court is not bound by any of these decisions, and they do not support the government's sweeping interpretation of the statute.

### III. The Government's Arguments Demonstrate the Vagueness of the Application of § 666 to Mr. Bendawald.

The government has clearly staked out grounds at the outer limits of the reach of § 666. As argued above, it interprets the statute so as to write the $5,000 valuation requirement right out of it. In doing so, the government not only exceeds the scope of the statute, but it creates a law where it is impossible for state agents to know when their conduct triggers federal enforcement, which also invites arbitrary enforcement. To recap the government's position, it asserts the $5,000 valuation requirement, despite being a fixed dollar amount, is "subjective," can be determined from any interested perspective, and thus does not depend on the actual intentions of the bribe giver and recipient or even the actual value they assigned to the transaction. *See* Opp. at 11. The government abandons actual valuation for the fiction of "susceptible" valuation. *Id.* at 20. The government thus articulates a valuation method that is both unpredictable, manipulable by whatever "perspective" the government chooses to assert (including its own), and can be substituted for the actual value of the transaction. By any standard, the government has asserted a vague and arbitrary valuation standard that cannot withstand due process scrutiny.

The government cites to multiple cases for the proposition that challenges to § 666 have routinely survived due process scrutiny, yet none of the cases cited address the issue raised by Mr. Bendawald. *See United States v. Ng Lap Seng*, 934 F.3d 110, 135 (2d Cir. 2019) (vagueness challenge over whether § 666 must include an "official act" standard); *United States v. Hardin*, 874 F.3d 672, 677 (10th Cir. 2017) (vagueness claim based on dispute over subject matter of the bribe); *United States v. Nelson*, 712 F.3d 498, 505 (11th Cir. 2013) (vagueness claim based on scope of honest services fraud); *United States v. Crozier*, 987 F.2d 893, 900 (2d Cir. 1993) (vagueness claim based on lack of mens rea requirement). Indeed, Mr. Bendawald has also not identified a case raising the challenge here, which is unsurprising given that Mr. Bendawald is also

REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO DISMISS COUNTS TWO, FOUR, FIVE, SIX, AND SEVEN OF THE INDICTMENT - 14

not aware of a case where the government articulated such a sweeping interpretation of the statute.

The government asserts four reasons why the statute is not void for vagueness as applied to Mr. Bendawald. Opp. at 24-25. The allegations do not fall within the "hard core" of § 666(a)(1)(B), which requires more than solicitation of a bribe by a public official. The entire question raised by the Motion to Dismiss is whether the indictment alleges the kind of public business that falls within the scope of the statute, and to that end Mr. Bendawald's case, involving no exchange of money and no public business susceptible to firm monetary valuation, is an unusual § 666(a)(1)(B) case.[3] It is remarkable that the government asserts Mr. Bendawald could rely on the "plain language" of the statute and could have expected the valuation method, given its argument it can use "any method of valuation connected to the business or transaction at issue," Opp. at 25, including subjective and speculative valuations from persons not involved in the transaction. The government cannot now claim the "plain language" of the statute when it has argued so stridently Congress did not mean what it said when it required a $5,000 valuation. Lastly, with respect to scienter, as Mr. Bendawald noted in his Memorandum in Support the scienter requirement cannot save this application of the statute where the vague element does not have a scienter requirement.

The statute as applied to Mr. Bendawald thus fails to provide him notice of conduct that would trigger federal enforcement and is so vague as to permit arbitrary enforcement.

---

[3] The government asserts Mr. Bendawald's case is not unusual, Opp. at 20 n.1, but this appears to be another example of the government trying to shoehorn what it views as a sexual assault case into a federal program bribery case. Most of the cases cited by the government are not § 666(a)(1)(B) cases at all and appear to have been chosen because they involved exchange of sexual favors, which is not the issue raised in this Motion. *See United States v. Barraza*, 655 F.3d 375, 378-79 (5th Cir. 2011); *United States v. Toothman*, 137 F.3d 1393, 1394-95 (9th Cir. 1998); *United States v. Jordan*, 364 F. Supp. 3d 670, 671-72 (E.D. Tex. 2019). The government thus cited only two other even potentially comparable cases, one of which is *Collare*.

REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO DISMISS COUNTS TWO, FOUR, FIVE, SIX, AND SEVEN OF THE INDICTMENT - 15

DATED this 29th day of October, 2024.

        NEVIN, BENJAMIN & McKAY LLP

        /s/ Debra Groberg
        Debra Groberg

REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO DISMISS COUNTS TWO, FOUR, FIVE, SIX, AND SEVEN OF THE INDICTMENT - 16

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of October 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Katherine L. Horwitz
United States Attorney's Office
khorwitz@usdoj.gov

                                                /s/ Debra Groberg
                                                Debra Groberg