JUSTIN D. WHATCOTT, IDAHO STATE BAR NO. 6444
ACTING UNITED STATES ATTORNEY
KATHERINE L. HORWITZ, OKLAHOMA STATE BAR NO. 30110
ASSISTANT UNITED STATES ATTORNEY
1290 W. MYRTLE STREET, SUITE 500, BOISE, IDAHO 83702
TELEPHONE: (208) 334-1211
JORDAN DICKSON, CALIFORNIA STATE BAR NO. 324406
CRIMINAL DIVISION, PUBLIC INTEGRITY SECTION
1301 NEW YORK AVE. NW, SUITE 1000
WASHINGTON, DISTRICT OF COLUMBIA 20530

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>RYAN A. BENDAWALD,<br><br>Defendant. | Case No. 1:23-cr-00281-DCN<br><br>**UNITED STATES'S REPLY IN SUPPORT OF ITS NOTICE OF INTENT TO OFFER EVIDENCE UNDER RULES 404(b) AND 413** |

The defendant is charged with sexually assaulting three women and sexually soliciting four more women while he was a Caldwell Police Officer. In the years leading up to and after these assaults and solicitations, the defendant sexually assaulted, solicited, harassed, stalked, and threatened more than a dozen women. Presently, the Government asks this Court to admit pretrial the following evidence: (1) the defendant's sexual assaults of Victim 2 and Victim 7 as intrinsic evidence, as well as other act evidence under Federal Rules of Evidence 413 and 404(b); (2) the defendant's sexual assault of Other Victim 1 under Rules 413 and 404(b); and (3) the defendant's sexual solicitation of Other Victim under Rule 404(b). As to the defendant's harassment, stalking, and inappropriate searching of Other Victims 2, 3, 4, 5, and 6, the Government noticed these witnesses' testimony under Rule 404(b) out of an abundance of caution.

1

## ARGUMENT

**I.    Evidence of uncharged sexual assaults committed by the defendant is admissible pursuant to Federal Rule of Evidence 413.**

Evidence of the defendant's other sexual encounters with Victim 2 and Victim 7 is necessary for the jury to understand the relationship between the defendant and these victims, as well as the circumstances leading to the charge offenses. Thus, this evidence is intrinsic to the crimes charged and admissible regardless of the application of Rules 413 or 404(b). Intrinsic evidence falls into one of two categories: first, evidence that is inextricably intertwined with the charged conduct; and, second, evidence that is necessary for the government to offer a coherent narrative of the defendant's crimes. *United States v. Vizcarra Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995). As to the latter category, the Ninth Circuit has affirmed the admission of other act testimony that explained the witness's relationship to the defendant and the circumstances surrounding the charged events (such as why the defendant would trust the witness with $1,000,000 worth of drugs). *See United States v. Beckman*, 298 F.3d 788, 793–94 (9th Cir. 2002). Simply, "[a] jury is entitled to know the circumstances and background of a criminal charge. It cannot be expected to make its decision in a void—without knowledge of the time, place, and circumstances of the acts which form the basis of the charge." *United States v. Daly*, 974 F.2d 1215, 1217 (9th Cir. 1992) (quotation omitted).

The facts surrounding the defendant's interactions with Victim 2 and Victim 7 are necessary for the jury to understand the circumstances surrounding the charges in Counts 2, 7, and 8 and the defendant's relationship with these two victims.

**Victim 2**

Between August 2018 and July 2019, the defendant harassed Victim 2 by repeatedly pulling her over during traffic stops and coming to her house unannounced. Throughout this timeframe, the defendant discovered Victim 2 with drugs for which he cited her for misdemeanor possession of controlled substances and paraphernalia. He also cited and arrested her for reckless driving when she drove through parking spots in a parking lot. Throughout this time, Victim 2 relayed information about other drug users to the defendant. They communicated by email, text, and in person. Twice, the defendant sexually solicited Victim 2 after threatening her with additional criminal charges for possessing drugs. These series of events are necessary to explain the relationship between the defendant and Victim 2 to the jury. Additionally, the defendant made representations to his fellow police officers and prosecutors about the nature of his relationship with Victim 2 up until July of 2019. To understand the context of these representations, the jury must understand the defendant's interactions with Victim 2 during this 11-month period.

In September 2018, the defendant cited Vitim 2 for possession of controlled substances after discovering marijuana during a traffic stop. Bryan Taylor, then the elected Canyon County Prosecutor, dismissed this charge one month later at the defendant's behest. Just two months later, the defendant caught Victim 2 again possessing drugs while he was searching for a fugitive in her home. He sexually solicited Victim 2 in exchange for not violating her parole or pressing new charges for her possession of heroin and methamphetamine. This event is charged in Count Two. Six months later, in June 2019, the defendant again cited Victim 2 for possession of drug paraphernalia and reckless driving

after he pulled her over during another traffic stop. The unusualness of this stop is reflected in another officer's recollection of this event.

Late at night, Officer Tylee Lanham stumbled onto the defendant, who had detained Victim 2 in the back of a car. This surprised Officer Lanham because the defendant had detained Victim 2 without calling the traffic stop into dispatch, which he described as "very unusual." Concerned for the defendant's safety, Officer Lanham stopped and asked the defendant whether he needed help. The defendant said no, so Officer Lanham left. Shortly thereafter, however, the defendant called Officer Lanham back to assist. By then, Victim 2 was "extremely upset," crying, and screaming at the defendant that "this is f'ed up" or "you're playing me." At that point, Officer Lanham continued, "[the defendant] arrested her and called out all of the information, kind of all at one time, to dispatch." Officer Lanham then observed the defendant take Victim 2 into custody. The defendant cited Victim 2 for possessing a drug pipe and recklessly driving based on her driving through a parking lot without following the designated pathways. When asked by Officer Lanham why he had not initially called the stop into dispatch, the defendant "didn't have too much of an explanation" and claimed to be "just checking her ID." This traffic stop and arrest happened the same month as the second, sexual encounter between the defendant and Victim 2, as detailed in the Government's Notice, ECF 80 at 15–16.

Based on the defendant's arrest of Victim 2 in June 2019, the Canyon County Prosecuting Attorney's Office filed misdemeanor charges of drug paraphernalia possession and reckless driving against Victim 2. In July 2019, the prosecutor informed the defendant that the pipe he seized from Victim 2 would be tested, which would result in felony charges for possession of heroin once the residue was confirmed. In response, the defendant

4

repeatedly insisted to the prosecutor that these charges should be dropped because Victim 2 "while not a CI, [was] just a confidential source . . . [who] has given info on a few cases that [he] has then used to target individuals and obtain independent PC to investigate." According to the prosecutor assigned to Victim 2's case: "Bendawald assured [the prosecutor] that there is no situation where [Victim 2] would be a witness and we would have [B]*rady* issues pop up." In light of this, and the defendant's "adaman[ce]" that the charges against Victim 2 be dismissed, the prosecutor dropped all charges against Victim 2. That happened approximately one month after the defendant's second sexual encounter with Victim 2 in June 2019. Throughout this one-year period, Victim 2 and the defendant were in regular communication, including texts and emails. Beginning in September of 2018, Victim 2 sent the defendant recordings of her conversations with others. Most of these recordings were sent to the defendant's work email, but Victim 2 sent at least one to the defendant's personal email account. These communications continued until March 2019.

These facts are crucial for the jury to evaluate the defendant's description of his relationship with Victim 2, as well as the charges alleged in Count 2. Without this background and context, the jury will be left with the mistaken impression that the defendant's only encounter with Victim 2 was in December of 2018. This mistaken impression would distort the reality of why the defendant made certain representations to his fellow officers and prosecutors about the nature of his relationship with Victim 2. Such representations are admissible as a party-opponent statement and provide crucial insight into his efforts to obfuscate the true nature of his relationship with Victim 2. The second sexual encounter provides necessary context for why the defendant made the representations he did about Victim 2 to his coworkers and prosecutors. Thus, the second

sexual encounter is intrinsic to the crime alleged and admissible regardless of the application of Rules 413 and 404(b). *See United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993) (concluding that prior, uncharged drug transactions were closely linked to events charged in a drug conspiracy and provided context for the government witness's testimony).

**Victim 7**

Like Victim 2, Victim 7's history with the defendant is necessary for the jury's understanding of their relationship and the nature of the charges in Counts 7 and 8. Victim 7's three interactions with the defendant are documented in police reports and corresponding records. Accordingly, while the defendant disputes that sexual encounters took place, there is no doubt as to when these events occurred.

In July 2010, Victim 7 first encountered the defendant after he pulled her over for a traffic stop. While detained, Victim 7 told the defendant that she had used methamphetamine, and the defendant discovered drugs and paraphernalia in the car. During this encounter, the defendant told Victim 7 that he could make criminal charges "disappear" if she either had a sexual encounter with him or provided him information about drug abusers. Despite this solicitation, no sexual encounter occurred. At the time, Victim 7 was 17 years old. The defendant next stopped and arrested Victim 7 in August 2015. This time, the defendant pulled Victim 7 over for a traffic violation and caught her with 2.2 grams of methamphetamine. He cited her for misdemeanor possession of drug paraphernalia. Victim 7 then performed oral sex on the defendant as part of the "same . . . deal" he offered her during their first meeting. This encounter happened in the defendant's police vehicle, while they were parked in a secluded spot near the railroad. This history is

6

crucial to the jury's understanding of the charges in Counts 7 and 8 because they inform Victim 7's understanding of her anticipated sexual encounter with the defendant later.

When the defendant again caught and arrested Victim 7 with drugs in March of 2021, she understood the "deal" to be oral sex, not anal sex. They returned to the same secluded spot by the railroad, where Victim 7 anticipated performing oral sex in the back of his police vehicle—as she had the last time. Thus, Victim 7 was surprised when the defendant anally penetrated her without consent. Upset and in pain, she attempted to pull away, but he forcefully pulled her back by her hips. To evaluate the bribery and aggravated use of force charges in Counts 7 and 8, the jury must be informed of the first sexual encounter. These events are necessary for the jury to understand the defendant's relationship with the Victim 7, as well as crucial context surrounding her expectation for their sexual encounter. Thus, this evidence is admissible as intrinsic to the crimes alleged.

In his response, the defendant incorrectly states that the proffered intrinsic evidence must itself be a violation of 18 U.S.C. § 242 to be admissible as intrinsic. Not so. *See Vizcarra Martinez*, 66 F.3d at 1012–13 (recognizing "coherent and comprehensible story"). Nor does the crime charged need to be a continuing offense to admit evidence intrinsic to the crimes charged, as the defendant next argues. *See id.*; *see also Beckman*, 298 F.3d at 793–94.

II. **Evidence of uncharged sexual assaults committed by the defendant is admissible pursuant to Federal Rule of Evidence 413.**

The Government noticed three other instances of sexual assault as admissible under Rule 413: (1) the defendant's sexual assault of Victim 2 in June of 2019; (2) the defendant's sexual assault of Victim 7 in August of 2015; and (3) the defendant's sexual assault of Other Victim 1 in 2013. All three satisfy Rule 413(d)'s definition of sexual assault and fall within the long-recognized presumption in favor of admission.

7

### A.    The parties agree that the defendant is charged with sexual assault.

There is no dispute that the defendant is charged with sexual assault, the first requirement of Rule 413. Fed. R. Evid. 413(a). In Counts 1, 3, and 8, the grand jury charged the defendant with sexual assault by penetrating Victim 1's vagina with his fingers, fondling Victim 3's vagina with his fingers, and forcibly raping Victim 7 by penetrating her anus with his penis. Each of these charges fall within the plain language of Rule 413's definition of sexual assault and the definitions incorporated by the Rule. *See* Fed. R. Evid. 413(d); 18 U.S.C. §§ 2241(a)(1), 2242(1), 2242(3). The defendant concedes as much. ECF 82, at 6. Thus, the only disputed question is whether the evidence offered is of other relevant sexual assaults that satisfy Rule 403's balancing test. *See* Fed. R. Evid. 413(b)–(d). They do.

### B.    The three other incidents meet the Rule's definition of sexual assault.

All three noticed events are sexual assaults pursuant to two federal statutes and one state statute. While three statutes are met here, only one is necessary under Rule 413(b). Rule 413(d) defines sexual assault as "a crime under federal law or state law" involving nonconsensual contact between the defendant's genitals and any other part of another person's body, or the attempt to do so. Fed. R. Evid. 413(d)(3). The Rule thus incorporates federal law and state law disjunctively, not conjunctively: thus, the evidence must be rape under either a federal statute or a state law. *See also Carroll v. Trump*, 660 F. Supp. 3d 196, 205–06 (S.D.N.Y. 2023) (applying Rule 413(d)'s definition to Florida state law, independently of the application of the incorporated federal statutes).

#### Idaho Sexual Assault Statute

The Idaho code criminalizes as nonconsensual rape: "the penetration, however slight, of the oral, anal or vaginal opening with a penis . . . [when] the victim submits under

8

the belief, instilled by the actor, that if the victim does not submit, the actor will . . . cause criminal charges to be instituted against the victim." Idaho Code § 18-6101(10).

Each of the three other sexual assaults fall squarely within Idaho's definition of rape under § 18-6101(10). Each sexual assault involved the defendant's penetration of the victims' vaginal or oral openings with his penis. Idaho Code § 18-6101. Before all three sexual assaults, the defendant threatened the victims with criminal charges. In both instances of sexual assault against Victim 2 and Victim 7, the defendant explicitly conditioned the sex acts under threat of criminal charges for felony drug possession.

Like Victim 2 and Victim 7, the threat of criminal charges against Other Victim 1 loomed over her assault. The defendant "always" harassed Other Victim 1 in the months leading up to the assault, by conducting traffic stops and inappropriately searching her. The defendant detained Other Victim 2 in the back of his car and began asking her about whether she thought he was "hot." The day of the assault, the defendant spotted Other Victim 1 driving and followed her to her grandmother's house. At the time, the defendant was driving a marked police car and wearing his duty belt. Other Victim 1 submitted to the sexual encounter because she "wanted him to leave her alone" and stop "harassing" her. During the assault, Other Victim 1 said she was "scared," pushed him off, and said that "someone is coming." Given these facts, including the harassment leading up to this assault, the defendant's actions towards Other Victim 1 satisfy the definition of rape under Idaho law. All three assaults also meet the definition of sexual abuse under federal law.

**Federal Sexual Assault Statutes**

Initially, there is no doubt that each incident involved sexual acts under the applicable definition. *See* 18 U.S.C. § 2246(2)(C) (defining "sexual act"). Thus, the only

9

question is whether the surrounding circumstances render the sexual act a sexual assault. They do under two different federal statutes: 18 U.S.C. § 2242(1) and 18 U.S.C. § 2242(3).

Section 2242(1) criminalizes sexual abuse when the offender causes "another person to engage in a sexual act by threatening or placing that other person in fear." *See* 18 U.S.C. § 2242(1). The Ninth Circuit has long recognized that § 2242(1) does not require fear of "kidnapping, serious bodily injury, or death," and broadly "requires any other type of fear" of "harm to oneself." *See United States v. Sneezer*, 983 F.2d 920, 923–24 (9th Cir. 1992); *United States v. Gavin*, 959 F.2d 788, 791–92 (9th Cir. 1992). "The definition of 'fear,' as used in 18 U.S.C. § 2242(1), is very broad. The element is satisfied when the defendant's actions implicitly place the victim in fear of some bodily harm." *United States v. Castillo*, 140 F.3d 874, 885 (10th Cir. 1998) (citing *Gavin*, 959 F.2d at 791).

Section 2242(3) also applies. In 2022, Congress amended this statute to define sexual abuse as "engag[ing] in a sexual act with another person without that other person's consent, to include doing so through coercion; or attempts to do so." Chapter 109A does not separately define "coercion." *See* 18 U.S.C. § 2246. Accordingly, this Court should give this term its ordinary, plain meaning. *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010).[1] When conducting a similar statutory interpretation, the Ninth Circuit found "[t]o 'coerce' is to 'compel to an act or choice by force, threat, *or other pressure*.'" *Walker v. City of Lakewood*, 272 F.3d 1114, 1129 (9th Cir. 2001) (quotation omitted).

---

[1] "Coercion" is defined in Chapter 110 as including "the abuse or threatened abuse of law or the legal process." *See* 18 U.S.C. § 1591(e)(2)(C). The Ninth Circuit has declined, however, to cross reference definitions from Chapter 110 into Chapter 109A. *See United States v. Sinerius*, 504 F.3d 737, 742–43 (9th Cir. 2007). Thus, well-established principles of statutory interpretation govern its meaning in Chapter 109A.

10

Here, all three assaults occurred while the defendant was on patrol. As an officer, he wore a service firearm and was a "policeman vested with . . . plenary discretionary powers" that include detention, intrusions into privacy, arrest, and use of force. *See Foley v. Connelie*, 435 U.S. 291, 297–98 (1978). All three women were actively involved in drugs and knew the defendant "desperately" wanted to catch them with drugs—he had explicitly threatened all three women with arrest before the assaults. All three women knew that the defendant exercised a tremendous amount of power and authority over them as an armed officer, including the use of force. *See also United States v. Monsalve*, 342 F. App'x 451, 457 (11th Cir 2009) (per curiam) (finding "fear" standard met when victims were smuggled into the country for sex work and told they would be deported). Given these facts, the defendant's actions were sufficient to place these victims in fear of some bodily harm and coerce them into sexual acts. Thus, each satisfies the definition of sexual assault § 2242(1) and § 2242(3). In his response, the defendant insists that these victims "consented" to these sexual encounters. Comparing these incidents to a defendant reluctantly pleading guilty in court, the defendant claims that "merely not wanting to have sex does not make a sexual encounter sexual assault." ECF 82, at 17. Unlike defendants in court, however, these victims had no one in their corner and no referee: no defense counsel to advocate for them and no judge to ensure their rights were protected. Instead, each victim faced a predatory, abusive police officer—alone. This distasteful analogy also ignores the applicable law, which makes clear that these three sexual encounters were not consensual. The law recognizes that a sexual encounter cannot be consensual when the perpetrator threatens criminal charges, places the victim in fear, or coerces her into a sexual act. Moreover, as the Ninth Circuit has recognized, lack of consent is not an element of sexual abuse. *See United*

11

*States v. Rivera*, 43 F.3d 1291, 1297–98 (9th Cir. 1995). Simply, each act was sexual assault under § 2242(3), § 2242(1), as well as Idaho Code § 18-6101(10). While all three provisions are met, this Court needs to find only one applies for Rule 413(b) to be satisfied.

### C. The other sexual assaults are relevant and necessary to show the defendant's propensity to commit the type of crime charged.

Finally, the three sexual assaults are relevant and necessary to show the defendant's propensity to commit the crimes charged. The defendant's attempt to minimize the similarity between his alleged actions with respect to the charged offenses and these three sexual assaults is unpersuasive. The three sexual assaults are far more similar than different in the important aspects. In each case, the defendant approached the victim while policing. He harassed and repeatedly pulled over each. The opportunity to exploit the vulnerabilities of each woman arose after he discovered each with drugs, which all three women abused. He assaulted all three when he was on duty—in opportunistic locations (Victim 7 was assaulted in his police vehicle while both Victim 2 and Other Victim 1 were assaulted in their homes).

Whether the defendant argues that the sex acts were consensual or that they never happened, as he has so far contended, the defendant is going to claim that the victims are lying. Thus, the other acts of sexual assault are just as probative to establish that the defendant has a propensity for doing exactly what the charged victims allege, regardless of whether the defendant claims consent or contends that the sex acts did not happen. Simply, the similarity of the assaults explains why this evidence is probative of the charges; it falls squarely in the heartland of the long-recognized presumption in favor of admission. *See United States v. Sioux*, 362 F.3d 1241, 1244 (9th Cir. 2004).

## III. Evidence of the defendant's harassment and solicitation of other women is admissible pursuant to Federal Rule of Evidence 404(B).

During trial, the Government intends to call additional women to testify about their encounters with the defendant and CPD's response to reports of abuse. Of the more than a dozen additional women who reported the defendant abused, harassed, and stalked them, the United States noticed seven such women as potential witnesses. All of the noticed women's experiences with the defendant follow the same, familiar patterns.

A constellation of details in these women's experiences overlap with those presented in the charged offenses. Most commonly, the defendant discovered Victims 1, 2, 4, 5, 6, 7, as well as Other Victims 1, 2, 3, 4, and 5, with user amounts of drugs and threatened them with criminal charges. He suddenly appeared at Victims 2, 5, and Other Victims 1, 3, and 4 homes unannounced, sometimes late at night; and followed and repeatedly pulled over Victims 2, 3, 5, and Other Victims 1, 2, 3, and 4. The defendant handcuffed Victims 1 and 3 while they were detained and assaulted both with his fingers while they were pinned against a vehicle. Similarly, he pushed Other Victim 6 against a vehicle when he sexually solicited her in 2017—the same way he assaulted Victim 1. The defendant solicited Victims 4, 5, 7, and Other Victim 6 to perform oral sex. Of the six noticed Rule 404(b) events, the Government asks that the Court rule before trial that the defendant's sexual solicitation of Other Victim 6 is admissible during its case in chief. As the trial evidence unfolds, the Government may seek admission of additionally noticed other acts.

## IV. The proffered testimony of the victims satisfies the rule of conditional relevance and Federal Rule of Evidence 104(b).

When determining whether there is sufficient evidence to satisfy Rule 104(b), this Court must examine all the evidence and determine "whether *the jury* could reasonably find

13

the conditional fact by a preponderance of the evidence." *See United States v. Norris,* 428 F.3d 907, 913–14 (9th Cir. 2005). When that fact is a prior sexual assault, the Ninth Circuit has held that the government may prove the assault to the jury in several ways, including with a judgment of conviction, testimony of the victim, or the defendant's own admission. *See United States v. Redlightning*, 624 F.3d 1090, 1120 (9th Cir. 2010).

Here, all noticed victims described their firsthand experiences with the defendant, which federal agents recorded. When, as here, the Government has provided recorded interviews of victims in discovery, courts have found the threshold to admissibility met. *See United States v. Porter*, 562 F. Supp. 3d 1162, 1169 (E.D. Cal. 2022), *aff'd*, 121 F.4th 747 (9th Cir. 2024); *see also Carroll v. Trump*, 124 F.4th 140, 155–56 (2d Cir. 2024) (per curiam).

Ignoring the applicable standard, the defendant asserts that this Court must conduct a lengthy evidentiary hearing where every victim is called to testify about their interactions with the defendant. The defendant also insists that he "would introduce . . . records produced in discovery" for the Court to determine whether he engaged in the alleged sexual misconduct or "innocent policing activity." *See* ECF 82, at 6. He further claims an evidentiary hearing is necessary for the Court to evaluate the "material omissions and misstatements" made by the Government, which would require calling numerous CPD Officers.[2] ECF 82, at 5. Practically, the defendant asks this Court to conduct a bench trial

---

[2]    In support, the defendant claims that the Government's assertion that he was "careful to avoid having his name on any report" is simply false. Notably, the defendant fails to tell the Court that the drafter of this report, Sergeant Myron Kershaw, will clarify during trial that he only wrote this report because he suspected wrongdoing by the defendant. The defendant never wrote a report. Other than Sgt. Kershaw, no officer reported the defendant's connection with this incident, despite the defendant being the catalyst for the call. Thus, the Government's description that the defendant took measures to avoid being associated with Victim 2's suicidal event will be fully supported by the testimony of the only officer to document the defendant's involvement.

before the jury trial. Even setting aside the practical difficulties of this request, the defendant's request for a hearing misunderstands the standard, which "teaches that 'the trial court neither weighs credibility nor makes a finding that the [party seeking admission] has proved the conditional fact by a preponderance of the evidence." *Carroll*, 124 F.4th at 155. Contrary to this standard, the defendant asks this Court to evaluate witnesses' credibility, review documents, and ultimately determine whether the sexual assaults and other acts occurred. This request improperly invites the Court to invade the province of the jury.

## Conclusion

Finally, the Government does not intend to seek the admission of all seven noticed other incidences in its case in chief. Rather, it noticed these other acts out of an abundance of caution to ensure compliance with the rules. Numerous factors impact the admission of this evidence, including the uncertainties of witnesses' availability given that trial is not scheduled to begin for seven months. Additionally, Rule 403 balancing largely depends upon how the evidence unfolds during trial. Thus, the Government now provides the notice herein of potential witnesses, and asks this Court to rule pretrial that the following evidence is admissible during the Government's case in chief:

- The other sexual assaults of Victim 2 and Victim 7 as intrinsic evidence of their relationships to the defendant and the crimes charged, as well as under Rules 413 and 404(b);

- The sexual assault of Other Victim 1 under Rules 413 and 404(b); and

- The sexual solicitation of Other Victim 6.

|  |  |  |
|---|---|---|
|  | Justin D. Whatcott<br>Acting United States Attorney | Public Integrity Section<br>U.S. Department of Justice |
| By: | */s/ Katherine Horwitz*<br>Katherine L. Horwitz<br>Assistant U.S. Attorney<br>United States Attorney's Office<br>District of Idaho<br>1290 West Myrtle Street, Suite 500<br>Boise, ID 83702<br>208-334-1155 | */s/ Jordan Dickson*<br>Jordan Dickson<br>Trial Attorney<br>Public Integrity Section<br>1301 New York Ave. NW, 10th Fl.<br>Washington, DC 20005<br>202-597-0508 |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 28, 2025, the foregoing Reply in Support of the Government's Notice of Intent to Offer Evidence Under Rules 404(b) and 413 was electronically filed with the Clerk of the Court using the CM/ECF system, and that a copy was served on the following parties or counsel by:

Debra Ann Groberg
Nevin, Benjamin & McKay LLP
P.O. Box 2772
Boise, ID 83701
208-343-1000
dgroberg@nbmlaw.com

☐ United States Mail, postage prepaid
☐ Fax
☒ ECF filing
☐ Email

/s/ *Katherine Horwitz*
Katherine Horwitz
Assistant United States Attorney