UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>v.<br><br>RYAN A. BENDAWALD,<br><br>                    Defendant. | Case No. 1:23-cr-00281-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court are multiple discovery-related motions filed by the United States, including: (1) a Motion to Quash Third-Party Subpoena (Dkt. 37); (2) a Motion to Access Ex Parte Brief (Dkt. 42); and (3) a Motion for Protective Order (Dkt. 48). Defendant Ryan Bendawald opposes all three motions.[1]

Having reviewed the record and the briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, the Court will decide the Motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).[2]

Upon review, and for the reasons set forth below, the Court GRANTS the

---

[1] Bendawald filed an unrelated Motion for Jury Questionnaire (Dkt. 40) around the same time. The Government partially opposes the Motion (Dkt. 44) and the Court will briefly address it at the end of this Decision.

[2] Although this is a criminal case, the local civil rule regarding hearings applies as there is no corresponding criminal rule. *See* Dist. Idaho Loc. Crim. R. 1.1(f) (explaining that "all general provisions of the Local Rules of Civil Practice apply to criminal proceedings unless such provisions are in conflict with or are otherwise provided for by the Federal Rules of Criminal Procedure or the Local Rules of Criminal Practice").

Government's Motion to Quash Third-Party Subpoena and DENIES the Government's Motion to Access Ex Parte Brief and Motion for Protective Order.

## II. BACKGROUND

### A. Factual

Defendant Ryan Bendawald is a former Sergeant of the Caldwell Police Department ("CPD") in Caldwell, Idaho. A federal grand jury indicted Bendawald on two counts of felony deprivation of rights under color of law, one count of misdemeanor deprivation of rights under color of law, and four counts of federal program bribery.[3] Dkt. 1.

The Government's investigation into the CPD began in December 2020, after two officers complained to the FBI about then-Lieutenant Joey Hoadley and then-Sergeant Ryan Bendawald. As part of that investigation, the FBI interviewed several women who had been arrested or otherwise contacted by Bendawald during his policing duties. Several of these women told the FBI that Bendawald had subjected them to sexual misconduct during their encounters. The allegations of seven of these women formed the basis of the Government's eight-count indictment against Bendawald. Dkt. 1.

### B. Procedural

On June 28, 2024, Bendawald issued a subpoena to the Canyon County Sheriff's Office ("CCSO") for documents related to the seven complaining witnesses, other witnesses identified by the Government, and another individual not identified by the

---

[3] Counts 1 and 8 are felony Deprivation of Rights Under Color of Law claims; Count 3 is a misdemeanor Deprivation of Rights Under Color of Law claim; and Counts 2, 4, 5, 6, and 7 are felony Federal Program Bribery claims.

Government (but thought to have relevant information regarding one of the charged counts). Bendawald did not provide notice of this subpoena to the Government or to the Court.

On July 11, 2024, the Government moved to quash the subpoena served on CCSO. Dkt. 37. Among other arguments, the Government contends Bendawald did not receive Court permission to send the subpoena under Federal Rule of Criminal Procedure 17(c), that the subpoena is too broad, and that the subpoena should be quashed because it impacts criminal victims and their privacy under the Crime Victims' Rights Act ("CVRA") 18 U.S.C. § 3771.

Bendawald filed a response in opposition to the Government's Motion. Dkt. 38. Therein, Bendawald alleges Rule 17(c)(3) does not apply to the CCSO subpoena because he is not requesting any personal or confidential information about the victims. Further, Bendawald contends his request is narrowly tailored to the information he needs to mount a proper defense.[4] In addition to his Response, Bendawald filed an ex parte document explaining exactly why he needs the information (i.e. Bendawald revealed part of his defensive strategy in this case to the Court). Dkt. 39.

About this time, the Court held an off-the-record status conference with the attorneys. The Court had done this periodically throughout the case and this informal status conference had been noticed months prior and was not called for purposes of discussing the subpoenas or the motions now at issue. Nevertheless, the dispute about the subpoenas

---

[4] Bendawald also informed the Court that he had issued similar subpoenas to additional law enforcement agencies in the Treasure Valley. *Id*. at 3.

MEMORANDUM DECISION AND ORDER - 3

came up and the Court instructed Defense counsel to refrain from viewing anything it received (or would yet receive) in response to any of the subpoenas until the Court ruled on the underlying validity of the subpoenas already issued.

Rather than filing a reply to its Motion to Quash, the Government filed a Motion to Access Ex Parte Brief (Dkt. 42) arguing it should be allowed to review whatever information Bendawald filed in Dkt. 39 because: (1) ex parte briefing is not allowed as part of a Rule 17(c) subpoena request; (2) allowing the Government to review the filing would aid everyone in protecting the victims' rights; and (3) it isn't hard to guess what Bendawald's strategy in this case is, so there is no need for secrecy. Bendawald strongly opposes this Motion, arguing the Government has no place reviewing his ex parte submission. Dkt. 43.

Shortly thereafter, the Government filed a Second Motion for Protective Order. Dkt. 48.[5] In this Motion, the Government seeks to stop Bendawald from issuing public record requests to some of the same entities to which he previously issued subpoenas. The Government reiterates that Bendawald cannot obtain personal or confidential information about a crime victim without violating the CVRA, and that these current efforts are just an "end-run around Rule 17(c)(3)." *Id*. at 4. In his Response, Bendawald contends he will not likely receive any personal or confidential information anyway because a public records request only seeks publicly-available information. As such, Bendawald argues the Government's Motion for Protective Order is simply an attempt to stymie his defense.

---

[5] The parties agreed to an initial protective order in the fall of 2023. Dkt. 18.

### III. LEGAL STANDARDS

#### A.  Rule 17 Subpoenas

Federal Rule of Criminal Procedure 17(c) governs subpoenas for documents and other items in a criminal case. To obtain a Rule 17(c) subpoena before trial, the proponent must demonstrate the "(1) relevancy; (2) admissibility; [and] (3) specificity" of the materials sought. *United States v. Nixon*, 418 U.S. 683, 700 (1974).

Rule 17(c)(3) governs subpoenas seeking personal or confidential information about a crime victim, providing that a subpoena for such information "may be served on a third party *only* by court order." Fed. R. Crim. P. 17(c)(3) (emphasis added). As explained in the Advisory Committee's Notes to this provision, "third party subpoenas raise special concerns because a third party may not assert the victim's interests, and the victim may be unaware of the subpoena." Fed. R. Crim. P. 17(c)(3) advisory committee's notes (2008 amendment). Because of this, "the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object," before the court enters the order. *Id.*

District courts have broad discretion to enforce or quash a pretrial subpoena under Federal Rule of Criminal Procedure 17(c), and their decisions "will be disturbed on appeal only where the action was clearly arbitrary or without support in the record." *United States v. Lester*, 769 F. App'x 508 (9th Cir. 2019).

#### B.  Protective Orders

A court has the discretionary authority to enter protective orders regarding discovery in criminal cases. Pursuant to Rule 16, the Court may "[a]t any time" and "for good cause,

deny, restrict, or defer discovery or inspection, or grant other appropriate relief." Fed. R. Crim. P. 16(d)(1). The movant bears the burden of establishing "good cause" for the requested protective order. *See United States v. Cordova*, 806 F.3d 1085, 1090 (D.C. Cir. 2015).

## IV. DISCUSSION

The Court begins broadly with a discussion about Rule 17 subpoenas and the CVRA as they relate to the Government's Motion to Quash. It will then review Bendawald's related ex parte submission and the Government's Motion for Access to the same. Finally, the Court will analyze public records requests and the Government's associated Motion for a Protective Order.

### A. Government's Motion to Quash Bendawald's Rule 17 Subpoena (Dkt. 37)

#### 1. Overview

In one of his briefs, Bendawald states that Rule 17(c) is "not a discovery rule and a subpoena issued under that Rule is not a discovery device . . ." Dkt. 49, at 13 n.7. This is correct. *See Nixon,* 418 U.S. at 689–99 (explaining a Rule 17 subpoena is not intended to provide a means of pretrial discovery; rather, its primary purpose is simply "to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials"). Nevertheless, Bendawald's subpoena to CCSO feels a lot like a tool to obtain discovery.

The subpoena directs CCSO to produce "any and all police reports, written materials, audio, and video regarding any and all police contact and jail incidents with the following individuals between 2016 and the present." Dkt. 37-1, at 3. The subpoena also

directs that the information be produced before trial—the so called "early return." The reason Bendawald seeks this information before trial is to analyze the listed individuals' interactions with law enforcement in an effort to ultimately illustrate they committed, or were "involved in the commission of various crimes." Dkt. 38, at 6. And, as will be discussed in detail below, Bendawald is pursuing this path because part of his defense involves calling into question the complaining witnesses' motives, as well as the veracity of their statements.

In sum, this feels very much like discovery. Bendawald is looking for a wide swath of information about the complaining witnesses, and for information he does not know even exists. But a Rule 17 subpoena cannot be used as a broad-based discovery tool. It is not an extra tool for trying to discover facts or gather general evidence. *See United States v. Arditti*, 955 F.2d 331, 345 (5th Cir. 1992) ("Although rule 17 extends to materials not subject to rule 16 discovery, it is not intended to provide an additional means of discovery."); *United States v. Reed*, 726 F.2d 570, 577 (9th Cir. 1984) ("Rule 17(c) was not intended as a discovery device, or to allow a blind fishing expedition seeking unknown evidence.").[6] It is simply a tool for producing documents and information prior to trial. This is the Court's initial concern with Bendawald's subpoena, and the first principle it wishes to highlight today: Rule 17(c) subpoenas cannot be used as "fishing expeditions." *Nixon,* 418 U.S. at 700.

---

[6] For more recent cases, s*ee also, United States v. Mays,* 246 F.3d 677, 2000 WL 1860727, (9th Cir. 2000); *United States v. Powell,* 2025 WL 523904 (N.D.Ca. 2025); *United States v. Lacey*, 2021 WL 511209 (D. Arizona 2021).

### 2. *Rule 17(c)(3) Subpoenas*

The Court's above concern is compounded by the fact that the information at issue specifically relates to the alleged victims of Bendawald's charged crimes.

The Court frequently sees subpoenas, filed pursuant to Rule 17(a), in preparation for trial. Defendants file such motions ex parte and request that the Court cover the processing cost, service costs, and fees associated with bringing a defense witness to trial. Fed. R. Crim. P. 17(a)–(b). Under subpart (c), the Court can also order a witness to produce physical documents, data, or objects. The Court sometimes sees these types of motions as well. Less common, however, are requests under part three of subsection (c), which relates specifically to information about victims.

Rule 17(c)(3) is titled "Subpoena for Personal or Confidential Information About a Victim" and provides as follows:

> After a complaint, indictment, or information is filed, a subpoena requiring the production of personal or confidential information *about a victim* may be *served on a third party only by court order.* Before entering the order and unless there are exceptional circumstances, *the court must require giving notice to the victim* so that the victim can move to quash or modify the subpoena or otherwise object.

Fed. R. Crim. P. 17(c)(3) (emphasis added).

Thus, for today's purposes, the Court will address two threshold issues: are third parties involved and who qualifies as a crime victim? The Court will then assess whether the information Bendawald seeks could infringe on the victims' rights and whether Bendawald has met the requisite *Nixon* factors.

MEMORANDUM DECISION AND ORDER - 8

a. Third Parties

Neither party disputes that CCSO (and other law enforcement agencies in the Treasure Valley) are third parties to this lawsuit. While the Government may have a good working relationship with these agencies and *could potentially* obtain the information Bendawald seeks, they are, in the common legal sense, third parties. For this reason, Bendawald was required to obtain the Court's permission *before* issuing his subpoena. Failure to do so was a blatant disregard of the plain language of Rule 17.

Moreover, Bendawald was also required to obtain the Court's permission before issuing his subpoena because the subpoena seeks information about the victims of his alleged criminal conduct. This is the bigger problem with how Bendawald approached the situation. *See* Fed. R. Crim. P. 17(c)(3) ("[A] subpoena requiring the production of personal or confidential information about a victim may be served on a third party *only by court order*.") (emphasis added).

b. Victims

Bendawald claims the Government can only object to the CCSO subpoena on behalf of the seven victims who are identified in the Indictment and whose allegations make up the charges within the Indictment.[7] He argues the Government does not have the right to

---

[7] Bendawald also raises the more threshold argument that the Government lacks standing to bring its Motion to Quash in the first place. He suggests the Government does not represent any of these third-party entities or the criminal victims themselves. This is partially true. The Government does not represent the third-party entities. But the CVRA is clear that, "[t]he crime victim or the crime victim's lawful representative, *and the attorney for the Government* may assert the rights described in" the CVRA. 18 U.S.C.A. § 3771(d)(1). In that sense, then, the Government does represent the victim's rights. Furthermore, the Court takes a more wholistic approach to the Government's Motion. It is not an objection on *behalf* of the third parties, or on

(continued)

MEMORANDUM DECISION AND ORDER - 9

object on behalf of the other individuals identified in the subpoena because they are not included in the Indictment. The Court agrees.

The CVRA defines a "crime victim" as "a person directly and proximately harmed as a result of the commission of a Federal offense . . . ." 18 U.S.C. § 3771(e)(2)(A). This seems to limit the protections the Government can offer (legally speaking) to those actually identified as victims of the *charged* criminal conduct.

The Court has, to its knowledge, located every case that has attempted to evaluate whether a person qualifies as a "victim" for purposes of the CVRA. The well from which to draw guidance is not deep. The Ninth Circuit has not addressed the issue or defined "victim" in any way other than the statutory definition. Other circuits have discussed the appropriate definition, but mostly in the context of defining who can offer a statement at a sentencing hearing.[8]

Thus, a firm definition of "victim" is elusive. But some principles help guide the Court to its conclusion that Bendawald is correct in this instance.

As one district court observed, the CVRA "definition is not restricted, for example, to the commission of a federal offense 'as charged in the information or indictment.'" *United States v. Boeing Co.*, 617 F. Supp. 3d 502, 509 (N.D. Tex. 2022). Nevertheless, that court quickly noted that, while the definition is not restrictive, "in the absence of a charging

---

*behalf* of the victims per se. It is an objection on its own behalf, arguing Bendawald improperly issued the subpoenas for various legal and procedural reasons. Thus, the Court finds the Government has "standing" to bring such issues to the Court's attention.

[8] *See, e.g., United States v. Ducharme*, 93 F.4th 1110, 1114 (8th Cir. 2024); *United States v. O'Lear,* 90 F.4th 519, 540 (6th Cir.), cert. denied, 144 S. Ct. 2542 (2024); *United States v. Brown*, 2023 WL 1267185, at *2 (4th Cir. Jan. 31, 2023); *United States v. Kimmons,* 2022 WL 2344088, at *2 (2d Cir. June 29, 2022).

document, how would a court determine whether a federal offense—and what federal offense—has been committed?" *Id*. That court did not expand the definition of "victim" beyond those affected by the charged conduct.[9] This theme—that an indictment is not required but is, nevertheless, the best way to delineate who qualifies as a victim—runs throughout the applicable caselaw and is persuasive to the Court.

The most relevant case on the matter comes from the Jeffrey Epstein litigation. As part of a related appeal, the Eleventh Circuit had to analyze who qualified as a "victim" under the CVRA, and how, if at all, formal criminal proceedings affect that definition. *In re Wild*, 994 F.3d 1244 (11th Cir. 2021). The Eleventh Circuit noted that many people are victims of a crime before a crime is charged (if even charged at all), but that trying to expand the definition of "victim" to include conduct outside of an indictment would prove very difficult for a court. The panel summarized its concerns as follows:

> First, and most obviously, that reading [that a criminal proceeding is not required] puts the cart before the horse: When else, if ever, is a court called on to decide whether an "offense" (*i.e.*, a crime) has occurred—as opposed to a moral wrong more generally—*before* the government has even decided to press charges? The answer, so far as we are aware, is never. Second, how, in the absence of a charging decision, would the court even go about ascertaining whether an "offense" had occurred? What would that proceeding look like? A mini- (or perhaps not-so-mini-) trial in which the court finds facts and makes legal determinations regarding an "offense" yet to be named? Finally, and in any event, it seems obvious to us that simply by conducting such a proceeding and by concluding (up front) that an "offense" has—or hasn't—occurred, the court would not only exert enormous pressure

---

[9] The *Boeing* court cited the Sixth Circuit to emphasize that even if there is conduct which could "support" other charges, "speculative charges are inappropriate to consider for purposes of the CVRA." *Id*. at 511 (citing *In re McNulty*, 597 F.3d 344, 351 (6th Cir. 2010). In *McNulty*, the Sixth Circuit indicated that, "under the plain language of the statute, a party may qualify as a victim, even though it may not have been the target of the crime, as long as it suffers harm as a result of the crime's commission." Again, the analysis in *McNulty* makes clear the focus is still on charged or "committed" crimes, not just bad acts.

on the government's charging decisions, but also likely frustrate the government's ongoing investigation.

*Id*. at 1262. Ultimately, the Eleventh Circuit concluded that "[t]he commencement of criminal proceedings marks a clear and sensible boundary . . . ." when determining who qualifies as a victim for CVRA purposes. *Id*. at 1263. While not binding, this reasoning makes good sense to the Court.[10]

Although the Government does not explicitly so state, its argument seems to be that a person can be a victim of a "federal offense" even if the offender who engaged in criminal conduct was never officially charged. The Court understands this argument and agrees that individuals can be victims of crimes regardless of whether their perpetrators are prosecuted.[11] But from a legal perspective, the Court is persuaded that "victims" under the CVRA should be restricted to individuals who are affected by the charged offenses.

In the absence of guidance from the Ninth Circuit on this matter, the Court has reviewed the CVRA and all available caselaw. Upon review, the Court holds that the CVRA's definition of victim as "a person directly and proximately harmed as a result of the commission of a Federal offense . . ." is limited to those affected by the conduct specifically enumerated in the Government's charging document. 18 U.S.C. §

---

[10] To be clear, none of the courts referenced above held—and this Court does not find—that a conviction is necessary before the CVRA kicks in. As another district court aptly noted, "victims' rights under the CVRA begin well before a conviction; thus, the status of 'victim' may be based on allegations rather than proof." *United States v. Saltsman*, 2007 WL 4232985, at *1 (E.D.N.Y. Nov. 27, 2007). Again, however, the issue here is not the timing of when a victim has rights, but the scope of who qualifies as a victim.

[11] The Court is reminded of the fabled question about a tree falling in the forest and whether there is a sound if nobody is around to hear the tree fall. Similarly, people "commit" federal offenses all the time and are not caught. Anyone negatively affected by those actions are surely victims—even if criminal charges are never brought. Nevertheless, the Court cannot expand the legal definition for the reasons outlined above.

3771(e)(2)(A). In this case, that means the Court will apply the Government's arguments and objections to the seven complaining witnesses whose interactions with Bendawald form the basis of the Indictment against him.

    c.  <u>Personal and Confidential</u>

Having found both that the CCSO is a third party, and that the Government can object on behalf of the seven complaining witnesses, the Court turns next to the information sought in Bendawald's subpoena. Bendawald claims the Government's Rule 17 objection is misplaced because he is not seeking personal or confidential information about victims; he is only seeking generic, publicly-available information about these women. The Government is not as confident. Neither is the Court.

As Bendawald correctly notes, the commentary to Rule 17(c) identifies only two categories of personal or confidential information—"medical or school records"—with all other potential categories "left to case development." Fed. R. Crim. P. 17(c)(3) advisory committee's notes (2008 amendment). The only other guidance from the commentary as to the reach of Rule 17(c)(3) is that it was adopted to implement 18 U.S.C. § 3771(a)(8), a subsection of the CVRA, which provides protections for the "dignity and privacy" of victims. *Id*.

Both parties seem to agree that medical records are personal and can be shielded from discovery and a Rule 17 subpoena. However, this raises additional questions. For instance, would a note about an upcoming medical appointment be protected? Although not a medical record per se, it is personal. More to the point, a police report detailing a criminal act could be considered public information but may also include—for example—

MEMORANDUM DECISION AND ORDER - 13

details about a sexual assault, which would likely be considered personal.[12] This is where the discretionary part of Rule 17 comes into focus and the Court must decide whether "case development" warrants the inclusion or exclusion of the materials Bendawald seeks. *Id*.

One of Bendawald's primary justifications for his decision *not* to ask the Court for permission before issuing the subpoena to CCSO is based on the idea that the information he seeks is all public; it is not personal, private, confidential, or otherwise protectable. In his mind, he is asking only for public records such as police reports. And because these records are used for criminal proceedings, reported in the news, and generally available, there should not be any personal or identifying information contained in them anyway. Said another way, Bendawald argues if something is public, it can't also be private.

The Court understands Bendawald's arguments. But again, there is no exhaustive definition of what constitutes "personal and confidential" information under Rule 17(c)(3). The commentary suggests the Court is in the best position to make that call. The Court agrees each case turns on specific facts. And it is loath to find that a rigid definition should be employed in this case especially when the CVRA encourages a broader perspective.

Yet, simply because something is in the public domain does not automatically mean it cannot also be private. Better said, even if there is a definitional divergence between public and private, the information could still be worthy of protection to facilitate and protect a victim's "dignity and privacy." 18 U.S.C. § 3771(a)(8). The Court is not trying to haggle over semantics. Nor is it trying to complicate Bendawald's task. But the fact

---

[12] The Court is not implying this scenario occurred in this case specifically. It is simply using this as an example.

MEMORANDUM DECISION AND ORDER - 14

remains that certain private, confidential, or otherwise personal information would likely be included in response to a broad subpoena, such as those at issue here, that seek "*any and all* police reports, written materials, audio, and video regarding *any and all* police contact and jail incidents." Dkt. 37-1, at 3.[13] The Court finds that possibility particularly likely in this case because the allegations are sexual in nature, i.e. a topic most would consider personal, private, confidential, or otherwise touching on one's dignity.

In short, because there is a real possibility that personal and confidential information related to victims could be produced in response to Bendawald's CCSO subpoena, Bendawald was required to seek the Court's permission prior to sending the subpoena.[14] Tying the two primary principles discussed above together, the Court finds that, because the information Bendawald seeks is held by a third party *and* because that information relates to victims, he should have sought leave of the Court before proceeding so that the Court could have evaluated the request and provided notice and an opportunity to be heard

---

[13] Bendawald does not need to win this argument to obtain the subpoena he seeks. The rule does not dictate that the Court deny subpoenas that seek personal and confidential information; only that notice and an opportunity to object be provided *when* such information is sought. Thus, even if reasonable minds differ on the question of whether specific information is public or private, the fact remains that Bendawald is seeking information from a third party and that information is related to alleged victims. Thus, Court permission is required. And once the Court has reviewed the relevant subpoena(s), and any objection, it will be in a better position to approve or deny the request. And to reiterate, simply because an objection is filed does not mean the Court will quash the subpoena. The objection may not be persuasive, or the materials may otherwise be subject to disclosure (even if personal and confidential). So, there is little downside to this process. It will allow an opportunity for the Court to review the substance of the subpoena, hear from the victims, and issue a decision. While it may take some additional time, the Court feels the procedure outlined herein best embodies the purpose of Rule 17.

[14] Indeed, Rule 17 requires a party to obtain prior court approval whether the information sought is personal and confidential. This Bendawald did not do.

to the victims.[15]

The Court returns momentarily to the "other women" identified in Bendawald's subpoena. The Court has held the Government can only object on behalf of the seven complaining victims. But that does not automatically mean Bendawald's subpoena can proceed as to the other women. The Court still must analyze whether Bendawald has satisfied the *Nixon* factors as they relate to the subpoena because he seeks early return of the information. *See United States v. Chavez*, 2020 WL 377033, at *2 (N.D. Cal. Jan. 23, 2020) (explaining that "the Court has an independent obligation to consider whether the proposed subpoenas meet the requirements of Rules 17(b) and (c) for testimony and documents"); *see also United States v. Beckford,* 964 F. Supp. 1010, 1025 (E.D. Va. 1997) (explaining that a reading of Rule 17(c) that allows a party to send subpoenas without first motioning  the Court thwarts the Court's duties and ignores the "discretionary powers conferred under the rule" itself).

To further explain, the Court—meaning a judge and/or chambers' staff—does not have to approve or authorize *every* type of Rule 17 subpoena. Rule 17 begins with a general proposition: subpoenas may issue (without court involvement) when they command a witnesses' presence (and possibly the production of documents) at a particular hearing or

---

[15] That said, the Court would encourage the parties to try to work together on this matter. It *may* be possible for the Government to request some of this information from the applicable agencies. Then the Government—alone or in conjunction with the victims—could review the materials, redact any personal or confidential information, and turn it over to the Defense. This seems to be a compromise that assuages the Government's concerns, provides Bendawald the information he seeks, and alleviates the need to subpoena third parties, issue notices, analyze and brief objections, and involve the Court.

trial. Such subpoenas are typically handled by the Clerk's Office[16] unless the applicant is unable to pay. In that circumstance, an application and order is required. Fed. R. Crim. P. 17(b).

However, Rule 17(c) creates a limitation to the general rule when a party wants the documents produced *before* trial. And while Rule 17(c) does not explicitly require a party to file a motion to secure issuance of a subpoena returnable before trial, the use of a motion to invoke the court's discretion in advance of issuing such a subpoena has been recognized by many courts as an "orderly and desirable procedure and one frequently followed." 2 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 275 (4th ed. 2023). *See also United States v. Bernal-Sanchez*, 2023 WL 7179469, at *2 (9th Cir. Nov. 1, 2023) (noting, in passing, that "the court must *approve* the issuance of a Rule 17(c) subpoena . . .") (emphasis added). The undersigned will follow suit. Except in rare circumstances, a Rule 17(c) subpoena requesting an early return must be made via motion so the Court can review the *Nixon* factors and issue an appropriate order.[17] And, as explained in detail above, if the subpoena is one under subsection three, a court order (and notice) is *required*.

Thus, to reiterate, *any* subpoena under Rule 17(c) for documents and papers returnable before trial is subject to the Court's review and approval under *Nixon*; but only those subpoenas under Rule 17(c)(3) seeking personal or confidential information about a

---

[16] Those staff members, of course, work for the Court, but they do not typically involve chambers' staff in the issuance of these more routine subpoenas; nor is a formal "court order" required before issuance.

[17] Thus, even setting aside the type of information Bendawald seeks (public or private), he would still be required to seek leave of the Court because he is utilizing a Rule 17(c) subpoena.

victim will require formal notice to the victim (in addition to a *Nixon* review).

    d. *Nixon* Factors

The Court addresses next whether Bendawald has meet his burden under *Nixon*. As a reminder, Bendawald must persuasively demonstrate the "(1) relevancy; (2) admissibility; [and] (3) specificity" of his requests. *Nixon*, 418 U.S. at 700. Bendawald discussed some of this in his responsive briefing. But most of the justification for his request is contained in his ex parte submission (which the Government has not seen). While the Court will discuss that conundrum momentarily, it has determined Bendawald has met the first two prongs, but not the third, as they relate to the seven complaining witnesses. Additionally, the Court finds Bendawald has not met any of these requirements as to the "other women."

The information Bendawald seeks about the seven complaining witnesses is related to credibility and impeachment and thus appears to be relevant to his defense.[18] Admissibility is a tougher question as this stage, but the Court will give Bendawald the benefit of the doubt. Still, his request is far too broad. For instance, the phrase "any and all" is difficult to square with the concept of "specificity." *See, e.g., United States v. Kipp*, 2016 WL 7209581, at *2 (W.D.N.C. Dec. 9, 2016) (quashing subpoenas casting "a wide net in what appears to be a quest for pretrial discovery outside of the Rule 16 framework");

---

[18] Because the Court is quashing the subpoenas for lack of specificity, it will not delve much into relevance, but does highlight that "generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial." *Nixon*, 418 U.S. at 701. Nevertheless, there are "limited" instances when such would be appropriate. *Id*. In this case, because the Government's allegations against Bendawald turn primarily on the word of the complaining victims, credibility is at the forefront and impeachment evidence *may* play a role. The Court is not formally deciding what evidence is admissible at this point but notes the threshold showing of relevance has been met.

*United States v. Forbes*, 2005 WL 8146317, at *4 (D. Conn. Nov. 5, 2005) (rejecting Rule 17(c) subpoenas that "were as broad as any request for production in a civil case could be" and finding that, "contrary to the spirit and purpose of Rule 17(c), the defendants' subpoenas were aimed at obtaining discovery"); *United States v. Jackson*, 155 F.R.D. 664, 668 (D. Kan. 1994) (finding proposed subpoenas "unquestionably resemble discovery requests" by seeking "entire files, all correspondence, and all related records" which is "more indicia of a fishing expedition").

By all accounts Bendawald does not know what, if anything, will come from his requests. But as the Court has already explained, "Rule 17(c) subpoena is not intended to serve as a discovery tool, or to allow a blind fishing expedition seeking unknown evidence." *United States v. MacKey*, 647 F.2d 898, 901 (9th Cir. 1981) (cleaned up). In other words, a Rule 17(c) subpoena is a means to *obtain* evidence, not *discover* evidence.[19] Bendawald's request here is reminiscent of a civil discovery request. It is broad in scope and seeks to find out what, if anything, exists on a particular topic. Thus, while such information would be relevant (and potentially admissible), Bendawald's broad requests cannot withstand scrutiny.

The same, however, cannot be said about the "other women." It appears these individuals are women whom the Government has identified as "alleged victims"— meaning they had negative encounters with Bendawald over the years similar to the

---

[19] Again, the Court does not want the parties' to get bogged down in semantics. This phraseology is not absolute. The Court's point, however, is that Rule 17 speaks in terms of *production*, and a methodology for a party to gain access to information it reasonably suspects exist. It is not a tool for generalized discovery and efforts to find out what, if anything, exists on a certain topic.

MEMORANDUM DECISION AND ORDER - 19

encounters of the seven complaining witnesses. The Government has also listed these women as potential witnesses at trial. These facts alone, however, cannot support a relevancy finding for Bendawald. These women are, frankly, random citizens. While they appear to have had interactions with Bendawald, none of those encounters form the basis for any claims in the indictment. It is clear the Government may seek to introduce evidence related to these women to support its theory that Bendawald was a predator and his actions as to the seven complaining witnesses was consistent with his behavior as to these other women. While the Government knows well that such information can only come in at trial with an appropriate evidentiary ruling,[20] it is not clear yet whether the Government will call any of these individuals and/or how their involvement will play out. The Court, therefore, cannot find Bendawald has met the relevancy and admissibility requirements under *Nixon*. The Court wishes to be clear, however, that if the Government seeks to introduce evidence or testimony regarding any of these women, such information may then become relevant (and potentially admissible) and Bendawald would be entitled to a fair opportunity to seek a Rule 17 subpoena as to these women. Still, that subpoena would also need to be more narrowly tailored as outlined above.

In sum, Bendawald's subpoenas as to the seven complaining witnesses must be re-drafted. While he seems to recognize the language "any and all" is quite broad, Bendawald implies his subpoena is acceptable because it is related to a narrow topic: police encounters. What is implicit to the drafter of the subpoena may not be implicit to the receiver of the

---

[20] Briefing on these (and related) issues is currently underway. *See, e.g.,* Dkts. 79, 80.

subpoena. The Court will still require some narrowing parameters about these police encounters. Again, this is not discovery. Bendawald cannot just shoot in the dark and see what he hits. He needs to point to specific information and specific materials.[21] At a bare minimum, Bendawald could provide more narrow date ranges, locations, departments, interactions, or other precise parameters. Otherwise, the subpoena is nothing more than a fishing expedition.

Although there is currently no need to redraft the subpoenas as to the "other women" since the Court does not see the relevancy and admissibility of such information at this stage of the proceedings, Bendawald will need to narrow the subpoena if the issue arises in the future.

### 3. Other Procedural Aspects of Rule 17(c)

While it has discussed two principles tangentially thus far, the Court has not devoted much space to the issues of timing and fees. The Government argues Bendawald failed to comply with both in this circumstance.

To the extent the Court is providing general guidance (in addition to a specific ruling), it briefly elaborates on these two matters.

---

[21] It may be difficult to understand the distinction the Court is trying to illustrate here. On the one hand, "police encounters" could be specific if a person has only had one police encounter. But other people could have dozens of "police encounters." Thus, the request turns on specific facts rather than on the language used in the abstract. Additionally, the Court is not asking Bendawald to provide a specific document name or file type. An "any and all" request may sometimes be appropriate if it is made in a narrow and targeted context. For example, the Court has granted Rule 17(c) subpoenas for "any and all" medical records related to a deceased person. It has also approved of a subpoena for "any and all" financial records related to a bank account on a certain day. These are arguably broad requests, but they are "specific" in that they seek a narrow set of information. "[A]ny and all police contact and jail incidents" for the last nine years is distinguishable from such examples because it is a much broader request.

First, contrary to the Government's assertion (Dkt. 37, at 8) a subpoena *can* request an early return. In fact, it is generally this timing element that drags the Court into the fray in the first place. As already outlined, leave of the Court is only *required* when the subpoena seeks information related to victims under Rule 17(c)(3). However, many Courts have also determined that a motion (and order) is the best procedure for invoking the Court's discretionary authority over subpoenas issued under Rule 17(c) when the subpoena seeks an early return.[22] The motion/order method is preferred as it helps prevent the misuse of Rule 17(c) subpoenas as a discovery tool.

Second, the Government takes Bendawald to task for not providing the appropriate fees as outlined in Rule 17. But again, Bendawald's argument is that his subpoena fell outside of Rule 17's parameters to begin with. The Court has corrected that mistaken approach today. But to the extent Bendawald seeks Rule 17 subpoenas in the future, fees must be tendered (or covered by the Court) in accordance with Rule 17.

### 4. *Conclusion*

The Government's Motion to Quash the subpoena outright as a procedural objection is GRANTED *as it relates to the seven victims*. Bendawald must seek leave of the Court before issuing subpoenas to law enforcement agencies regarding those women because they are victims of Bendawald's charged crimes and they are entitled to notice and an opportunity to be heard. These subpoenas are quashed for the additional reason that they

---

[22] This may beg the question: if the Rule 17(c) subpoena does not request an "early return," is Court approval still required? Although it could not find any caselaw discussing this distinction, the Court is of the opinion that, almost by its nature, every Rule 17(c) subpoena requests an early return; otherwise, the subpoena is simply a Rule 17(a) subpoena for a specific hearing or trial.

lack specificity under *Nixon*.

The Motion, however, is DENIED (from a procedural standpoint) as it relates to the other women because those individuals are not victims pursuant to Rule 17 and the CVRA and the Government does not have standing to object on their behalf. That said, as part of its duty to review Rule 17(c) subpoenas which seek the early return of documents prior to trial, the Court will, nevertheless, quash those portions of the subpoena for failing to satisfy each of the *Nixon* factors.

Thus, if Bendawald decides to pursue information via this avenue he must: 1) narrow the scope of the subpoenas, and 2) formally request issuance from the Court. If Bendawald feels the latter request would give away his trial strategy, he may make it ex parte (as explained below). And, if Bendawald's subpoena is directed at any documents pertaining to a victim (and the Court approves of the subpoena), notice will need to be given.

## B. Bendawald's Ex Parte Motion (Dkt. 39) and the Government's Motion for Access (Dkt. 42).

As mentioned, within the current Motion practice, Bendawald submitted an ex parte motion. Without abandoning his arguments referenced above—that Rule 17 did not apply, and that the information was not, in fact, private and confidential—he elected to submit an ex parte document explaining to the Court why the subpoenas are necessary and asking for the Court's approval *as to the seven complaining witnesses*.

Insofar as the Court has concluded that its permission is required before issuance of this type of subpoena, Bendawald's submission is appropriate. The big question,

however—and how the Government's Motion for Access ties into this—is whether Bendawald can submit his Rule 17 application ex parte or if he must allow the Government an opportunity to brief the issue. A follow-up question regarding what happens to the information once it is turned over must also be addressed (even though neither party has raised it).

As above, the Court's efforts to dive into this issue have yielded little fruit. Whether that is because it has not been heavily litigated or, more likely, because the decisions are themselves issued ex parte and/or under seal, there is little mandatory or binding authority on the questions the Court now seeks to resolve. For this reason, the Court will take some time to review and evaluate the matter. The Court feels this is necessary for a few reasons. First, it needs to adjudicate the instant dispute. Second, without divulging too much, Bendawald has made other ex parte applications under Rule 17. The Court has held off ruling on those until it could resolve the procedural and organizational questions raised here. Third, as alluded to above, the Court's efforts here will provide guidance beyond just this case.[23]

Bendawald asserts it is perfectly acceptable to file a Rule 17(c) motion ex parte. The Government seems to recognize this, but also argues many of Bendawald's cited cases in support of that idea *pre-date* the most recent amendments to Rule 17 (and specifically the addition of the requirement that victims receive notice). Ironically, however, the

---

[23] By the Court's count, there are zero published decisions in the District of Idaho specifically discussing Rule 17(c)(3) and just two decisions that touch on Rule 17(c) in any depth. Thus, the Court's hope is this decision today will aid all criminal attorneys—prosecutors and defense attorneys—moving forward.

Government also uses cases that pre-date the amendment in support of their assertion that ex parte briefing is not allowed.

The Court will forgo further analysis of the cases cited by the parties. Each did a good job. However, neither provided anything directly on point. The Court has expended considerable time and resources on this question and has searched across the country—at all judicial levels—for an answer. What the Court discovered is there are really two issues. First, can a Rule 17 Motion be filed ex parte? The short answer is yes. The second question then is whether the production may also be ex parte. While more difficult, the answer to this question is also yes. It should be noted, however, that a Rule 17(c) Motion does not *have* to be filed ex parte. Nor does the production of documents need to be ex parte. But either can be. The Court will explain.

1. *Ex Parte filing*

Rule 17(c)(1) outlines that:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Because there is no mention that an application can be made ex parte, the Government states ex parte briefing is prohibited. Dkt. 42, at 2. This is incorrect.

First, the rule itself contemplates ex parte applications for subpoenas under certain circumstances, such as when a defendant is indigent. Fed. R. Crim. P. 17(b). What's more, the commentary discusses the notion that an ex parte decision (which implies there was an ex parte application) may be appropriate *even as applied to victims* in "exceptional

circumstances." Fed. R. Crim. P. 17(c)(3) advisory committee's notes (2008 amendment). Thus, while not spelled out explicitly, Rule 17 implies an ex parte application may be allowed if the circumstances warrant it.

For its part, the undersigned has seen both procedures used. In one instance, the Defendant filed a Rule 17(c) subpoena under seal (but not ex parte) and the parties briefed the matter. *United States v. Malone*, No. 1:21-cr-00155-DCN, Dkt. 103, at 6 (D. Idaho Oct. 19, 2022). The Court ultimately denied that particular motion, but the point remains: there was open briefing. On the other hand, the Court recently granted an *ex parte* Motion for Rule 17(c) subpoena requesting documents when the Defendant made clear the information sought would reveal his trial strategy if known to the Government.[24] The Court has surveyed other criminal cases within the District of Idaho and can attest that, actually, the *majority* of the time, these types of motions are filed ex parte.[25]

The Court turns next to relevant caselaw.

While there appears to be a split in authority on this issue, the most recent cases from across the country generally recognize that a Court may permit ex parte applications for subpoenas under Rule 17(c) if warranted. *See, e.g., United States v. Nshimiye,* 2024 WL 5146858, at *1 (D. Mass. Dec. 17, 2024) (allowing ex parte submission); *United States v. Melton*, 2024 WL 2783902, at *2 (S.D. Ga. May 30, 2024) (same). *But see United States*

---

[24] Because that case is ongoing, the Court will not provide a specific citation.

[25] From a procedural standpoint, there has not been strict consistency in the District of Idaho. Each judge has crafted the best path forward depending on the circumstances of the case. Because of this, there could be confusion among the Bar on exactly how to approach the situation. The Court notes emphatically that it is not laying blame on any prosecutor, defense attorney, or judge. Simply put, these types of subpoenas are still rare. That infrequency, coupled with the foggy state of the law, explains the lack of uniformity.

*v. Garg*, 2024 WL 37047, at *2 (W.D. Wash. Jan. 3, 2024) (noting that leading treatises "have concluded that, '[i]f a [Rule 17(c)] Motion is made it cannot be ex parte'").[26]

Turning closer to home, while the Ninth Circuit has (again) not explicitly ruled on the applicable procedure for a Rule 17(c) subpoena, it has observed that such applications "are often filed *ex parte* and under seal." *United States v. Sleugh*, 896 F.3d 1007, 1010 (9th Cir. 2018). In *Sleugh*, the question before the Circuit was whether one defendant could access the Rule 17 subpoenas of a co-defendant. While the Court answered that question in the negative, it highlighted certain matters relevant to question presently before it. In discussing Rule 17(c) subpoenas, the *Sleugh* Court stated:

> If the grounds articulated in support of the subpoena request were made part of the public record, such a showing could reveal counsel's trial strategies or defense theories to the opposing party, here, the government. This concern about revealing defense strategies to the government could also apply to revelations of such confidential theories to co-defendants, who may have adverse interests—the issue implicated in this appeal. Recognizing this potential conundrum, some courts, like the district court here, have local rules that permit defendants to file their Rule 17(c) applications under seal for "good cause."

*Id*. at 1012.[27] In sum, while not addressing the issue outright, the Ninth Circuit seems to recognize that a Rule 17(c) subpoena can be filed ex parte.[28]

---

[26] The Court will discuss this confusing decision in more detail momentarily.

[27] As noted in *Sleugh*, some district courts have adopted local rules about Rule 17(c) filings. *See, e.g.,* Northern District of California Local Criminal Rule 17-2 ("No subpoena in a criminal case may require [documents] in advance of the trial . . . unless the Court has entered an order pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure.") (available at https://www.cand.uscourts.gov/wp-content/uploads/2023/03/Local_Rules_Criminal_rev_8-21-2024-corrected.pdf). That local rule discusses the use of ex parte submissions as well. The District of Idaho does not have a similar local rule.

[28] As one court noted, *Sleugh's* recognition that these types of motions are "often" filed ex parte was "tacit approval for this procedure." *United States v. Corbett*, 2019 WL 5260748, at *2 (E.D. Cal. Oct. 17, 2019).

Certain district court cases are some of the most cited on this specific issue. For example, a 1997 California case has been widely cited in support of the proposition that ex parte motions are allowed. *United States v. Tomison*, 69 F. Supp. 587, 593 (E.D. Cal. 1997). And for its part, *Tomison* cited to another widely referenced district court decision that similarly so held. *Beckford,* 964 F. Supp. at 1027–29.

These two district court decisions are—to the Court's knowledge—the most cited decisions on Rule 17 subpoenas and whether ex parte motions are allowed. Both decisions conducted a thorough analysis of the text and history of Rule 17 and concluded that applications for Rule 17(c) subpoenas may be filed ex parte. *Beckford,* 964 F. Supp. at 1027–29; *Tomison,* 969 F. Supp. at 590–94.

Although these cases predate the 2008 amendment to Rule 17 related to victims, that does not mean the reasoning from these cases is flawed. Afterall, the general principles outlined therein regarding ex parte applications are still relevant—irrespective of whether a victim is the target of the subpoena. And these same two cases have been favorably cited *after* 2008 by district courts within this circuit. *See, e.g., Corbett*, 2019 WL 5260748, at *2–3 (citing *Sleugh* and *Tomison* and noting Rule 17(c) subpoenas can be filed ex parte when appropriate); *United States v. Harbour*, 2021 WL 308886, at *2 (D. Ariz. Jan. 29, 2021) (citing *Beckford*, and the idea that ex parte submissions are sometimes necessary to protect a defendant's trial strategy, favorably).

The one glaring problem in the Ninth Circuit is *Garg*. As mentioned above, this recent Washington case is confusing at best. Specifically, after noting there was a split in authority on the issue of whether a Rule 17(c) application may be made ex parte, the *Garg*

court jumped to the conclusion that the permissive "may" language in Rule 17—about the production and review of documents—means that an ex parte application is impermissible. 2024 WL 37047, at *2. It appears that Court so found because Rule 17 also contemplates a shared review of documents produced in response to a Rule 17 subpoena, so there would be no reason to file a Motion for Rule 17 subpoena ex parte in the first place. But that conclusion does not automatically follow. As will be discussed in the following section, regardless of whether the information is reviewed by all parties, the application itself could still be made ex parte.

The most confusing part of the *Garg* decision is the phrase the Court has already quoted: that its holding is "consistent with leading treatises which have concluded that, "[i]f a [Rule 17(c)] Motion is made it cannot be *ex parte.*" *Id*. The treatise *Garg* cites is 2 *Wright, Federal Practice and Procedure: Criminal* § 274 at p. 46 of the 1995 Pocket Part. As the citation suggest, the phrase *Garg* relies on comes from the *1995 version* of Wright's Federal Practice and Procedure. That phrase no longer appears in the current version of the treatise. In fact, the most current version notes that, while Rule 17(c) does not explicitly say a subpoena application can be filed ex parte, "it has been held, however, that in limited circumstances, both the government and a defendant may make an *ex parte* application for a pre-trial subpoena *duces tecum.*"). 2 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 275 (4th ed. 2023). In short, the Court disagrees with the *Garg* Court's reasoning, analysis, and conclusion as to whether a Rule 17(c) subpoena can be sought ex parte.

Considering the Ninth Circuit's decision in *Sleugh,* current guidance from *Wright*

*and Miller*, all other applicable cases, and its own analysis, the Court finds an application for a Rule 17(c) subpoena can be filed ex parte. To be sure, the Court reserves the right to conclude otherwise upon review of the ex parte motion and, if warranted, to direct the defendant to serve the motion on the government. *See generally Beckford*, 964 F. Supp. at 1031 (When presented with "*ex parte* motion for a Rule 17(c) pre-trial subpoena" and "*ex parte* procedure is unwarranted, the court should unseal the motion, and provide notice to the opposing party"). But as a threshold matter, the question of whether a motion can be filed ex parte appears rather straightforward. It can be if the circumstances are appropriate.

Returning to the case at hand, the Court has reviewed Bendawald's ex parte motion and can attest that it would reveal his trial strategy if the Court were to allow the Government to see it. To be sure, the Government has correctly divined some of Bendawald's strategy from the information in the recent round of briefing, which was also highlighted in his ex parte submission. However, there is additional information and strategy at play of which the Government is unaware.[29]

To be clear, the Court's holding above as to general Rule 17(c) applications applies with equal force to Rule 17(c)(3) applications. Although the Government may not have an opportunity to object on behalf of a victim when an application is filed ex parte, subsection c(3) mandates that the victim be notified and given an opportunity to object *before*

---

[29] Even if the government could guess some (or even all) of a defendant's strategy, that does not mean the motion automatically must become public.

compliance with the subpoena is required.[30] Thus, the Government may nevertheless learn about some subpoenas as they naturally progress through the case. Either way, victims are still protected.

In sum, a motion for a Rule 17(c) subpoena can be filed ex parte.

### 2. Ex Parte Production

The Court next considers whether the information requested pursuant to a Rule 17(c) subpoena can be produced ex parte. While neither party raised this issue, it was an underlying theme in many of the cases the Court reviewed. This observation, again coupled with the fact that the Court is trying to provide helpful guidance moving forward, justifies some discussion.

Rule 17 states "the Court *may* direct the witness to produce the designated items *in court* before trial or before they are to be offered in evidence. When the items arrive, the court *may* permit the parties and their attorneys to inspect all or part of them." Fed. R. Crim. P. 17(c)(1) (emphasis added). Such language implies the requested items must be produced to the Court and that the Court can supervise the parties as they together review or inspect such items. In fact, some courts have interpreted the language in such a straightforward manner. *See, e.g., United States v. Buntyn*, 2020 WL 5657602, at *2 (D.N.M. Sept. 23, 2020) (noting that, even if the subpoena was issued ex parte, "the plain language of Rule 17(c) authorizes the court to 'direct the witness to produce the designated

---

[30] For example, the Court recently accomplished this by having the defendant provide a copy of the subpoena to the victim *together* with a notice explaining the victim could object within a specified time (or seek additional time if necessary). The Court outlined that, in the absence of a timely objection, the defendant could then officially serve the subpoenas on the victim.

items in court before trial or before they are to be offered in evidence,' and once 'the items

arrive,' to 'permit the parties and their attorneys to inspect all or part of them'").[31]

The word "may" is permissive. Some courts may elect to be more involved than

others, which is their prerogative. As the Sixth Circuit has observed, "Rule 17(c) is

capacious enough to accommodate differing levels of oversight that district courts deem

desirable to impose" on the Rule 17(c) process. *United States v. Llanez-Garcia*, 735 F.3d

483, 500 (6th Cir. 2013). The Rule itself "commits the task of supervising subpoenas to the

sound discretion of those courts, which can determine the appropriate mechanisms for

exercising oversight as they see fit—by standing order, local rule, or no rule at all." *Id.*

There is no rule in the District of Idaho. Thus, the parameters of the Court's involvement

are left to the discretion of the individual judge and the specific facts of any given case.

For its part, while the Court understands it must be involved in the review and

issuance of a Rule 17(c) subpoena itself, it is hesitant to be the recipient and reviewer of

items produced (in this case or others) in response to any subpoena. To begin, the Court

has limited time and resources. It cannot accept and store hundreds of pages of discovery,

and it would be difficult to arrange times, places, and parameters for individual (or joint)

review of such information. Second and more importantly, the Court is not in a position to

determine the evidentiary value of any information in the abstract. The Court is not an

advocate for either side in a criminal case. So, while some issues would assuredly stand

---

[31] There are older cases that address this principle as well. *See, e.g., United States v. Urlacher,* 136 F.R.D. 550, 556 (W.D.N.Y. 1991) ("there can be no 'right' to ex parte *procurement* of subpoenaed documents pretrial if the court has discretion to supervise their production by permitting both parties inspection prior to trial.").

out to the Court as relevant or irrelevant, the Court could be completely oblivious to certain information one party (or the other) deems helpful (or hurtful). Thus, absent unusual circumstances, the Court will not involve itself in the collection and review of documents produced in response to a Rule 17(c) subpoena.

To reiterate, there is limited guidance on this issue. But if the Court "may" direct the items to be produced in Court, it stands to reason it "may" direct the production of the information elsewhere. In like manner, while the Court "may" direct the parties to inspect the materials together, it follows it "may" also disallow certain parties from inspecting the materials.[32] Afterall, a criminal defendant does not have the same duties as the Government when it comes to sharing discovery.[33] It would defeat the purpose of an ex parte application to some degree if the materials were all immediately available to the Government. Even if the Government was not privy to the ex parte application (because trial strategy was discussed), it may not be hard to ascertain a defendant's trial strategy after-the-fact by looking at the documents produced in response to a subpoena.

The parties should keep one other thing in mind. Trial strategy is important. But the Court is not a fan of "gotcha" moments (at hearings or trial). So, while a defendant is permitted to file an ex parte motion for a Rule 17(c) subpoena, and is permitted to keep

---

[32] Although the Court disagrees with *Garg* regarding whether a subpoena can issue ex parte, that court highlighted the permissive language "may," and how such language provides the court with discretion to outline the appropriate procedure for the production of documents in response to a Rule 17(c) subpoena..2024 WL 37047, at *2 ("Rule 17(c), by its own terms, is permissive, providing that the court 'may' order production of documents and 'may' permit inspection by the adverse party.").

[33] For example, the mandatory disclosure principles articulated in *Brady* and *Giglio* do not apply to the defense.

information gleaned from the subpoena from the Government, this does not mean he gets to have a "strategic advantage or tactical surprise." *See United States v. Sellers*, 275 F.R.D. 620, 625 (D. Nev. 2011). The Criminal Rules of Procedure and the Federal Rules of Evidence—not to mention the District of Idaho's Criminal Procedural Order—must still be followed where applicable. And, to the extent Bendawald seeks to introduce at trial any evidence obtained via a Rule 17(c) subpoena, he will need to disclose those materials to the Government the same as with any other evidence. To be clear, the Court is not asking any defendant to do anything more than what is required. But the reality is, the Government will often become aware of the subpoena one way or the other[34] and so, to the extent possible, the process should be collaborative to avoid protracted litigation surrounding a subpoena and/or items produced in response to a subpoena.

In sum, just as a Rule 17(c) application can be made ex parte, the production can be ex parte as well.

A final comment lest it go unmentioned: regardless of the specific information a defendant receives under a Rule 17(c) subpoena, receipt of such information does not automatically mean it will be admissible at trial. Even if the Court made an initial finding of admissibility under *Nixon* in order to issue the subpoena, the rules of evidence may end up barring the admission of that evidence for one reason or another. In this case specifically, certain rules of evidence must be considered when discussing past crimes, sexual encounters, and similarly sensitive topics. Such issues invoke questions for later

---

[34] For example, a victim who is the target of a Rule 17(c)(3) subpoena might reach out to the Government or a third-party might file a motion to quash.

down the road. Still, the Court feels compelled to remind the parties that discoverability does not automatically mean admissibility.

### 3. *Conclusion*

Bendawald can file his motion for issuance of a Rule 17(c) subpoena ex parte and the Government is not entitled to participate in reviewing the information produced in response. For these reasons, the Government's Motion for Access (Dkt. 42) is DENIED.

## C. Public Records Requests and the Government's Motion for Protective Order (Dkt. 48)

By way of this Motion, the Government seeks a protective order from the Court to protect victims from Bendawald's efforts to learn more about them via public records requests.[35] Bendawald opposes the motion.

The Government learned from a third party that Bendawald had sent public records requests ("PRR") under the Idaho Public Records Act to state agencies in an attempt to obtain certain information. The Government's concern, as above, is the victims of Bendawald's alleged crimes. It feels the Court should employ the same procedures it does under Rule 17(c) with respect to PRR's—namely that Bendawald should seek leave of the Court first and that notice to the victims must be provided. The Court fully supports protecting victims, but the Government's position misses the mark. First and most importantly, Rule 17(c) and PRRs are different mechanisms. Second, it would be difficult to craft a protective order that would apply to third parties over which the Court has no

---

[35] The prior protective order in this case also addressed the exchange and dissemination of information related to victims. *See* Dkt. 18 at 1–2. But the Government's Motion here is aimed more squarely at those issues in light of Bendawald's Rule 17(c)(3) subpoena.

control.

To begin, Rule 17 applies to the Court's subpoena power. As discussed at length above, there are certain requirements for application, notice, and return. And the Court involvement is specifically required under Rule 17(c). But PRRs are different. Not only can any person submit a PRR in Idaho, but the statutory requirements applicable to that process also differ from the processes applicable to Rule 17.

The Government cannot preclude Bendawald from using PRRs to obtain information; that is his prerogative. And the Government's desire to protect victims is admirable, but its requests go too far. For example, the Government asks the Court to amend the prior protective order to "require compliance with Rule 17 when either party seeks personal information related to a victim" under any type of procedure, or that the Court at least "employ" the requirements of Rule 17 and require that Bendawald seek the Court's permission and provide notice to the victims before using a PRR. Dkt. 50, at 8. As well-meaning as those parameters may be, the Court is unwilling to impose the protections and procedures of Rule 17(c) to PRRs, which are not subject to the Rule.

The parties also discuss the vexing question of public versus private information. Bendawald points out—and the Government seems to agree—that no private records should be turned over in response to these requests because Bendawald seeks solely "public records." However, as discussed extensively above, it is not difficult to imagine a public record (e.g. a police report) could contain very detailed information about a crime (e.g. rape) and that a victim would find the dissemination of that information inconsistent with the purposes of the CVRA.

MEMORANDUM DECISION AND ORDER - 36

The Court appreciates the Government's care and diligence in protecting victims, which the Court shares, and is why it took a firm stance above on the issue at it relates to Rule 17(c) subpoenas. But PRRs are a different animal. While the Court clearly has the duty to supervise Rule 17 subpoenas, it does not have the duty to supervise a defendant's use of PRRs. Thus, while there is some overlap in the arguments and analysis between the two methods for obtaining information, only one falls squarely within the Court's purview.[36]

Notably, there are protections already in place which address many of the Government's concerns. The Idaho Public Records Act exempts from disclosure the production of any law enforcement records which would "[c]onstitute an unwarranted invasion of personal privacy." Idaho Code § 74-124(1)(c). Additionally, many personal records are exempt from disclosure or are subject to redaction from the outset. *See generally* Idaho Code § 74-106. The Court's current protective order discusses discovery as applied to victims and provides certain protections. Dkt. 18, at 1. And, of course, the CVRA and the Federal Rules of Criminal Procedure speak to these issues as well. In sum, the Court is confident this array of protections will ensure the victims in this case are protected if Bendawald continues to use PRRs to obtain information.

Could one of the agencies Bendawald sends a PRR to inadvertently disclose something it shouldn't? Yes, of course. Yet, this is always the case when seeking public

---

[36] Rule 17(c) subpoenas and PRRs are different mechanisms and the only reason they are interrelated in this case is because Bendawald seeks information about victims from state agencies. In other words, it is unlikely PRRs can be "substituted" for a Rule 17(c) subpoena to obtain the same information even though that is effectively what is happening in this case.

records. The Court will not throw out the PRR process in this case simply because there is a small risk of failure. And should a situation arise that warrants a different approach, the Court can address it individually when it comes to admissibility. Ultimately, however, the Court cannot impose the restrictions the Government proposes on a procedure the Court does not oversee. In sum, a protective order will not be entered, and the Court will not otherwise restrict Bendawald's use of PRRs or place specific parameters on his efforts.

The Government's Motion for Protective Order (Dkt. 48) as it relates to Bendawald's use of PRRs is DENIED.

### D. Jury Questionnaire (Dkt. 40)

On a completely unrelated note, the parties have agreed to send out a supplemental written questionnaire to prospective jurors in preparation for trial. They agreed on the form of the questionnaire except as to three questions. The Court has reviewed the questionnaire and the competing arguments and *will not* include questions 61, 62, and 63 because they are not phrased in a neutral manner. Although such questions may be appropriate during counsel's voir dire, the Court will not ask them in advance of trial or in their current form. The parties shall work with the Court's law clerk and the Jury Commissioner when the time comes to issue the questionnaire.

### V. CONCLUSION

While some subpoenas do not require Court participation, the Court has a duty to be involved in the process when a request for a Rule 17(c) subpoena is involved. *Nixon*, 418 U.S. at 699. Additionally, when the subpoena relates to a victim under subsection (c)(3), the Court must balance the victim's right to privacy against the defendant's right to

"investigate the case and prepare a defense for trial" by providing notice of the subpoena and an opportunity to object. *Michigan v. Harvey,* 494 U.S. 344, 348 (1990).

This is a murky area of law to say the least. Although the Ninth Circuit has not definitively ruled on many of the nuances discussed above, the Court has done its best to sift through the issues and has determined the following principles apple to Rule 17(c) subpoenas.

First, a Rule 17(c) subpoena for documents is a procedural mechanism to obtain information that is otherwise unavailable but reasonably known to exist. It is not a traditional discovery tool utilized to send out broad requests in the hopes that something relevant is returned. Thus, Rule 17(c) subpoenas should be used sparingly and only when the circumstances dictate.

Second, a Rule 17(c) subpoena requesting documents in advance of trial must be made on motion before the Court so that the Court can exercise its discretionary authority and ensure the *Nixon* factors are satisfied.

Third, a Rule 17(c) subpoena—under subsection one (general) or subsection three (relating to victims)—may be filed ex parte. There is no requirement, however, that it be filed in such a manner. Open briefing may be appropriate in some circumstances. However, there are conditions under which an ex parte application would be appropriate—such as if the application would divulge trial strategy. The filing party bears the burden of establishing justification for the ex parte nature of a request. If the Court finds there is no need for ex parte briefing, it will provide notice and an opportunity for the opposing side to be heard.

MEMORANDUM DECISION AND ORDER - 39

Fourth, if the Rule 17(c) subpoena seeks information from a general witness, notice to that party need not be provided. While the receiving party may still move to quash the subpoena under subsection two, notice prior to service is not required. However, if the Rule 17(c) subpoena seeks information regarding a victim,[37] notice must be given absent exceptional circumstances.

Fifth, even if a Rule 17(c) request is made ex parte (and granted ex parte), that does not mean the production will always be ex parte. Although it often will be ex parte because criminal defendants do not have the same obligations regarding discovery as the Government, the Court retains the authority to oversee the production of the information and may order a joint review if necessary.

These are the guiding principles the Court will use as it relates to Rule 17(c) subpoenas moving forward.

The Court will now apply such principles to this case.

First, although not discussed in great detail above, there are indications that *some* of the documents, files, and data Bendawald seeks could be produced by the Government. The Court strongly prefers not to burden third parties unless necessary. Bendawald and the Government should meet and confer about what, if anything, can be produced by the Government.[38]

---

[37] As explained above, the Court defines "victim" as a person affected by the charged criminal conduct.

[38] The Court encourages this open line of communication while fully appreciating that trial strategy may, again, play a role in how much is said between the parties.

Second, Bendawald did not originally follow the correct procedure before issuing a subpoena to CCSO (and other entities in the Treasure Valley) because he failed to first petition the Court under Rule 17(c).

Third, as for the seven complaining witnesses, those individuals are victims and, therefore, notice was required.

Fourth and finally, while the information sought as it relates to the seven complaining witnesses *may* be relevant and admissible, Bendawald's request at this stage is not specific enough under *Nixon*. It is clear Bendawald is trying to determine what information about the victims' criminal history, if any, exists. Such a broad endeavor is impermissible. Bendawald must provide more specifics before the Court will allow him to serve subpoenas relating to the seven complaining victims. As for the "other women," it is not even clear the request is relevant and admissible. If the Government indicates testimony or evidence related to these women will be introduced at trial, Bendawald can renew his request.

Given the Court's above findings, it will GRANT the Government's Motion to Quash. Bendawald should have sought the Court's permission before issuing the subpoena to CCSO.

Additionally, for the reasons outlined, the Government's Motion for Access to Bendawald's ex parte brief is DENIED. Bendawald may (in this instance and in the future) file his request for Rule 17(c) subpoena ex parte if the circumstances warrant an ex parte

submission.[39]

The Government's Motion for Protective Order is DENIED. The Government's desire to have protections for victims "reenforced and clarified" (Dkt. 50, at 4 n.2)—while admirable—is unnecessary in this context because protections are already statutorily mandated. And the Court will not transfer requirements from Rule 17 or the CVRA—again, important as they are—onto a separate, state-run process.

## VI. ORDER

**IT IS HEREBY ORDERED**:

1. The Government's Motion to Quash (Dkt. 37) is **GRANTED**.

2. Bendawald's Motion for Jury Questionnaire (Dkt. 40) is **GRANTED** as outlined above.

3. The Government's Motion for Access (Dkt. 42) is **DENIED**.

4. The Government's Motion for Protective Order (Dkt. 48) is **DENIED**.

DATED: March 4, 2025

David C. Nye
Chief U.S. District Court Judge

---

[39] Not to beat the proverbial dead horse, but regardless of whether the request is ex parte or public, Bendawald must nevertheless motion the Court for issuance. He cannot just serve a Rule 17(c) subpoena on his own.