UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:23-cr-00281-DCN |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| RYAN A. BENDAWALD, | |
| Defendant. | |

## I. INTRODUCTION

Before the Court is the Government's Emergency Motion to Appoint Counsel for Unrepresented Victims. Dkt. 141. Defendant Ryan Bendawald opposes the Motion. Dkt. 147. As will be explained, Bendawald also moves—via his response to the Government's Emergency Motion—for all *Brady* and *Giglio* materials in the Government's possession. Dkt. 148.

Having reviewed the record and the briefs, the Court finds the facts and legal arguments are adequately presented. Accordingly, the Court will decide the Motions without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B).[1]

---

[1] Although this is a criminal case, the local civil rule regarding hearings applies as there is no corresponding criminal rule. *See* Dist. Idaho Loc. Crim. R. 1.1(f) (explaining that "all general provisions of the Local Rules of Civil Practice apply to criminal proceedings unless such provisions are in conflict with or are otherwise provided for by the Federal Rules of Criminal Procedure or the Local Rules of Criminal Practice").

Upon review, and for the reasons set for below, the Court DENIES the Government's Motion for Appointment of Counsel without prejudice and DENIES Bendawald's Motion regarding *Brady* and *Giglio* Materials.

## II. BACKGROUND

In December 2020, the FBI initiated an investigation into police misconduct in the Caldwell Police Department ("CPD") in Caldwell, Idaho. As part of the investigation, numerous women told the FBI that then-Sergeant Bendawald had committed sexual misconduct during their encounters. Some women claimed Bendawald touched them inappropriately, while others alleged Bendawald promised he would not investigate, prosecute, or bring criminal charges against them in exchange for sexual favors. The Court refers to these women as the "Alleged Victims."

On October 11, 2023, a federal grand jury indicted Bendawald on two counts of felony deprivation of rights under color of law, one count of misdemeanor deprivation of rights under color of law, and five counts of federal program bribery. Dkt. 4.

Trial in this matter is scheduled to begin on September 2, 2025.

On July 31, 2025, the Government filed an Emergency Motion to Appoint Counsel for Unrepresented Victims. Dkt. 141.[2] Using recent negative experiences between the Alleged Victims and Bendawald's investigators, the Government contends the Alleged

---

[2] It appears that one, or more, of the Alleged Victims has retained counsel. The Government is specifically asking for counsel for Alleged Victims 1, 4, 5, and 7. Dkt. 141, at 4.

Victims are being harassed and/or intimidated and asks that the Court appoint counsel right away to protect them. *See generally id*.

Because trial is fast approaching, the Court expedited briefing on the Government's Motion. Dkt. 142

In response, Bendawald gives short shrift to the appointment of counsel issue, claiming the Government is trying to obstruct his Fifth and Sixth Amendment Rights to mount a proper defense and that no statute supports the idea that the Court can sua sponta appoint an attorney for a victim. Dkt. 147, at 2–3.[3] Bendawald then spends the bulk of his response disputing the Government's version of events between his investigators and the Alleged Victims. *Id*. at 3–10. Bendawald then pivots to asserting the Government's timing in bringing this motion is suspect and supposes the Government's counsel is hiding something in violation of *Brady* and *Giglio*.[4] *Id*. at 10–14.

Along those lines, Bendawald simultaneously filed a Motion for Brady and Giglio Materials. Dkt. 148. This Motion is one paragraph, incorporates the relevant argument from Bendawald's response brief that he assumes the Government is being derelict in its duties, and asks the Court to direct the Government to comply with its discovery obligations.

---

[3] In reply, the Government argues Bendawald does not have standing to challenge the Court's appointment of counsel. *See United States v. Harding*, 864 F.3d 961, 965 (8th Cir. 2017) (holding that "a defendant lacks standing to challenge the district court's decision on this matter [appointing counsel for a witness who risked self-incrimination], because the privilege at issue belongs to the witness, not to the party on trial"). But it is equally unclear whether the Government has standing to make this request. The Government has certain responsibilities related to victims, but whether this is one of those responsibilities the Court does not know. Nevertheless, the Court will analyze whether it can grant the relief the Government requests.

[4] *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972) outline the duties and obligations the Government has in producing discovery to the defendant in a criminal case.

The Government filed its reply to its Emergency Motion. Dkt. 151. As part of that brief, it also addressed Bendawald's *Brady/Giglio* allegations.[5]

### III. DISCUSSION

#### A.  Motion to Appoint Counsel

In its Motion, the Government asks that the Court appoint counsel for the "victims" in this case. It does not cite to any statute or caselaw that would support such an endeavor. To be sure, the Government references the Crime Victim's Rights Act ("CVRA") and the Victims' Rights and Restitution Act ("VRRA") for the general proposition that victims should be protected and treated fairly and essentially implies that an aspect of these general protections could include the appoint of counsel where necessary.

As the Court has explained, it takes the privacy of alleged victims in criminal cases very seriously. *See, e.g.,* Dkts. 90, at 13–15. And it agrees in fair treatment. But absent some "hook," the Court is hesitant to formally appoint counsel for the Alleged Victims in this case.

The Court has scoured caselaw and sources and cannot find anything that would allow it to appoint an attorney for a crime victim. The sole case the Court could locate[6] states the opposite. In *United States v. Turner*, that Court discussed a victim's rights under the CVRA and the concept that, when a victim is unwilling or unavailable, a surrogate or

---

[5] Because the Government responded to Bendawald's Motion—and because the Court is disposing of that Motion today—there is no need for further briefing on the matter.

[6] This motion and decision happened on an expedited basis. Therefore, there could be additional cases the Court was unable to locate.

lawful representative can represent the victim's interest in court. 367 F. Supp. 2d 319, 329–30 (E.D.N.Y. 2005). That Court observed it could appoint a surrogate or lawful representative for a victim under the CVRA but noted the CVRA's provisions "neither requires nor even authorizes a court to appoint *counsel* for an indigent crime victim." *Id*. at 331 n. 11 (emphasis added).

On the current record and against the backdrop of what little authority the parties provided and the Court could locate, the Court declines to appoint counsel under the CVRA (or other associated authority) for the Alleged Victims *simply because they are victims.*

This, however, brings up another issue. In the Government's opening brief, it refers to the Alleged Victims as "victims." Not once does it use the term "witness." In its reply, however, it emphasizes these individuals are not just victims, but they are also key witnesses who will testify at trial. What's more, each of the Alleged Victims has a criminal history which will likely be discussed and cross-examined at trial. In this manner, the Government postures the Alleged Victims' status as "witnesses" is sufficient to justify the appointment of counsel.

Citing statutes, the Criminal Justice Act ("CJA"), and relevant caselaw, the Government contends the Court has the discretion to appoint counsel if there is "reason to believe . . . that the witness could be subject to criminal prosecution, a civil or criminal contempt proceeding, or face loss of liberty." Dist. Idaho Criminal Justice Act Plan IV(A)(2)(d) (General Order No. 410); *see also* 18 U.S.C. § 3006A(a)(1).

The Court's concern with this argument is in each instance it could find where a court appointed counsel for a witness, it was because the court was fearful the witness

would perjure themselves or risk self-incrimination. *See, e.g., United States v. Harding*, 864 F.3d 961, 965 (8th Cir. 2017) (discussing that a Court may provide counsel to a witness in order to protect the witness from incriminating themselves); *Saetern v. California*, 2008 WL 5382053, at *3 (E.D. Cal. Dec. 22, 2008) (noting the Court can *sua sponte* appoint counsel when it appears a witness may incriminate herself).

It is not clear from the record before the Court that any of the Alleged Victims—when testifying as witnesses—will incriminate themselves. They will discuss their past crimes, yes, but to the Court's knowledge, those matters have already concluded[7] or are otherwise public record.

A final (unfortunate) consideration is the fact that CJA funds have been exhausted for the remainder of the fiscal year. All CJA counsel—including counsel for Bendawald—are currently working without compensation. Thus, were the Court to even consider appointing counsel for the victims (as witnesses), whether anyone would accept appointment is undetermined.

The Court appreciates the Government's argument here. However, it will not appoint counsel on the basis that the Alleged Victims are "victims." It will also not appoint counsel for the Alleged Victims as "witnesses" without a more concrete indication that any

---

[7] To be sure, some of the Alleged Victims are still serving prison sentences, on probation, or have other legal obligations because of their past criminal conduct. By "concluded" the Court simply means that the criminal activity that will be discussed in this case is not "ongoing" in nature. Even saying this, the Court is cognizant of the fact that many of the allegations against Bendawald are that he diverted criminal prosecution and/or charges away from the Alleged Victims in return for sexual favors. Thus, there *could* be criminal activity discussed that went uncharged. But the Court's point here is that it does not have specific information (or even a strong suggestion) that the victims risk incriminating themselves, are unaware of their Fifth Amendment rights, or otherwise need the assistance of counsel.

or all require such appointment because they risk incriminating themselves. While protecting the Alleged Victims is important, the broad assertion that all of them need counsel is insufficient to warrant relief. Thus, the Government's motion is DENIED without PREJUDICE. If the Government can provide *specific* reasons (via in camera submission if needed) as to why any particular witness is at risk of self-incrimination, the Court will reconsider.[8]

### B. *Brady/Giglio*

This is a heavy case. Both sides have pursued their position with zealous advocacy and will continue to do so. In recent briefing, however, both sides have accused the other of actions just shy of an ethical violation. The Court does not want the pressure of this case to affect the professional duties, licensure, or reputations of any of the attorneys involved. Therefore, the Court advises all to take the proverbial "deep breath" and focus on presenting arguments to the Court backed by concrete facts.

This is not to say either side is above reproach. But the Court knows all of these attorneys quite well and finds it hard to believe any would engage in unethical behavior.

But more to the point, Bendawald supposes the Government has acted nefariously and failed to provide discovery pursuant to its obligations under *Brady* and *Giglio*. But it does not have any concrete evidence of this. The Court is not privy to much of the discovery in this case. However, it has something of an inside look into some of the materials because

---

[8] As an aside, it is not entirely clear to the Court whether the Government is asking for a single attorney to represent all the Alleged Victims who are unrepresented, or for each Alleged Victim to have her own separate attorney.

it reviewed them as part of the Rule 17 subpoena process. Specially as to the information from the Idaho Industrial Commission, the Court reviewed the materials prior to allowing them to be disclosed to Bendawald and is of the opinion that the Government's representations therein are consistent with what it told Bendawald in other discovery.

If more information or evidence comes to light indicating the Government has violated *Brady* and *Giglio*, Bendawald should raise the issue. But on the current record, the Court finds no violation.

Thus, because the Court sees no violation, the Motion is DENIED. However, the Court reminds the Government to comply with its obligations under *Brady* and *Giglio*—as it assumes the Government is already doing.[9]

## IV. ORDER

1. The Government's Emergency Motion to Appoint Counsel for Unrepresented Victims (Dkt. 141) is DENIED without PREJUDICE.

2. Bendawald's Motion for Brady and Giglio Materials (Dkt. 148) is DENIED as outlined.

DATED: August 6, 2025

David C. Nye
Chief U.S. District Court Judge

---

[9] Thus, to a certain degree the Court is granting Bendawald's Motion. He asked the Court to order the Government to comply with its discovery obligations. But the Court should not have to order a party to comply with duties already imposed. Thus, while the Court expects the Government to comply with its obligations, it will deny this motion as it sees no current violation.