UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 1:23-cr-00281-DCN |
| Plaintiff, | |
| v. | **MEMORANDUM DECISION AND ORDER** |
| RYAN A. BENDAWALD, | |
| Defendant. | |

## I. INTRODUCTION AND BACKGROUND

The Court empaneled a jury for trial in this matter on Tuesday, September 2, 2025. Dkt. 198. The presentation of evidence began two days later, on September 4, 2025.[1] Dkt. 203.

At 6:53 a.m. on September 5, 2025, the Government emailed Bendawald's counsel and advised that it would be producing additional discovery that day. Dkt. 209-1. In that email, the Government indicated it did not intend to use any of the evidence set to be disclosed during its case in chief. *Id*. Later, at 9:45 a.m., that discovery was transmitted to the defense team. Dkt. 209-2.

Over the lunch break the same day, defense counsel briefly reviewed the discovery. After realizing some of the materials related to two witnesses who had already testified—

---

[1] The Government disclosed certain discovery to Bendawald over the weekend prior to trial. Bendawald moved for a short continuance to evaluate such evidence. Dkt. 191. The Court orally granted Bendawald's motion to the extent that it took a one-day break, between empaneling the jury and the presentation of evidence, to allow counsel more time to review and prepare for trial. Dkt. 197, at 3.

G.B.[2] and T.T.[3]—upon returning from lunch, and outside the presence of the jury, defense counsel accused the Government of suppressing evidence in violation of *Brady* and orally moved for the full dismissal of the indictment. Dkt. 208, at 89, 90, 94.

The Government objected to such a course of action and argued that, at the very least, briefing on such a drastic request was required. It further explained the information disclosed that day was marginally relevant and offered to bring back any witness Bendawald thought he needed to further question.

The Court determined briefing was the best way to address the issue. The Court dismissed the jury for the weekend and outlined a briefing schedule for the parties. Dkt. 207. Bendawald dutifully filed a memorandum in support of his Oral Motion to Dismiss Count One of the Indictment and to Strike Witness Testimony. Dkt. 209. The Government responded (Dkt. 210) and Bendawald replied (Dkt. 211).

For the reasons set forth below, the Court DENIES Bendawald's Motion.

## II. LEGAL STANDARD

A criminal defendant does not have a constitutional right to discovery. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *United States v. Bowman*, 2024 WL 730085, at *2 (D. Idaho Feb. 22, 2024). However, criminal defendants are entitled to pursue discovery under Federal Rule of Criminal Procedure 16 and *Brady v. Maryland*, 373 U.S. 83 (1963).

---

[2] G.B. is one of the alleged victims in this case and the subject of the allegations outlined in Count One of the Indictment.

[3] T.T. is one of the "other victims" who was purportedly subjected to sexually-explicit advances from Bendawald but who is not included in the Indictment. The Court admitted her testimony under Federal Rule of Evidence 404(b) and 413.

Pursuant to Rule 16, the Government is required to timely disclose materials in its "possession, custody, or control" where they are "material to preparing the defense." Fed. R. Crim. P. 16(a)(1)(E). Evidence is material to the preparation of the defense when it may be used in "response to the Government's case in chief." *United States v. Armstrong*, 517 U.S. 456, 462 (1996). Rule 16 outlines the Government has a continuing duty to promptly disclose evidence to the defendant as such evidence is discovered. Fed. R. Crim. P. 16(c).

As the Supreme Court held in *Brady*, "suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material[4] either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). *Brady* extends to "nondisclosure of evidence that would impeach the credibility of a key witness." *United States v. Cloud*, 102 F.4th 968, 975 (9th Cir. 2024) (citing *Giglio v. United States*, 405 U.S. 150, 154 (1972)).

### III. DISCUSSION

Bendawald initially argued the Government's recently disclosed evidence constituted exculpatory *Brady* material. In briefing, however, he softened that position by suggesting the discovery *may* be *Brady* material, but even if it is not, the Government still should have disclosed the evidence sooner under Rule 16. Dkt. 209, at 5.

Bendawald reiterates he has not had time to complete an exhaustive review of what

---

[4] Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *See United States v. Bagley,* 473 U.S. 667, 678 (1985). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome of the proceeding. *Id.*

the Government produced but highlights two FBI 302 forms[5] indicating contact in the days leading up to trial between FBI Special Agent O'Neil and G.B. and T.T., two witnesses who have already testified. Bendawald also challenges the belated disclosure of reports and recordings of his policing activities in 2017, as well as "POUT" records, which appear to document Bendawald's failure to log evidence.

Having reviewed such evidence, it is not entirely clear to the Court that the new information is *Brady* material to begin with, but even assuming it is, the Court finds neither dismissal of Count One, nor the striking of testimony, is necessary.

Not every late disclosure gives rise to a *Brady* violation. *See, e.g.*, *United States v. Woodley*, 9 F.3d 774, 777 (9th Cir. 1993) (outlining disclosure "must be made when it is still of substantial value to the accused" but noting "the prosecution need not produce *Brady* material before trial"). *See also United States v. Aichele*, 941 F.2d 761, 764 (9th Cir. 1991) ("*Brady* does not necessarily require that the prosecution turn over exculpatory material *before* trial.") (cleaned up). [6] Rather, the relevant inquiry is whether the disclosure, when made, was still of value to the accused. Timing, then, is key.

---

[5] An "FBI 302" is a form used by the FBI to document interviews with witnesses, informants, subjects, etc. As to G.B., the new FBI 302 indicates G.B. contacted Agent O'Neil on September 2, and the two spoke about "trial logistics." Dkt. 209-4. Bendawald would like to know how G.B. contacted Agent O'Neil and specifically what "trial logistics" means. As for T.T., the new FBI 302 indicates Agent O'Neil and T.T. talked about T.T.'s son's probation officer and T.T.'s opinion that the probation officer had failed to help her son. Dkt. 209-5. T.T. also apparently told Agent O'Neil the probation officer was "not involved in any sexual related misconduct with Ryan Bendawald." *Id*. The Government disclosed two additional 302s— one outlining contact with the alleged victim who was the subject of Counts 7 and 8 (now dismissed) and one outlining new information as to a witness who has yet to testify. Bendawald is not specifically challenging these two 302s at this time.

[6] Virtually every circuit has discussed the disclosure of evidence during trial and held that, so long as the defendant was provided timely access to the materials and an opportunity to use them, a *Brady* violation did not occur. *See e.g., U.S. v. Almendares*, 397 F.3d 653, 664 (8th Cir. 2005) ("Under the rule in our circuit,

Bendawald argues he has been deprived of a timely opportunity to use at least *some* of the evidence the Government recently produced. The Court will first address the timing of the disclosure relative to when the Government came into possession of the materials and then discuss the timing of the disclosure as it relates to the current trial posture.

The FBI 302s were written on September 3, 2025, reviewed and processed by the FBI, and then turned over to Bendawald two days later, on September 5, 2025. It appears the other challenged discovery came into the Government's possession recently as well—seemingly on September 2, 2025. *See* Dkt. 210, at 5. Thus, the *timing* of the disclosure of these documents to Bendawald vis-à-vis when the Government came into possession of them appears satisfactory under Rule 16.[7]

The Court will also address the timing of the Government's disclosure as it relates to trial. The relevant question "is whether the lateness of the disclosure so prejudiced [Bendawald's] preparation or presentation of his defense that he was prevented from

---

*Brady* does not require pretrial disclosure, and due process is satisfied if the information is furnished before it is too late for the defendant to use it at trial."); *United States v. Scarborough*, 128 F.3d 1373, 1375 (10th Cir. 1997) (holding there was no *Brady* violation when evidence was disclosed during trial because defense could still make use of that evidence—notwithstanding that earlier disclosure might have changed defense strategy); *United States v. Presser,* 844 F.2d 1275, 1283–84 (6th Cir.1988) ("Any prejudice the defendant may suffer as a result of disclosure of the impeachment evidence during trial can be eliminated by the trial court ordering a recess in the proceedings in order to allow the defendant time to examine the material and decide how to use it."); *United States v. Smith Grading & Paving, Inc.*, 760 F.2d 527, 532 (4th Cir. 1985) ("No due process violation occurs as long as *Brady* material is disclosed to a defendant in time for its effective use at trial.").

[7] Even if a Rule 16 violation had occurred—which it did not—dismissal would still be inappropriate. Rule 16(d)(2) empowers the Court to remedy any violation by granting a continuance, prohibiting the violating party from introducing the evidence at issue, or entering "any other order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2). The Ninth Circuit has recognized trial courts have "broad allowance to prescribe any sanction that is 'just,' under Rule 16," *Ordonez v. United States*, 680 F.3d 1135, 1140 (9th Cir. 2012), and that any sanction should not be harsher than necessary to accomplish the goals of the rule. *United States v. Gee*, 695 F.2d 1165, 1169 (9th Cir. 1983).

MEMORANDUM DECISION AND ORDER - 5

receiving his constitutionally guaranteed fair trial." *United States v. Miller,* 529 F.2d 1125, 1128 (9th Cir.1976).

To begin, a portion of the newly disclosed evidence relates to David Wright, the witness who is currently testifying. Because there is still time for Bendawald to use the recently disclosed evidence related to Wright, he has not been prejudiced. Next, the Government appears to have disclosed new information related to future witnesses. Again, because these witnesses have not yet testified, there is still adequate time for Bendawald to use such information as he sees fit. The stickier question is the discovery related to G.B. and T.T—the two witnesses who have already testified.[8] Still, Bendawald has a variety of avenues he can pursue if he desires to follow-up with G.B. or T.T. regarding any of the new information provided by the Government.

First, the Government has offered to bring G.B. and T.T. back to the witness stand to answer any questions Bendawald might have. This is a reasonable solution.[9] Bendawald could also call these individuals himself during his case-in-chief. Either way, dismissal of

---

[8] Notably, courts have not automatically found a *Brady* violation occurred even when information was turned over *after* a witness had testified. *See e.g., United States v. Decker*, 543 F.2d 1102, 1105 (5th Cir. 1976), *cert. denied*, 431 U.S. 906, (1977) (disclosure of information correcting false testimony *after* witness testified deemed timely because "recall [of the witness] and further exploration of the[] matters was still possible"); *Miller*, 529 F.2d at 1128 (explaining that allowing the defense a continuance to evaluate exculpatory evidence disclosed after relevant testimony was an appropriate remedial measure).

[9] Bendawald is not keen on this idea, as it would require putting his "accusers [] before the jury to make claims against him again, refreshing their testimony in the minds of the jury[,] and giving the government another bite at the apple . . . ." Dkt. 209, at 17–18. The Court appreciates this concern. The Government has offered, however, to forgo any furthering questioning of these two witnesses to alleviate Bendawald's fear. Dkt. 210, at 19. As explained above, Bendawald will have to make a strategic choice between having the Government recall G.B. and T.T., calling such witnesses himself during the presentation of his defense, or doing nothing further as to these two witnesses. Should Bendawald chose to take the Government up on its offer to bring G.B. and T.T. back, he should let the Government know as soon as possible.

Count One and/or striking any witnesses' testimony is unnecessary because regardless of which method, if any, Bendawald chooses, he still has a "substantial opportunity to use the belatedly disclosed evidence" and, thus, "there is no prejudice." *United States v. Alahmedalabdaloklah*, 94 F.4th 782, 828 (9th Cir.), *cert. denied,* 145 S. Ct. 770 (2024). *See also United States v. Shelton*, 588 F.2d 1242, 1247 (9th Cir. 1978) ("There can be no claim of prejudice insofar as the defendant was enabled to present to the jury favorable or impeaching evidence.").

Finally, the Court is not convinced the newly disclosed information is material to Bendawald's defense, thus negating the rigors of Rule 16 and/or *Brady* altogether. As already noted, the materials related to G.B. and T.T. are FBI 302s which essentially indicate Agent O'Neil spoke with G.B. and T.T. in preparation for trial. Even if Bendawald had this information *before* G.B. and T.T. testified, the Court does not see how it would have altered Bendawald's cross-examination of such witnesses. To be sure, Bendawald can defend his case as he sees fit, and may have a different perspective than the Court. Nevertheless, Bendawald has not presented any persuasive argument that this evidence is material or that his previous inability to question G.B. and T.T. about their most recent contact with Agent O'Neil cannot be salvaged with future questioning.[10]

To reiterate, this is not a true *Brady* motion, and the Court has not found either a

---

[10] Similarly, in his reply, Bendawald suggests he may move to strike Ayesha Avila's testimony because the Government disclosed just yesterday that it had contact with Avila the day prior to Avila's testimony. Dkt. 211, at 9. The Court will address this more fully if, and when, it becomes necessary. But the Court reiterates the principle outlined above; namely, that trial is ongoing and Bendawald still has an opportunity to use the evidence. *Alahmedalabdaloklah*, 94 F.4th at 828. True, Bendawald's opportunity might not be the most convenient—where Avila has already testified—but he still has an opportunity, nonetheless.

*Brady* violation or a Rule 16 violation. That said, the framework for assessing such violations remains helpful. The Ninth Circuit has instructed:

> [W]hen favorable suppressed evidence is discovered mid-trial, the materiality standard is benchmarked against the relative value of the evidence in light of the proceedings to date—not as a retrospective evaluation of how the disclosure may have impacted the outcome of a trial that has not yet concluded.

*Cloud*, 102 F.4th at 980 (citing *United States v. Bundy*, 968 F.3d 1019, 1037 (9th Cir. 2020)). The Ninth Circuit went on to explain that courts should "evaluate the relative value of the withheld evidence on the basis of the indictment, the pretrial proceedings, the opening statements, and the evidence introduced up to that point." *Id.* (cleaned up).

Considering the evidence and testimony presented to date at trial, the Court finds the recently disclosed FBI 302 evidence regarding G.B. and T.T. has relatively nominal material value. There *may* be some minor impeachment value or other way Bendawald could use the information to support his general theory of the case. But Bendawald has not shown any prejudice in the Government's belated disclosure because he still has an opportunity to use the evidence at trial.

To be sure, it would have been easier had this information come to light prior to G.B. and T.T.'s testimony, as Bendawald would have been afforded an opportunity to decide whether he wanted to use it during cross-examination of G.B. and T.T. That said, the Court does not find the evidence so highly relevant as to warrant the drastic sanction of dismissing Count One and/or striking all of G.B. and T.T.'s testimony because "recall [of the witness] and further exploration of the[] matters [i]s still possible"). *Decker*, 543 F.2d at 1105.

MEMORANDUM DECISION AND ORDER - 8

The remaining recently disclosed evidence is related to the individual currently testifying or to those who have yet to testify. Bendawald has now had the weekend to review the materials and can use the evidence as he sees fit.

Having considered the parties' briefs, the record, and trial thus far, the Court finds the Government's disclosure has not prejudiced Bendawald such that he was "prevented from receiving his constitutionally guaranteed fair trial." *Miller*, 529 F.2d at 1128. Count One will not be dismissed and no testimony will be stricken.

## IV. ORDER

1. Bendawald's Motion to Dismiss Count One and Strike Witness Testimony (Dkt. 209) is DENIED.

2. Trial will reconvene at 9:00 a.m. tomorrow morning. Counsel shall report at 8:30 a.m. for the daily pre-trial conference.

DATED: September 7, 2025

David C. Nye
Chief U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 9